UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRANDI TURNER, an individual,                  CASE NO:
THE ESTATE OF T'YONNA MAJOR
and THE ESTATE OF DYLAN LYONS

       Plaintiffs,

vs.

DEPUTY JOHN DOE, an individual,
JOHN MINA, in his official capacity
as Sheriff of Orange County,

       Defendants.
_____/

## COMPLAINT

COMES NOW, Plaintiffs, BRANDI TURNER (hereinafter "Brandi Turner"), THE ESTATE OF T'YONNA MAJOR (hereinafter "T'Yonna Major"), and THE ESTATE OF DYLAN LYONS (hereinafter "Dylan Lyons"), by and through their undersigned counsel, hereby file this Complaint against Defendants, DEPUTY JOHN DOE (hereinafter "Deputy Doe") and JOHN MINA, in his official capacity as Sheriff of Orange County (hereinafter "Sheriff Mina") and would show the following:

## JURISDICTIONAL BASIS, VENUE, AND PARTIES

1.    This is an action for damages over seventy-five thousand dollars ($75,000.00) exclusive of attorney's fees and costs.

2.      This Complaint seeks remedies pursuant to 42 U.S.C §§ 1983 and 1988 to remedy the deprivation, under color of state law, of rights guaranteed by the Fourteenth Amendment of the Constitution of the United States of America substantive due process and equal protection, Title VI, 42 U.S.C. § 2000d et seq., as well as remedies under the laws of the State of Florida.

3.      42 U.S.C. § 1983 provides in relevant part:

> Every person, who under the color of any statute, ordinance, regulation, custom or usage of any State or Territory . . . subjects, or causes to be subjected, any citizen or the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress . . .

4.      Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391 because the acts giving rise to this Complaint occurred in Orange County, Florida.

5.      This Court has jurisdiction to hear the federal civil rights violations in this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)-(4).

6.      Sheriff Mina was given timely written notice of this claim as required by § 768.28, Fla. Stat.; however, said claims were not resolved within the time provided by the statute. Plaintiff has fully complied with § 768.28(6)(a), Fla. Stat., providing timely notice and service to the Florida Department of Financial Services.

2

7.     All conditions precedent to the filing of this action have occurred, accrued, or have been waived as a matter of law.

8.     At all times material to this complaint, Plaintiffs Brandi Turner, T'Yonna Major, and Dylan Lyons were residents of Orange County, Florida.

9.     Sheriff Mina is the duly elected Sheriff of Orange County in charge of the Orange County Sheriff's Office, as he serves as "the head of such [governmental] entity in . . . his official capacity . . ." §768.28(9)(a), Fla. Stat. Sheriff Mina is the current "constitutional officer" who employs Deputy Doe. The Orange County Sheriff's Office is organized under the laws of the State of Florida, with the capacity to be sued within the parameters of § 768.28(9)(a), Fla. Stat.

10.     Deputy Doe, upon information and belief, is a Florida resident and is *sui juris.* At all times material, Deputy Doe was acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Florida and/or the Orange County Sheriff's Office. Deputy Doe is sued in his individual capacity under federal law only.

11.     Brandi Turner was appointed as personal representative of the Estate of T'Yonna Major. A true and correct copy of the Order is attached hereto as **Exhibit "A."**

12.     Gary Lyons was appointed as personal representative of the Estate of Dylan Lyons. A true and correct copy of the Order is attached hereto as **Exhibit "B**."

13.     As a recipient of federal funding[1], the Orange County Sheriff's Department is prohibited from discriminating based on national origin, race, or color.

## FACTS COMMON TO ALL COUNTS

14.     Plaintiffs incorporate and re-allege all proceeding paragraphs, as though more fully pleaded herein, and further state as follows.

15.     The Pine Hills census-designated place is within an unincorporated subdivision of Orange County, Florida, United States, west of Orlando ("Pine Hills").[2] As of the 2020 United States Census, 66,111 people resided in Pine Hills and had the following racial characteristics.[3]

---

[1] Orange County Sheriff's Office is a recipient of the 2023 Edward Byrne Memorial Justice Assistance Grant.

[2] *See* United States Census Bureau, *2020 U.S. Gazetteer Files*, https://www2.census.gov/geo/docs/maps-data/data/gazetteer/2020_Gazetteer/2020_gaz_place_12.txt (last visited February 17, 2025).

