UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRANDI TURNER, an individual,
THE ESTATE OF T'YONNA MAJOR,
and THE ESTATE OF DYLAN LYONS,

        Plaintiffs,

v.                          CASE NO.: 6:25-cv-00252-PGB-UAM

DEPUTY JOHN DOE, an individual,
JOHN MINA, in his official capacity
as Sheriff of Orange County,

        Defendants.

_____/

### <u>DEFENDANT JOHN MINA'S</u><br><u>MOTION TO DISMISS AMENDED COMPLAINT</u>

Defendant JOHN MINA in his official capacity as Sheriff of Orange County, Florida, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6) & 12(e), moves to dismiss the Amended Complaint (Doc. 21).

### I.    BACKGROUND AND SUMMARY OF ALLEGATION

1.    This is an action brough pursuant to 42 U.S.C § 1983 seeking compensatory and punitive damages for discrimination on the basis of race in a federally subsidized program in violation Title VI of the Civil Rights Act of 1964. Plaintiffs do not seek injunctive relief in any form to ensure that federal funds

received by Sheriff Mina in the future are spent in a nondiscriminatory manner.

Plaintiffs have also asserted state law claims of negligence pursuant to this court's

pendant jurisdiction. The Amended Complaint alleges eight counts:

**Count I:** Brandi Turner - Violation of Substantive Due Process Rights against Deputy John Doe

**Count II:** Estate of T'yonna Major against Deputy John Doe - Violation of Substantive Due Process Rights

**Count III:** Brandi Turner against Sheriff Mina - Violation of Equal Protection Clause (*Monell*)

**Count IV:** Estate of T'yonna Major against Sheriff Mina - Violation of Equal Protection Claim (*Monell*)

**Count V:** Estate of Dylon Lyons against Sheriff Mina - Wrongful Death (negligence)

**Count VI:** Brandi Turner against Sheriff Mina - Title VI of the Civil Rights Act of 1964

**Count VII:** Estate of T'yonna Major against Sheriff Mina - Title VI of the Civil Rights Act of 1964

**Count VIII:** Brandi Turner & Estate of T'yonna Major against Sheriff Mina – Unspecified claims pursuant to Fla. Stat. § 768.28 for the conduct of Deputy Doe

2.      Pine Hills is within an unincorporated subdivision of Orange County,

Florida, and a larger percentage of its residents live below the federal poverty level

than the whole of Orange County [Doc. 21, ¶¶ 15-16].

3.      The Orange County Sheriff's Office (OCSO) discriminates against

black residents living in Pine Hills, and this discrimination allegedly led to the

murders of Major and Lyons [Doc. 21, ¶ 17].

4.      At approximately 11:00 a.m. on February 22, 2023, the deadly shooting

of Nathacha Augustin occurred in Pine Hills. [Doc. 21, ¶ 19].

5.     A witness inside the car in which Ms. Augustin was shot identified the shooter as Keith Moses ("Moses"), who fled the scene on foot. [Doc. 21, ¶ 20].

6.     Moses' description was not released to the public despite his unique and distinct appearance and the fact that he had a criminal history and his mugshots were easily attainable. [Doc. 21, ¶¶ 21-22].

7.     Orange County Sheriff's deputies arrived at the scene at approximately 11:17 a.m. and processed the crime scene in 4 hours and reopened the location to the public while Moses remained at large without notifying the surrounding residents that a murderer was in the area. [Doc. 21, ¶¶ 23-24].[1]

8.     The Amended Complaint alleges that "as a result of this dangerous policy an armed and dangerous murderer wandered the area for hours without so much as an indication to the community that he was still lurking." [Doc. 21, ¶ 25].[2]

9.     At approximately 2:00 p.m. on February 22, 2023, Brandi Turner (Turner) picked her 9-year-old daughter T'Yonna Major (Major) up from school and entered their neighborhood to return home. [Doc. 21, ¶ 26].

10.    Turner asked Deputy John Doe, who was positioned at the entrance of the neighborhood, about the purpose of their presence. [Doc. 21, ¶ 27].

---

[1]Significantly, the Amended Complaint does not allege that the Orange County Sheriff's Office determined that Moses was a suspect in the shooting or that he was still in the area.

[2]The Amended Complaint does not allege what "this dangerous policy" is.