[3] *See* United States Census Bureau, *United States Census Bureau Searchable Data*, https://data.census.gov/table/ACSST5Y2020.S1101?q=Pine+Hills+CDP;+Florida+ (last visited February 17, 2025); United States Census Bureau, *United States Census Bureau Searchable Data*, https://data.census.gov/table?q=Orange%20County,%20Florida&d=DEC%20Demographic%20Profile (last visited February 17, 2025). Racial characteristics as defined by the United States Census Bureau.

Table 1: 2020 Census Total Races Tallied, Pine Hills CDP Compared Against Orange County, Florida

| Races | Pine Hills Percent of Total Demographic | Orange County, FL Percent of Total Demographic |
|---|---|---|
| White | 17.3% | 60.9% |
| Black or African American | 72.6% | 22.2% |
| American Indian and Alaska Native | 1.2% | 1.8% |
| Asian | 3.9% | 6.8% |
| Native Hawaiian and Other Pacific Islander | 0.3% | 0.3% |
| Some Other Race | 13.4% | 27.5% |

Table 2: 2020 Census Hispanic or Latino Reported, Pine Hills CDP

| Races | Pine Hills Percent of Total Demographic | Orange County, FL Percent of Total Demographic |
|---|---|---|
| Hispanic or Latino (of any race) | 16.0% | 33.1% |
| Not Hispanic or Latino | 84.0% | 66.9% |

16.    The 2020 United States Census further estimated that 22.1 percent (22.1%) of Pine Hills residents live below the federal poverty level, as opposed to 14.2 percent (14.2%) of Orange County, Florida residents.[4]

---

[4] *See* United States Census Bureau, *United States Census Bureau Searchable Data*, https://data.census.gov/table/ACSST5Y2020.S1701?q=Pine%20Hills%20CDP;%20Florida%20 &y=2020 (last visited February 17, 2025); United States Census Bureau, *United States Census Bureau Searchable Data*, https://data.census.gov/table/ACSST5Y2020.S1701?q=Orange%20County,%20Florida&y=2020 (last visited February 17, 2025).

17.     The policy of discrimination by the Orange County Sheriff's Office against Black residents and neighborhoods in Orange County, specifically in Pine Hills, led to the preventable and horrific murders of 9-year-old T'Yonna Major and 24-year-old news reporter Dylan Lyons.

18.     In addition to this racially discriminatory policy, the unreasonable and reckless actions of the Orange County deputies represented, at a minimum, gross negligence and callous indifference to the residents of Pine Hills, an overwhelmingly African American community.

19.     At approximately 11:00 a.m. on February 22, 2023, the deadly shooting of Nathacha Augustin occurred in Pine Hills

20.     After Nathacha Augustin was brutally murdered, a witness inside the vehicle she was shot in quickly identified the shooter as Keith Moses ("Moses"), who fled the scene on foot.

21.     Moses' description was not released to the public despite his unique and distinct appearance:



22.    The murderer had a criminal history, and his mugshots were easily attainable. Despite all of this, the crime scene of the murder was cleaned up, and the description of the murderer was not distributed.

23.    Orange County Sheriff's deputies arrived at the scene at approximately 11:17 a.m. on February 22, 2023, and within four hours and four minutes, cleaned up the crime scene and reopened the location to the public, all while Moses remained at large. Upon clearing the scene of Nathacha Augustin's death, no trace of her homicide, only four hours prior, remained.

24.    Even more disturbing, the fact that a murderer was present in the area in the first place was not disclosed to the surrounding residents, even when deputies were explicitly asked for information.

---

[5] Orange County, Florida Corrections Booking Photograph of Keith Melvin Moses, Booking No. 23004812, taken on February 22, 2023. *See* Orange County Government Florida, *Orange County Corrections Current Inmate Database*, https://netapps.ocfl.net/BestJail/Home/Inmates#/ (search Moses, Keith Melvin) (last visited February 17, 2025).

25.     As a result of this dangerous policy, an armed and dangerous murderer wandered the area for hours without so much as an indication to the community that he was still lurking.

26.     At approximately 2:00 p.m. on February 22, 2023, Brandi Turner picked her 9-year-old daughter T'Yonna Major up from school and entered their neighborhood to return home.