11.    Deputy Doe responded, "Everything is under control." [Doc. 21, ¶ 28].

12.    Turner relied on Deputy Doe's representatio and went home with Major unaware that an armed killer remained at large in the area. [Doc. 21, ¶ 28].

13.    Turner left her back door open. Moses entered the home and shot Turner and Major. Major died from her injuries. [Doc. 21, ¶ 29-40].

14.    The Orange County Sheriff's Office notified Spectrum News 13 of the shooting of Nathacha Augustin at some unspecified point in time. [Doc. 21, ¶ 42].

15.    Moses fled Turner's home on foot, returned to the area where he shot and killed Nathacha Augustin where Spectrum News 13 reporter Dylan Lyons was present and reporting on the shooting. [Doc. 21, ¶¶ 41-43].

16.    The OCSO had completed their investigation by this time and had cleared the area. Doc. 21, ¶ 44].

17.    Moses approached Lyons and his cameraman and shot both of them, killing Lyons. [Doc. 21, ¶¶ 44-47].

18.    Moses was then arrested in a "lackadaisical and unconcerned manner" by OCSO deputies. [Doc. 1, ¶¶ 48-56].

19.    The OCSO "upon information and belief" "did not dispatch aviation assistance to locate Moses despite his being on foot."[3] [Doc. 21, ¶¶ 57-59].

_____

[3]Again, the Complaint does not allege that the OCSO had made any determination that Moses was responsible for shooting Nathacha Augustin or that the OCSO even considered him a suspect.

20.    The Amended Complaint alleges that the OCSO has a policy of discrimination that results in residence of Pine Hills "not [being] treated with the same sense of urgency, importance, or respect displayed for other more affluent or White neighborhoods in Orange County." [Doc. 21, ¶¶ 60-61]. This alleged policy resulted in the death of Majors and Lyons. [Doc. 21, ¶ 61].

21.    "Upon information and belief, the OCSO "assigns less personnel and resources to Pine Hills than its similarly situated, but primarily White, counterpart Windermere" even though Pine Hills has a crime rate that is nearly double that of Windermere. [Doc. 21, ¶¶ 63-64].

## II.    LEGAL STANDARD FOR MOTION TO DISMISS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### III.    THE ESTATE OF T'YONNA MAJORS AND THE ESTATE OF DYLAN LYONS LACK STANDING

"Florida's Wrongful Death Act ("FWDA") provides that any 'action shall be

brought by the decedent's personal representative, who shall recover for the benefit

of the decedent's survivors and estate all damages, as specified in this act, caused by

the injury resulting in death.'" *Howard v. Wilkinson*, 305 F.Supp.3d 1327, 1336

(M.D. Fla. 2018) (quoting Fla. Stat. § 768.20)). "[A] section 1983 cause of action is

entirely personal to the direct victim of the alleged constitutional tort' and 'only the

purported victim, or his estate's representative(s), may prosecute a section 1983

claim." *Id.* (collecting cases).

In this case, Majors' Estate has asserted 2 counts pursuant to section 1983

(Count II, Count IV), a single count pursuant to Title VI of the Civil Rights Act of

1964 (Count VII), and a single count pursuant to Fla. Stat. § 768.28 (Count VIII).

Lyons' Estate has asserted a single count of negligence pursuant to the FWDA,

(Count V). Per the FWDA and the case law of this Court, these claims should have

been brought by *the representatives* of the Majors Estate and the Lyons Estate, not

the estates. Accordingly, these claims are due to be dismissed. *See Howard*, 305

F.Supp.3d at 1336 (dismissing section 1983 individual capacity claims brought by plaintiffs other than the representative of the estate of the decedent).

## IV.    IF DEPUTY DOE WERE SUFFICIENTLY IDENTIFIED, HE WOULD BE ENTITLED TO QUALIFIED IMMUNITY ON COUNT I AND COUNT II

"Qualified immunity protects government officials from liability for civil damages unless they violate a statutory or constitutional right that was clearly established at the time the alleged violation took place." *Waldron v. Spicher*, 954 F.3d 1297, 1303 (11th Cir. 2020). The court must first determine whether the official was acting within the scope of his or her discretionary authority. *Id.* If the court answers this question in the affirmative, then the burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Id.* (citing *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003)) (emphasis in original). "Then, the plaintiff must demonstrate that his constitutional rights were violated and that the right at issue was "clearly established" at the time of defendant's alleged misconduct." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