27.     Brandi Turner approached the neighborhood's entrance and noticed law enforcement present. She stopped and inquired to Deputy Doe about the purpose of their presence.

28.     Deputy Doe directly contacted Brandi Turner and stated, without further explanation, "Everything is under control." Relying on the representation from Deputy Doe, whom she had direct communication with, Brandi Turner went home with her child, unaware that an armed killer remained at large in the area.

29.     Brandi Turner usually left the back door of her home closed and locked. However, on this occasion, it was opened to allow the family dog to go outside.

30.     Moses entered Brandi Turner's backyard at approximately 3:49 p.m., only 28 minutes after all Orange County Sheriff's Office personnel left the original crime scene on the same street.

31.    Between 3:49 p.m. and 4:03 p.m., Moses walked into the back door of Brandi Turner's residence while she was in the kitchen.

32.    Moses saw T'Yonna and blasted a bullet through her little 9-year-old body.

33.    T'Yonna ran to her mother, who was immediately alarmed by the gunfire.

34.    As T'Yonna ran into her mother's arms, screaming, "He shot me!" the killer continued shooting, striking T'Yonna again and shooting Brandi Turner in the arm.

35.    Brandi Turner draped herself around T'Yonna, trying to protect her child while they took cover in a bathroom.

36.    Moses fled the home; Brandi Turner frantically called 911 and her husband, Tokiyo Major, who was minutes away at his dentist's office.

37.    Tokiyo Major rushed home and saw his dying little girl with two bullet holes in her and his hysterical, bloodied wife, who had also been shot.

38.    The paramedics arrived, and Tokiyo Major accompanied T'Yonna as they rushed to save her and take her to the hospital.

39.    Brandi Turner's last image of her child was when T'Yonna was whisked away from her while she was barely clinging to life.

40.     Efforts to save T'Yonna failed, and she died later at Arnold Palmer Children's Hospital.

41.     Moses fled the home on foot as his shooting spree continued.

42.     Dylan Lyons and his cameraman were directed to report on location after Spectrum News 13[6] was notified by the Orange County Sheriff's Office of the earlier shooting of Nathacha Augustin.

43.     Spectrum News 13 reporter Dylan Lyons was a passenger in the company vehicle sent to a report on location in Pine Hills on Harrington Drive and Hialeah Street at the same time, Moses was still at large in the immediate area.

44.     At approximately 3:59 p.m., while the murder of T'Yonna Turner and the shooting of Brandi Turner were simultaneously occurring, Dylan Lyons' news vehicle parked in the exact location of Nathacha Augustin's shooting mere hours before. However, there was no evidence of a crime investigation, as Orange County Sheriff's deputies had cleared the area although Moses remained at large.

45.     Minutes after Moses left the home of Brandi Turner and T'Yonna Major, Dylan Lyons' cameraman was unloading equipment from the back of the van when Moses approached the van and opened fire, striking the cameraman.

---

[6] Spectrum News 13 is a television news station in the Orlando, Florida media market owned by Charter Communications. *See* Spectrum News 13, mynews13.com/fl/Orlando (last accessed February 17, 2025).

46.    Moses continued shooting as he walked around to the side of the vehicle, pointed the gun at Dylan Lyons, and shot him in cold blood.

47.    Despite lifesaving efforts from bystanders, Dylan died almost instantly from a bullet that ripped through his left arm, entered his chest, pierced his heart, exited the other side of his chest, and lodged into his right arm.

48.    At approximately 4:30 p.m., as Orange County Sheriff Deputies secured the same area following the second round of killings that day, Moses is seen in one of the deputies' body-worn camera footage walking toward the deputies.

49.    Another deputy appears to be staring directly at Moses as Moses approaches the intersection of Hialeah Street and Bolling Drive, continuing directly toward deputies.

50.    Approximately one minute after Moses appears on the body-worn camera footage, he raises his arms above his head while a deputy carrying a rifle stares directly in Moses' direction.

51.    Approximately one additional minute later, while Moses continues to stand on the corner within feet of deputies and with his hands raised, a white vehicle stops directly next to Moses at the stop sign.

52.    Moses was within arm's reach of the vehicle, his hands still held out to his sides.

53.    The vehicle turns left without interaction with Moses, avoiding becoming Moses' fifth victim that day.

54.    The vehicle turns left after making a complete stop and stops again to speak to the deputy about them blocking the street.