In this case, the Complaint describes Deputy Doe performing a discretionary law enforcement function. The Complaint alleges that Deputy Doe was an on-duty Orange County Sheriff's Office deputy who was parked near the entrance to Turner's neighborhood to establish a police presence in the aftermath of a fatal shooting. Given these allegations, there is no genuine dispute that Deputy Doe was

7

performing discretionary duties typical of a law enforcement officer. *See Hunter v. City of Leeds*, 941 F.3d 1265, 1278 (11th Cir. 2019) (officer acting within discretionary authority when pursuing and apprehending criminal suspect in response to the 911 call).  Thus, the burden shifts to Plaintiffs to demonstrate that Deputy Doe violated Turner and Major's "clearly established" constitutional rights. *Waldron*, 954 F.3d at 1303.

### a. Turner and Major Fail to Allege a Violation of a Substantive Due Process Right

The Amended Complaint alleges that Deputy Doe was aware that "Moses had shot and killed Nathacha Augustin" and was "still at large in the area." The Amended Complaint further alleges Deputy Doe knew of a risk of serious harm to Turner and Major, but he "recklessly disregarded the risk" and remained deliberately indifferent by telling Turner "Everything is under control." [Doc. 21, ¶¶ 72-77]. On these facts, Turner and Major allege that Deputy Doe violated their due process rights by failing to protect them from "falling victim to Moses' killing spree." [Doc. 21, ¶ 70].

It is firmly established that there is no due process right to protection by the state against harm caused by third-party actors. Nothing in the Due Process Clause itself requires the state to protect the life, liberty, and property of its citizens against invasion by private actors.  As articulated in *Deshaney v. Winnebago County Dep't of Social Services*, the Clause is a limitation on the state's power to act, not as a guarantee of certain minimal levels of safety and security.  498 U.S. 189, 195 (1989).

It forbids the state itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the state to ensure that those interests do not come to harm through other means. *Id*. This is because the Fourteenth Amendment's Due Process Clause was intended to prevent government misuses of power not to ensure the state protected them from each other. *Id*. at 196.

Further, the Due Process Clause confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of the individual. *Id*. As a matter of law, an agency's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause. *Mitchell v. Duval Cnty. Sch. Bd*., 107 F.3d 837, 838 (11th Cir. 1997) ("[A] person does not have a constitutional right under the Fourteenth Amendment to be protected from the criminal acts of third parties."); *Saunders v. City of Lakeland*, 2024 U.S. Dist. LEXIS 97761, *8-9 (M.D. Fla. 2024) (no general constitutional right to police services.); *Thomas v. City of Americus*, Case No. 1:21-CV-107 (LAG), 2022 U.S. Dist. LEXIS 83781, at *8-13 (M.D. Ga. March 18, 2022) (granting motion to dismiss claims under Due Process Clause for failing to protect a murdered victim from her abusive boyfriend by removing the boyfriend from the residence after being requested by the victim to do so on at least two prior occasions) *aff'd* 2023 U.S. App. LEXIS 5980, *7 (11th Cir. 2023).

Moreover, "[i]n a non-custodial situation, like the present one, only a purpose to cause harm unrelated to the legitimate object of law enforcement satisfies the element of arbitrary conduct shocking to the conscience that is necessary for a due process violation." *McCants v. City of Mobile*, 752 Fed.Appx. 744, 749 (11th Cir. 2018) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998)). However, the Amended Complaint contains no allegations that Deputy Doe acted with a "purpose to cause harm," or that he "acted maliciously or sadistically."

Accordingly, under Supreme Court and Eleventh Circuit precedent, Deputy Doe had no constitutional obligation under the Due Process Clause to protect or otherwise prevent Turner and Major's tragic injuries at the hands of Moses, and there are no allegations that Deputy Doe intended to cause harm, acted maliciously or sadistically, or otherwise engaged in any conduct that engaged in arbitrary conduct shocking to the conscience.

### b. Turner and Major's Substantive Due Process Rights Were Not Clearly Established

Even if it is assumed that the Amended Complaint alleges sufficient facts to plausibly establish a due process deprivation, those rights were not clearly established at the time Deputy Doe allegedly contacted Turner on February 23, 2023.