55.    After almost three (3) minutes of Moses being in the direct line of vision of several deputies, two (2) minutes of which his arms are raised as if to show surrender, Moses was apprehended and detained by deputies.

56.    The body-worn camera footage displayed a lackadaisical and unconcerned demeanor among the deputies.

57.    Upon information and belief, the Orange County Sheriff's Office did not dispatch aviation assistance to locate Moses despite his being on foot.

58.    The Orange County Sheriff's Office website proudly states that:

> A well equipped aviation unit is one of the most valuable assets a law enforcement agency can have and Orange County has one of the best.
>
> …
>
> The Aviation Section's top crime fighting tool continues to be the use of thermal imaging to disclose the position of criminal suspects. The cameras on all of the agency aircraft are very sensitive, and a trained Tactical Flight Observer (TFO) can discover suspects that are hiding in thick brush, up in trees, in garbage cans, and even in the water. When used in conjunction with an agency K-9, this method has an extremely high success rate.
>
> Orange    County    Sheriff's    Office, *Aviation    Section*, https://www.ocso.com/en-us/Services/Operational-

Services/Special-Operations-Division/Aviation-Unit    (last accessed February 17, 2025).

59.    The Orange County Sheriff's Office failed to utilize one of the best aviation units in existence and its top crime-fighting tool to locate Nathacha Augustin's killer, nor the later killings of T'Yonna Major and Dylan Lyons, further evidencing the lack of concern for, and lack of resources provided to, the citizens of Pine Hills.

60.    This community of color was not treated with the same sense of urgency, importance, or respect displayed for other more affluent or White neighborhoods in Orange County.

61.    This failed policy exhibits discriminatory and prejudicial behavior, which resulted in the death of two innocent young people, as well as serious injury to another.

62.    Not only were Brandi Turner and T'Yonna Major African American, but the incident in question occurred in Pine Hills.

63.    Upon information and belief, the Orange County Sheriff's Office assigns less personnel and resources to Pine Hills than its similarly situated, but primarily White, counterpart Windermere.

64.    Orange County Sheriff's Office does this despite crime rates being almost double in Pine Hills compared to Windermere.

65.    A state actor like the Orange County Sheriff's Department, may not selectively deny protective services to certain disfavored minorities without violating the equal protection clause and Title VI of the Civil Rights Act of 1964.

## COUNT I – DEFENDANT DEPUTY DOE'S VIOLATION OF BRANDI TURNER'S CIVIL RIGHTS UNDER THE FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS VIOLATIONS

66.    Brandi Turner repeats and realleges paragraphs one (1) through sixty-five (65) as though more fully set forth herein.

67.    At all times material hereto, Deputy Doe was a "person" under 42 U.S.C. § 1983 and was acting under the color of state law within the meaning of 42 U.S.C. § 1983.

68.    At all times material hereto, Brandi Turner had a cognizable liberty interest under the Fourteenth Amendment to be free from unnecessary pain and harm and a fundamental right to her physical health, safety, and well-being.

69.    On February 22, 2023, Deputy Doe had direct communication with Brandi Turner, and withheld pertinent, significant information regarding an at large murderer in her neighborhood.

70.    Deputy Doe's direct communication to Brandi Turner rendered Brandi Turner more vulnerable to falling victim to Moses' killing spree.

71.     Deputy Doe had a statutory or constitutional duty to prevent harm to Brandi Turner by ensuring she was aware of the dangerous surroundings when she specifically asked.

72.     At all times material, Deputy Doe was aware that Moses had shot and killed Nathacha Augustin.

73.     At all times material, Deputy Doe was aware that Moses was still at large in the area.

74.     The risk of harm was obvious and known to Deputy Doe.

75.     At all times material, Brandi Turner had a fundamental right to physical safety that was free from unreasonable risk of serious harm.

76.     Deputy Doe was objectively aware of the risk of serious harm, recklessly disregarded the risk of harm, and his conduct was more than mere negligence.

77.     Despite having the authority and means to provide life-protecting information to Brandi Turner related to an at large killer in her neighborhood, Deputy Doe was deliberately indifferent to said conditions and recklessly disregarded the risk of harm by providing false information to Brandi Turner.