"The substantive due process guarantee protects against government power arbitrarily and oppressively exercised". *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citation omitted). With respect to executive action, "only the most

egregious official conduct can be said to be "arbitrary in the constitutional sense[.]" *Id.* The "Due Process Clause was intended to prevent government officials from abusing [their] power, or employing it as an instrument of oppression." *Waldron v. Spicher*, 954 F.3d 1306 (11th Cir. 2020) (citing *Lewis*, 523 U.S. at 846). "Lewis noted that "the measure of what is conscience shocking is no calibrated yard stick[.]" "Context and the circumstances are significant, and the level of culpability required can vary with the context. *Id.* Thus, Lewis noted that the Court had held that "deliberately indifferent conduct ... [is] enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial[.]" *Id.*

However, the Eleventh Circuit "has been explicit in stating that deliberate indifference is insufficient to constitute a due-process violation in a non-custodial setting." *Id.*;*Thomas v. City of Americus*, 2023 U.S. App. LEXIS 5980, *7 (11th Cir. 2023).

In *Thomas*, a case involving a due process claim based on local law enforcement's alleged failure to protect a resident from private violence, the Eleventh Circuit reaffirmed its holding in *Waldron*:

> Outside the custodial context, "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003). "Acts intended to injure in some way unjustifiable by any government interest are most likely to rise to the conscience-

11

shocking level." *Id.* (quotations omitted). … we've never held that "deliberate indifference is a sufficient level of culpability to state a claim of violation of substantive due process rights in a non-custodial context." *Waldron v. Spicher*, 954 F.3d 1297, 1309 (11th Cir. 2020).

In this case, the Complaint does not allege "arbitrary or conscience shocking [conduct] in a constitutional sense." *See Waddell*, 329 F.3d at 1305. There are no allegations that Deputy Doe acted with any intent to injure or harm Turner or Major in such a way that "shocks the conscience." Instead, the Complaint alleges that Deputy Doe knew that Moses was a dangerous murder on the loose and that he posed a risk of serious harm to Turner and Major. He then recklessly disregarded that risk of harm by telling Turner that everything was ok, which he knew was false. [Doc. 21, ¶¶ 72-77]. The Amended Complaint alleges in a conclusory fashion that this conduct was "arbitrary and conscience shocking." However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. at 678.  There are no factual allegations that Deputy Doe intended to injure Turner and Major or that could plausibly demonstrate conduct that was arbitrary or conscience shocking.

Finally, Turner and Major allege that Deputy Doe acted with deliberate indifference. "No case in the Supreme Court, or in this Circuit, has held that deliberate indifference is a sufficient level of culpability to state a claim of violation of substantive due process rights in a non-custodial context." *L.S. ex rel. Hernandez*, 982 F.3d at 1331 (quoting *Waldron v. Spicher*, 954 F.3d 1297, 1310 (11th Cir.

12

2020)). The Eleventh Circuit has repeatedly expressed doubt about whether "deliberate indifference can ever be "arbitrary" or "conscience shocking" in a non-custodial setting," *L.S. ex rel. Hernandez*, 982 F.3d at 133, and has "suggested that "the correct legal threshold for substantive due process liability" might be much higher than deliberate indifference." *Id.* (citing *Waddell*, 329 F.3d at 130 n.5); *Waldron*, 954 F.3d at 1306 ("[D]eliberate indifference is insufficient to constitute a due-process violation in a non-custodial setting."). Accordingly, to the extent that Count I and II are predicated on the deliberate indifference of Deputy Doe, Turner and Major's alleged due process rights were not clearly established.

## V.    COUNT III AND COUNT IV FAIL TO STATE EQUAL PROTECTION *MONELL* CLAIMS AGAINST SHERIFF MINA

### a. The Amended Complaint Fails to Allege an Unconstitutional Policy of Denying Orange County Residents Equal Protection in the Provision of Police Services

A governmental entity cannot be sued under § 1983 for injuries that are caused solely by its employees. *Monell v. Department of Social Services*, 98 S. Ct. 2018, 2037-2038 (U.S. 1978). A government agency may be liable pursuant to §1983 if the agency has a "policy or custom that caused the injury." *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989). For a government agency to be liable under § 1983, a plaintiff must show that the policy that caused the injury was the "moving force behind the constitutional deprivation." *Farred v. Hicks*, 915 F.2d 1530, 1532-

33 (11th Cir. 1990); *see also Board of the County Commissioners v. Brown*, 520 U.S. 397, 403 (1997).