78.     Brandi Turner is obligated to the undersigned for the payment of its attorney's fees and seeks recovery of reasonable attorney's fees pursuant to the provisions of 42 U.S.C. § 1988.

WHEREFORE, Plaintiff, BRANDI TURNER, demands a judgment against Deputy Doe for both compensatory and punitive damages, including costs of this action and attorney fees, and for such other relief as this Court deems just and proper.

## COUNT II – DEFENDANT DEPUTY DOE'S VIOLATION OF T'YONNA MAJOR'S CIVIL RIGHTS UNDER THE FOURTEENTH SUBSTANTIVE DUE PROCESS VIOLATIONS

79.    T'Yonna Major repeats and realleges paragraphs one (1) through sixty-five (65) as though more fully set forth herein.

80.    At all times material hereto, Deputy Doe was a "person" under 42 U.S.C. § 1983 and was acting under the color of state law within the meaning of 42 U.S.C. § 1983.

81.    At all times material hereto, T'Yonna Major had a cognizable liberty interest under the Fourteenth Amendment to be free from unnecessary pain and harm and a fundamental right to her physical health, safety, and well-being.

82.    Deputy Doe's direct communication to T'Yonna Major's mother, Brandi Turner, rendered T'Yonna Major more vulnerable to falling victim to Moses' killing spree.

83.    Deputy Doe had a statutory or constitutional duty to prevent harm to T'Yonna Major by ensuring she was aware of the dangerous surroundings when her mother specifically asked.

84.    At all times material, Deputy Doe was aware that Moses had shot and killed Nathacha Augustin.

85.    At all times material, Deputy Doe was aware that Moses was still at large in the area.

86.    At all times material, T'Yonna Major had a fundamental right to physical safety that was free from unreasonable risk of serious harm.

87.    Deputy Doe was objectively aware of the risk of serious harm, recklessly disregarded the risk of damage, and his conduct was more than mere negligence.

88.    Despite having the authority and means to provide life-protecting information to Brandi Turner related to an at large killer in her neighborhood, Deputy Doe was deliberately indifferent to said conditions and recklessly disregarded the risk of harm by providing false information to T'Yonna Major's mother, Brandi Turner.

89.    The Estate of T'Yonna Major is obligated to the undersigned for the payment of its attorney's fees and seeks recovery of reasonable attorney's fees pursuant to the provisions of 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff, THE ESTATE OF T'YONNA MAJOR, demands a judgment against Deputy Doe for both compensatory and punitive damages, including costs of this action and attorney fees, and for such other relief as this Court deems just and proper.

## COUNT III – SHERIFF JOHN MINA'S VIOLATION OF BRANDI TURNER'S CIVIL RIGHTS UNDER THE FOURTEENTH AMENDMENT EQUAL PROTECTION

90.    Brandi Turner repeats and realleges paragraphs one (1) through sixty-five (65) as though more fully set forth herein.

91.    Brandi Turner, an African American female, is a member of a protected class and a U.S. Citizen.

92.    Sheriff Mina is a government municipality and/or political subdivision.

93.    Brandi Turner is a citizen and protected by the laws of this country against racial discrimination.

94.    Pine Hills, Florida, is a subdivision of Orlando, Florida, and consists of 82.7% non-white minorities[7].

---

[7] *See* United States Census Bureau, *United States Census Bureau Searchable Data*, https://data.census.gov/table/ACSST5Y2020.S1101?q=Pine+Hills+CDP;+Florida+ (last visited February 17, 2025).

95.    Windermere, Florida, is a subdivision of Orlando, Florida, and consists of only 9.4% non-white minorities[8].

96.    At all times material, Sheriff Mina was required to uphold and enforce the law and implement policies to ensure all constituents receive fair and equal protection as it relates to the Orange County Sheriff's Office's response and handling of violent crimes.

97.    As a resident of Pine Hills, Brandi Turner was subjected to differential treatment because of her race and to her detriment.

98.    The Orange County Sheriff's Office maintains a policy that denies equal protection to residents of Pine Hills, such as Brandi Turner, while similarly situated Windermere residents enjoy heightened security and safety measures for violent crimes.

**WHEREFORE**, Plaintiff, BRANDI TURNER, demands a judgment against Sheriff John Mina for both compensatory and punitive damages, including costs of this action and attorney fees, and for such other relief as this Court deems just and proper.