A claim for liability based on an official policy can be either (1) alleging an officially promulgated policy, or (2) alleging an unofficial custom or practice demonstrated through the acts of the final policymaker of the entity. *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329-30 (11th Cir. 2003). A complaint must also identify the policy or custom that caused the injury, so liability is not based upon an isolated incident. *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (citations omitted). A single incident of unconstitutional activity is generally insufficient to impose liability against a municipality. *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011).

Here, the Amended Complaint fails to allege a pattern or practice by the OCSO of providing non-minority Orange County residents more beneficial police services under circumstances similar to those alleged in the Amended Complaint. Indeed, the Amended Complaint fails to allege so much as a single prior equal protection violation of any kind. *See e.g., Salvato v. Miley*, 790 F.3d 1286, 1298 (11th Cir. 2015) (single incident where Sheriff failed to investigate constitutional violation not enough to hold Sheriff liable under 42 U.S.C. § 1983); *see also Rivas v. Figueroa*, 2012 WL 1378161 (S.D. Fla. Apr. 20, 2012) (finding that the plaintiff had sufficiently alleged facts of a custom/policy/pattern/practice to overcome the

defendants' motion to dismiss where the plaintiff alleged, "in great detail", sixteen examples of police officers using excessive force and receiving no disciplinary action); *Vasquez v. City of Miami Beach*, 895 F.Supp.2d 1275, 1278 (S.D. Fla. 2012) (thirty-eight instances of "similar enough" conduct); *J.V.M. v. Town of Palm Beach Shores*, 2017 WL 4476373 (S.D. Fla. 2017) (plaintiff alleged eleven prior instances of misconduct towards women and defendant municipality took no action).

### b. The Amended Complaint Fails to Allege that Sheriff Mina Provided More Favorable Treatment to Other Similarly Situated People Not Belonging to Turner and Major's Protected Class

"The Equal Protection Clause of the Fourteenth Amendment directs states to treat similarly situated persons alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Equal protection violations arise when the state classifies and treats "some discrete and identifiable group of citizens differently from other groups." *Corey Airport Servs., Inc. v. ClearChannel Outdoor, Inc.*, 682 F.3d 1293, 1296 (11th Cir. 2012).

To state an Equal Protection claim under § 1983, Turner and Major must show that the OCSO treated them differently than other similarly situated persons based on their membership in an identifiable group or class of persons. *See id.*; *Jones v. Ray*, 279 F.3d 944, 947 (11th Cir. 2001).

In addition, "proof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim." *Id.* Discriminatory purpose "implies more

than intent as volition or intent as awareness. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (internal citations omitted).

Count III and Count IV allege that 82.7% of Pine Hills residents are non-white minorities, while only 9.4% of Windermere residents are non-white minorities. [Doc. 21, ¶¶ 96-97]. The Amended Complaint further alleges that Sheriff Mina has a policy that denies equal protection to residents of Pine Hills while similarly situated Windermere residents enjoy heightened security and safety measures for violent crimes. [Doc. 1, ¶ 100].  The Amended Complaint alleges that the Pine Hills community received less favorable protective services when the OCSO (1) allocated "less personnel and resources to Pine Hills than … Windermere," (2) failed to a release a description of the suspected killer to the public, (3) processed the crime scene in 4 hours and reopened the area to the public leaving no trace of the crime while the suspected killer was still at large, and (4) failed to "dispatch aviation assistance to locate Moses despite his being on foot."[4]

---

[4]The conclusory allegations concerning the OCSO's allocation of personnel and resources, and failure to dispatch aviation assistance are not entitled to a presumption of truth because they are not supported by any facts based "upon information and belief," [Doc. 1, ¶¶ 57, 63]. *See Zhejiang Dushen Necktie Co. v. Blue Med, Inc.*, No. 16-24679, 2017 WL 4119604, at *6 (S.D. Fla. Sept. 18, 2017) ("[T]he *Twombly* plausibility standard ... does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the belief is based on factual information that makes

However, the Amended Complaint fails to allege any facts indicating that Pine Hills and Windermere are sufficiently similar such that the alleged disparity in the allocation of personnel and resources would amount to differential treatment of similarly situated neighborhoods. The Amended Complaint is also lacking of any instances where the OCSO responded differently to similar circumstances that arose in Windermere, or elsewhere in Orange County. Bare and conclusory allegations that "Windermere residents enjoy heightened security and safety measures for violent crimes" are conclusory, speculative, and insufficient to state a plausible equal protection claim. *See GJR Investments v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("Bare allegations that "other" applicants, even "all other" applicants, were treated differently do not state an equal protection claim; a complaint must attempt to show in some fashion that these "other" applicants were situated similarly to the plaintiff.*") overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1262 (11th Cir. 2004) ("[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent

---

the inference of culpability plausible." (alterations added; internal quotation marks and citation omitted) ). "Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." *Phoenix Entm't Partners, LLC v. Orlando Beer Garden, Inc.*, No. 6:616-cv-80-Orl-31DAB, 2016 WL 1567590, at *5 (M.D. Fla. Mar. 30, 2016) (quotation marks and citation omitted).

dismissal." At bottom, the complaint fails to allege any facts that would enable a basic comparison between protective service provided in Pine Hills against protective services provided in Windemere, or elsewhere in Orange County, under like circumstances.

## VI. COUNT VI AND COUNT VII FAIL TO STATE TITLE VI CLAIMS AGAINST SHERIFF MINA

Section 601 of Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Civil Rights Act of 1964 § 601, 42 U.S.C. § 2000d. "Title VI …, like the Fourteenth Amendment, bars only intentional discrimination." *Elston v. Talladega Cnty. Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir.1993). "Title VI … provides no more protection than the equal protection clause—both provisions bar only intentional discrimination." *Id.* at 1405 n. 11; *Alexander v. Sandoval*, 532 U.S. 275, 280 ("§ 601 prohibits only intentional discrimination.").

Here, Turner and Major do not allege any non-conclusory facts that plausibly create an inference of intentional discrimination. There are no factual allegations concerning policies or actions of the OCSO that demonstrate public funds are intentionally spent in a manner that discriminates among protected classes. There are no allegations of a history of discriminatory official actions, or procedural and

substantive departures from the norms generally followed by the OCSO. Nor are there any allegations pertaining to the historical background or context of the decisions at issue here. *See Burton v. City of Belle Glade*, 178 F.3d 1175 1189 (11th Cir. 1999) (discussing ways of showing discriminatory purpose of government decision or act); *Corbitt v. Henry County Commission*, 2023 WL 8587257, at *6 (M.D. Ala. Dec. 11, 2023) (concluding that complaint failed to allege any facts that plausibly create an inference of intentional discrimination that alleged only that the department (1) failed to timely dispatch law enforcement, (2) failed to follow-up with phone call, and (3) has historically neglected providing racially equal emergency medical services to African-American communities in the county); *Saunders v. City of Lakeland*, 2024 WL 2815642, *5 (M.D. Fla. Jun. 3, 2024 (summarily dismissing Title VI claim and citing *Elston v. Talladega Cnty. Bd. of Educ.*, 997 F.2d 1394, 1405 n.11 (11th Cir. 1993) (declining to discuss the plaintiffs' Title VI claims separately from the equal protection claims because the discussion would "duplicate exactly" the equal protection analysis).

## VII.  COUNT V FAILS TO STATE A CLAIM FOR NEGLIGENCE

### a.  Sheriff Mina Owed no tort Duty to Lyons

A negligence claim under Florida law has four elements that must be proved: (1) the existence of a duty of care, (2) breach of that duty, (3) legal or proximate causation, and (4) actual damages. *Wallace v. Dean*, 3 So.3d 1035, 1044, 1046 n. 18

(Fla. 2009). "[F]or there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent conduct." *Trianon Park Condo. Ass'n v. City of Hialeah*, 468 So.2d 912, 917 (Fla.1985). Whether any duty in tort exists is a question of law. *McCain v. Fla. Power Corp.*, 593 So.2d 500 (Fla.1992).

The OCSO's "duty to protect the citizens is a general duty owed to the public as a whole." *Everton v. Willard*, 468 So.2d 936, (Fla. 1985). "The victim of a criminal offense, which might have been prevented through reasonable law enforcement action, does not establish a common law duty of care to the individual citizen and resulting tort liability, absent a special duty to the victim." *Id.*

> A special tort duty does arise when law enforcement officers become directly involved in circumstances which place people within a "zone of risk" by creating or permitting dangers to exist, by taking persons into police custody, detaining them, or otherwise subjecting them to danger … The premise underlying this theory is that a police officer's decision to assume control over a particular situation or individual or group of individuals is accompanied by a corresponding duty to exercise reasonable care.