---

[8]    *See* United States Census Bureau, *United States Census Bureau Searchable Data*, https://data.census.gov/table?q=Windermere%20town,%20Florida&d=DEC%20Demographic%20Profile (last visited February 17, 2025).

## COUNT IV – SHERIFF JOHN MINA'S VIOLATION OF T'YONNA MAJOR'S CIVIL RIGHTS UNDER THE FOURTEENTH AMENDMENT EQUAL PROTECTION

99.    T'Yonna Major repeats and realleges paragraphs one (1) through sixty-five (65) as though more fully set forth herein.

100.    T'Yonna Major, an African-American female, is a member of a protected class and a U.S. Citizen.

101.    Sheriff Mina is a government municipality and/or political subdivision.

102.    T'Yonna Major is a citizen and is protected, by laws of this country, against racial discrimination.

103.    Pine Hills, Florida, is a subdivision of Orlando, Florida, and consists of 82.7% non-white minorities[9].

104.    Windermere, Florida, is a subdivision of Orlando, Florida, and consists of only 9.4% non-white minorities[10].

105.    At all times material, Sheriff Mina was required to uphold and enforce the law and implement policies to ensure all constituents receive fair and equal

---

[9] *See* United States Census Bureau, *United States Census Bureau Searchable Data*, https://data.census.gov/table/ACSST5Y2020.S1101?q=Pine+Hills+CDP;+Florida+ (last visited February 17, 2025).

[10] *See* United States Census Bureau, *United States Census Bureau Searchable Data*, https://data.census.gov/table?q=Windermere%20town,%20Florida&d=DEC%20Demographic%20Profile (last visited February 17, 2025).

protection regarding the Orange County Sheriff's Office's response to and handling of violent crimes.

106.    As a resident of Pine Hills, T'Yonna Major was subjected to differential treatment because of her race and to her detriment.

107.    The Orange County Sheriff's Office maintains a policy that denies equal protection to residents of Pine Hills, such as T'Yonna Major, while similarly situated Windermere residents enjoy heightened security and safety measures for violent crimes.

**WHEREFORE**, Plaintiff, THE ESTATE OF T'YONNA MAJOR, demands a judgment against Sheriff John Mina, in his capacity as Sheriff of Orange County, for both compensatory and punitive damages, including costs of this action and attorney fees, and for such other relief as this Court deems just and proper.

## COUNT V – WRONGFUL DEATH
## DYLAN LYON V. SHERIFF MINA

108.    Dylan Lyons repeats and realleges paragraphs one (1) through sixty-five (65) as though more fully set forth herein.

109.    On February 22, 2023, the Orange County Sheriff's Office released information relating to the shooting death of Nathacha Augustin to local news stations, including Spectrum News 13, foreseeably inducing their presence at the crime scene.

110.   Orange County Sheriff's Office released this information despite the shooter remaining at large and on foot.

111.   Orange County Sheriff's Office failed to barricade or restrict access to the area where the shooting occurred until the shooter was apprehended or the area was safe.

112.   This failure led to Dylan Lyons and his cameraman parking at the exact location where Nathacha Augustin was killed.

113.   By releasing information about the shooting, the Orange County Sheriff's Office triggered an affirmative duty to protect the news reporters who responded to the scene.

114.   The Orange County Sheriff's Office's actions placed Dylan Lyons in a dangerous position, exposing him to a danger he would not have otherwise faced.

115.   Orange County Sheriff's Office owed a duty to exercise reasonable care to protect Dylan Lyons, where their law enforcement activities created a foreseeable zone of risk.

116.   Orange County Sheriff's Office breached this duty by knowingly releasing information about the killing of Nathacha Augustin and then removing any remanence of a crime scene.

117.   Orange County Sheriff's Office further breached this duty by failing to secure the area until it was safe, when it invited news reporters, such as Dylan Lyons, to the location of an active murder scene.

118.   Orange County Sheriff's Office's conduct was a direct and proximate cause of the death of Dylan Lyons.

**WHEREFORE**, as a result of the tragic and untimely death of Dylan Lyons in violation of the Florida Wrongful Death Act, the Survivors of and the Estate of Dylan Lyons seek all possible damages under State Law, including, but not limited to, the following:

    A.    The Estate of Dylan Lyons has sustained the following damages:

        i.    Loss of earnings of Dylan Lyons from the date of his death, less loss of support of his survivors, excluding contributions in kind, with interest;

        ii.    Loss of prospective net estate accumulations;

        iii.    Funeral and burial expenses incurred due to the death of Dylan Lyons, which have become a charge against his estate, or were paid on his behalf.