*Pollock*, 882 So.2d 928, 935 (Fla. 2004). However, *[w]here police officers … have not arrived on the scene or assumed any degree of control over the situation, the "zone of risk" analysis has no application. Id.* (emphasis added).

The special duty exception has been applied in those instances where the police officers were on the scene and took control of the situation or involved situations where the police officers created the zone of risk by their actions. *See Henderson v.*

*Bowden*, 737 So.2d 532, 536 (Fla. 1999) (holding there was a duty of care arising from a police officer's act of instructing an intoxicated man to drive to a convenience store and call for a ride home where the driver continued on and subsequently collided with a tree killing two passengers in the vehicle); *Kaisner v. Kolb*, 543 So.2d 732, 734 (Fla. 1989) (police officer owed duty of care to detained motorist who was ordered to stand dangerously close to onrushing traffic and was struck); *Labance v. Dawsy*, 14 So.3d 1256, 1259 (Fla. 5th DCA 2009) (duty of care owed to occupants of residence by police officers executing search warrant where subject was known to be armed and dangerous and shootout ensued); *Sams v. Oelrich*, 717 So.2d 1044, 1047 (Fla. 1st DCA 1998) (deputy owed duty to innocent persons in hospital emergency room from young arrestee with minor injuries and prior escape attempts); *White v. City of Waldo*, 659 So.2d 707, 710 (Fla. 1st DCA 1995) (finding a duty of care arising from police officer's act of chasing a loose horse in a patrol car with no lights on and a private citizen on the hood).

The Amended Complaint alleges the OCSO, by releasing a public statement concerning the shooting, "triggered and affirmative duty to protect new reporters who responded to the scene." The Amended Complaint further alleges this tort duty could have been satisfied by barricading or restricting access to the "area where the shooting occurred until the shooter was apprehended, or the area was safe." On these facts, the zone of risk theory has no applicability. The risk of harm was inherently

with Moses, who remained at large and had no direct contact with any OCSO deputy prior to his encounter with Lyons. Lyons likewise did not have any direct contact with an OCSO deputy. Lyon's situation was like every other civilian who happened to be in the area or passing through the area where Moses was at large. On these facts the OCSO did not create a zone of risk, giving rise to an actionable duty of care to protect Lyons. See *Pollock*, 882 So.2d at 935 ("[w]here police officers … have not … assumed any degree of control over the situation, the "zone of risk" analysis has no application."); *Bauer as next friend of E.B. v. Chronister*, 618 F.Supp.3d 1334, 1344 (M.D. Fla. 2022) (Sherrif's Office owed no duty under zone of risk theory to murdered wife to protect her from violent husband with where Sheriff's Office had not assumed control by arresting husband or arrived on any scene.).

### b. Sheriff Mina's Decision to Remove Law Enforcement Resources from the Scene of the Shooting is protected by Sovereign Immunity

"When a state or its subsidiary is sued in negligence, a court should first determine whether the circumstances alleged would subject a private person to liability under Florida law." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001) (citing *Kaisner v. Kolb*, 543 So. 2d 732, 734 (Fla. 1989)). If a court is satisfied that a duty of care was owed to the plaintiff, the court must then "determine whether the challenged actions are nonetheless acts which required the exercise of basic governmental discretion, as opposed to the implementation of an already established policy." *Id.* In other words, "even if a plaintiff has adequately

22

alleged all of the elements of a negligence claim, including the breach of a common law duty, immunity would still bar the claim if the challenged act were deemed to be governmentally 'discretionary' in nature, and not merely 'operational.' " *Id.* at 1262–63 (quoting *Kaisner*, 543 So. 2d at 737). Under Florida law, a discretionary function is one in which "the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1117–18 (11th Cir. 2005) (quoting *Henderson v. Bowden*, 737 So. 2d 532, 538 (Fla. 1999)) (internal quotation marks omitted).    An operational function, conversely, is "one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." *Id.* at 1118 (quoting *Henderson*, 737 So.2d at 538) (quotation marks omitted).