    B.    Each and every other Survivor has sustained the following damages:

     i.     Loss of support and services of their family member; and

     ii.     Mental pain and suffering from the date of injury and continuing for the remainder of their life.

## COUNT VI – TITLE VI OF THE CIVIL RIGHTS ACT OF 1964
## BRANDI TURNER V. SHERIFF MINA

119.   Brandi Turner repeats and realleges paragraphs one (1) through sixty-five (65) as though more fully set forth herein.

120.   Brandi Turner, an African-American female, is a member of a protected class and a U.S. Citizen.

121.   Sheriff Mina is a government municipality and/or political subdivision.

122.   Brandi Turner is a citizen protected by the laws of this country, and protected by the laws of this country against racial discrimination.

123.   Pine Hills, Florida, is a subdivision of Orlando, Florida, and consists of 82.7% non-white minorities[11].

---

[11] *See* United States Census Bureau, *United States Census Bureau Searchable Data*, https://data.census.gov/table/ACSST5Y2020.S1101?q=Pine+Hills+CDP;+Florida+ (last visited February 17, 2025); United States Census Bureau, *United States Census Bureau Searchable Data*,

124.   Windermere, Florida, is a subdivision of Orlando, Florida, and consists of only 9.4% non-white minorities[12].

125.   At all times material, Sheriff Mina was required to uphold and enforce the law and implement policies to ensure all constituents receive fair and equal protection regarding the Orange County Sheriff's Office's response to and handling of violent crimes.

126.   As a resident of Pine Hills, Brandi Turner was subjected to differential treatment because of her race and to her detriment.

127.   The Orange County Sheriff's Office maintains a policy that denies equal protection to residents of Pine Hills, such as Brandi Turner, while similarly situated Windermere residents enjoy heightened security and safety measures for violent crimes.

128.   By assigning inadequate personnel and safety measures to the residents of the primarily minority neighborhood of Pine Hills, the Orange County Sheriff's Office denies residents such as Brandi Turner access to public safety programs, in direct violation of Title VI of the Civil Rights Act of 1964.

129.   As a recipient of federal funding, the Orange County Sheriff's Office is prohibited from discrimination based on race, national origin, or color.

---

[12] *See* United States Census Bureau, *United States Census Bureau Searchable Data*, https://data.census.gov/table?q=Windermere%20town,%20Florida&d=DEC%20Demographic %20Profile (last visited February 17, 2025).

**WHEREFORE**, Plaintiff, BRANDI TURNER, demands a judgment against Sheriff John Mina for both compensatory and punitive damages, including costs of this action and attorney fees, and for such other relief as this Court deems just and proper.

## COUNT VII – TITLE VI OF THE CIVIL RIGHTS ACT OF 1964
## T'YONNA MAJOR V. SHERIFF MINA

130.   T'Yonna Major repeats and realleges paragraphs one (1) through sixty-five (65) as though more fully set forth herein.

131.   T'Yonna Major, an African-American female, is a member of a protected class and a U.S. Citizen.

132.   Sheriff Mina is a government municipality and/or political subdivision.

133.   T'Yonna Major is a citizen and is subject to the laws of this country against racial discrimination.

134.   Pine Hills, Florida, is a subdivision of Orlando, Florida, and consists of 82.7% non-white minorities[13].

---

[13] *See* United States Census Bureau, *United States Census Bureau Searchable Data*, https://data.census.gov/table/ACSST5Y2020.S1101?q=Pine+Hills+CDP;+Florida+ (last visited February 17, 2025); United States Census Bureau, *United States Census Bureau Searchable Data*,

135.   Windermere, Florida, is a subdivision of Orlando, Florida, and consists of only 9.4% non-white minorities[14].

136.   At all times material, Sheriff Mina was required to uphold and enforce the law and implement policies to ensure all constituents receive fair and equal protection regarding the Orange County Sheriff's Office's response to and handling of violent crimes.

137.   As a resident of Pine Hills, T'Yonna Major was subjected to differential treatment because of her race and to her detriment.