In this case, all of the conduct forming the basis of this negligence claim are non-actionable on sovereign immunity grounds. The OCSO's decision to "release[] information relating to [criminal activity] to local news stations" is so obviously fundamental to the effective functioning of any local law enforcement agency such that intervention by way of tort law would entangle the courts in fundamental questions of policy and planning. And the OCSO's decision not to erect barricades around the scene where Nathacha Augustin was shot after the scene was processed

directly relates to fundamental and strategic decisions of the OCSO about how to allocate limited resources. *See Sanchez v. Miami–Dade County*, 245 So.3d 933, 941 n. 3 (Fla. 3d DCA 2018) (Florida courts "have long held that a municipality's decision on where to allocate its police resources is a planning level decision that is not subject to civil liability.") (collecting cases).

## VIII. COUNT VIII FAILS TO STATE TORT CLAIMS UNDER FLORIDA LAW

Turner and Major assert claims for negligence against Sheriff Mina based on an alleged statement made by Deputy Doe to Turner that "Everything is under control" when she asked him why there was a police presence in the area.[5] Turner alleges that she was "unaware that an armed killer remained at large in the area" and relied on Deputy Doe's statement to go to her house and then leave the back door open thereby allowing Moses to enter her home.

A special relationship arises when law enforcement gives the victim "an express promise or assurance of assistance," the victim "justifiabl[y] reli[es] on the promise," and the victim suffers harm "because of the reliance upon the express

---

[5]If Plaintiffs indicate that the claims in Count VIII are based on conduct other than this statement or some theory other than detrimental reliance on an express promise of assistance, Defendant requests a more definite statement wherein Plaintiffs state the theory (i.e., negligence, intentional tort etc.) of the claims in Count VIII and the specific conduct that forms the basis for the claims. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 590 n. 9 (2007) ("The remedy for an allegation lacking sufficient specificity to provide adequate notice is, of course, a Rule 12(e) motion for a more definite statement.").

promise." *Pierre v. Jenne*, 795 So. 2d 1062, 1064 (Fla. 4th DCA 2001); *accord Jordan v. Nienhuis*, 203 So. 3d 974, 977 (Fla. 5th DCA 2016).

In this case, the statements made by Deputy Doe fall far short of the kind statements of assuarance given by public safety officials that give rise to an actionable duty of care. Deputy Doe did not offer to take any affirmative acts to ensure Turner or Major's personal safety. Nor did he agree to take any affirmative step to ensure the safety of her house. *Compare Pierre v. Jenne*, 795 So. 2d at 1064 (affirming dismissal of negligence claim where there was no express promise or assurance of assistance made by the 911 operators) *with Hartley v. Floyd*, 512 So.2d 1022 (Fla. 1st DCA 1987) (deputy made express promise to wife to go to the boat ramp for husband's vehicle, and to notify the Coast Guard. He failed to do either and then lied to wife telling her that husband's truck was not at the ramp causing her to refrain from checking ramp personally); *St. George v. City of Deerfield Beach*, 568 So.2d 931 (Fla. 4th DCA 1990) (reversing summary judgment where 911 operator promised to dispatch paramedics but failed to follow through resulting in victim's death).

## CONCLUSION

For the foregoing reasons Sheriff Mina requests that the Court dismiss the Amended Complaint.

## RULE 3.01(g) CERTIFICATION

25

I certify that I conferred with opposing counsel via email on April 28, 2025, wherein Plaintiffs' counsel stated that the Amended Complaint corrected some of the deficiencies raised in the motion to dismiss the original complaint and Plaintiffs' counsel believes that the other issues raised in the motion to dismiss the original complaint and now raised again in the instant motion are better suited for resolution in a motion for summary judgment.

*s/ Brian F. Moes*
BRIAN F. MOES, ESQ.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of May, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: DeLayne D. Penland, Esq., delayne@nejamelaw.com, Mark E. NeJame, Esq., mark@nejamelaw.com, Ryan J. Vescio, Esq., *ryan@nejamelaw.com, pi@nejamelaw.com*, NeJame Law, P.A., 111 North Orange Avenue, Suite 1300, Orlando, Florida 32801.

*s/ Brian F. Moes*
BRIAN F. MOES, ESQ.
Florida Bar No.:  39403
*moes@debevoisepoulton.com*
G. RYAN DIETRICH, ESQ.
Florida Bar No.: 1007940
*dietrich@debevoisepoulton.com*
DeBEVOISE & POULTON, P.A.

26

1035 S. Semoran Boulevard, Suite 1010
Winter Park, Florida 32792
Telephone:  407-673-5000
Facsimile:  321-203-4304
*Attorneys for Defendant*