138.   The Orange County Sheriff's Office maintains a policy that denies equal protection to residents of Pine Hills, such as T'Yonna Major, while similarly situated Windermere residents enjoy heightened security and safety measures for violent crimes.

139.   By assigning inadequate personnel and safety measures to the residents of the primarily minority neighborhood of Pine Hills, the Orange County Sheriff's Office denies residents such as T'Yonna Major access to public safety programs, in direct violation of Title VI of the Civil Rights Act of 1964.

140.   As a recipient of federal funding, the Orange County Sheriff's Office is prohibited from discrimination based on race, national origin, or color.

---

[14] *See* United States Census Bureau, *United States Census Bureau Searchable Data*, https://data.census.gov/table?q=Windermere%20town,%20Florida&d=DEC%20Demographic%20Profile (last visited February 17, 2025).

**WHEREFORE**, Plaintiff, THE ESTATE OF T'YONNA MAJOR, demands a judgment against Sheriff John Mina, in his capacity as Sheriff of Orange County, for both compensatory and punitive damages, including costs of this action and attorney fees, and for such other relief as this Court deems just and proper.

### COUNT VIII – BRANDI TURNER AND T'YONNA MAJOR'S CONSOLIDATED CLAIMS AGAINST DEFENDANT JOHN MINA, IN HIS CAPACITY AS SHERIFF OF ORANGE COUNTY, FOR LIABILITY UNDER §768.28(9)(a)

141.    Brandi Turner and the Estate of T'Yonna Major, repeat and reallege paragraphs one (1) through sixty-five (65) as if more fully set forth herein.

142.    This is a cause of action under Florida's waiver of sovereign immunity statute, § 768.28, Fla. Stat., which provides specified and limited relief for torts committed by the state or any of its agencies or subdivisions, including elected county sheriffs, for injury or loss of property.

143.    Despite the intentional and unconstitutional conduct alleged in Counts I and II, there is no allegation that Deputy Doe "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property," as outlined in § 768.28(9)(a). Accordingly, under Florida state law, liability for their conduct falls on the state agency employer, Sheriff Mina, and not the state agency employees. The limited waiver of sovereign immunity outlined in § 768.28(9)(a), Fla. Stat. seeks to hold the agency

employer liable and not the agency employee liable, except in instances of "actual malice."

144.    Current case law in the Circuit equates "bad faith with actual malice," which only applies when the conduct was committed with "ill will, hatred, spite, or an evil intent," a standard found by the United States Supreme Court to be even more severe than "reckless or callous indifference" which alone is sufficient to support a claim for punitive damages under the common law. That same body of case law defines that "wanton and willful requirement" as describing conduct "much more reprehensible and unacceptable than mere intentional conduct."

145.    Accordingly, the allegations in Counts I and II against Deputy Doe do not rise to that level of extreme malfeasance and present no inconsistency with the allegations in this Count, under § 768.28(9)(a) Fla. Stat., which impose liability strictly upon the state agency employer and not the state agency employees in the absence of any allegations of *actual malice*, meaning "ill will, hatred, spite, or an evil intent" on the part of said agency employees. As that term has been defined, allegations of actual malice on the part of said agency employees are not being made in any of the counts in this Complaint.

**WHEREFORE**, Plaintiffs, Brandi Turner, along with the Estate of T'Yonna Major, respectfully request entry of (2) two separate judgments against Defendant Mina, in his official capacity as Sheriff, for compensatory damages as outlined in

§768.28(5)(a), under this Count, as suffered by each Plaintiff, including costs of this

action, and for such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs request a trial by jury on all issues so triable.

**RESPECTFULLY** submitted this 17th day of February 2025.

*Mark. E. NeJame, Esquire*
**Mark E. NeJame, Esq.**
Florida Bar Number: 310931
**Ryan J. Vescio, Esq.**
Florida Bar No. 14032
**DeLayne Penland, Esq.**
Florida Bar Number: 1024836
**NEJAME LAW, P.A**
111 N. Orange Avenue, Suite 1300
Orlando, FL 32801
PH: (407) 500-0000
F:    (407) 802-1448
mark@nejamelaw.com
ryan@nejamelaw.com
delayne@nejamelaw.com
PI@nejamelaw.com
Attorney(s) for Plaintiffs