UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:25-cv-00252-PGB-UAM

BRANDI TURNER, individually, and
as the Personal Representative for the
Estate of T'Yonna Major, and GARY
Lyons as the Personal Representative
for the Estate of Dylan Lyons

       Plaintiffs,

vs.

JACKSON B. KEYES, an individual,
and JOHN MINA, in his official capacity
as Sheriff of Orange County,

       Defendants.
_____/

# JACKSON B. KEYES' MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendant JACKSON B. KEYES, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss the Second Amended Complaint (Doc. 36).

## I. BACKGROUND AND SUMMARY OF ALLEGATION

1. This is an action brought pursuant to 42 U.S.C § 1983 seeking compensatory and punitive damages for discrimination on the basis of race in a federally subsidized program in violation Title VI of the Civil Rights Act of 1964.

Plaintiffs do not seek injunctive relief in any form to ensure that federal funds received by Sheriff Mina in the future are spent in a nondiscriminatory manner. Plaintiffs have also asserted state law claims of negligence pursuant to this court's pendant jurisdiction. The Second Amended Complaint (SAC) alleges eight counts:

Count I:　　Brandi Turner - Violation of Substantive Due Process Rights against Deputy Keyes
Count II:　　Estate of T'yonna Major against Deputy Keyes - Violation of Substantive Due Process Rights
Count III:　　Brandi Turner against Sheriff Mina - Violation of Equal Protection Clause (*Monell*)
Count IV:　　Estate of T'yonna Major against Sheriff Mina - Violation of Equal Protection Claim (*Monell*)
Count V:　　Gary Lyons against Sheriff Mina - Wrongful Death (negligence)
Count VI:　　Brandi Turner against Sheriff Mina - Title VI of the Civil Rights Act of 1964
Count VII:　　Estate of T'yonna Major against Sheriff Mina - Title VI of the Civil Rights Act of 1964
Count VIII:　Brandi Turner & Estate of T'yonna Major against Sheriff Mina – Unspecified claims pursuant to Fla. Stat. § 768.28 for the conduct of Deputy Keyes

**A. The Events of February 22, 2023**

2.　　At approximately 11:00 a.m. on February 22, 2023, the deadly shooting of Nathacha Augustin occurred in Pine Hills. [Doc. 36, ¶ 17].

3.　　A witness inside the car in which Ms. Augustin was shot quickly identified the shooter as Keith Moses ("Moses"), who fled the scene on foot. [Doc. 36, ¶ 18].

4. The Orange County Sheriff's Office ("Sheriff's Office") had Moses' description but did not release it to the public for unspecified reasons. [Doc. 36, ¶¶ 19-20].

5. Sheriff's Office deputies arrived at the scene at approximately 11:17 a.m. and processed the crime scene in 4 hours and reopened the location to the public while Moses remained at large without notifying the surrounding residents that a murderer was in the area. [Doc. 36, ¶¶ 21-22 ].[1]

6. The SAC alleges that "as a result of this dangerous policy an armed and dangerous murderer wandered the area for hours without so much as an indication to the community that he was still lurking." [Doc. 36, ¶ 23].[2]

7. At approximately 2:00 p.m. on February 22, 2023, Brandi Turner (Turner) picked her 9-year-old daughter T'Yonna Major (Major) up from school and entered their neighborhood to return home. [Doc. 36, ¶ 24].

8. Turner asked Deputy Jackson Keyes, who was positioned at the entrance of the neighborhood, "about the purpose of their presence." [Doc. 36, ¶ 25].

9. Deputy Keyes responded, "Everything is under control." [Doc. 36, ¶ 26].

---

[1] Significantly, the SAC does not allege that the Orange County Sheriff's Office determined that Moses was a suspect in the shooting or that he was still in the area.
[2] The SAC does not allege what the "dangerous policy" is.

3

10. Turner relied on Deputy Keyes' representation and went home with Major unaware that an armed killer remained at large in the area. [Doc. 36, ¶ 26].

11. Turner left her back door open. Moses entered the home and shot Turner and Major. Major tragically died from her injuries. [Doc. 36, ¶ 27-38].

12. At some unspecified time, the Sheriff's Office notified Spectrum News 13 of the shooting of Ms. Augustin. [Doc. 36, ¶ 40].

13. Moses fled Turner's home on foot, returned to the area where he shot and killed Ms. Augustin where Spectrum News 13 reporter Dylan Lyons was reporting on the shooting. [Doc. 36, ¶¶ 41-42].

14. The Sheriff's Office had completed their investigation by this time and had cleared the area even though Moses remained at large. [Doc. 36, ¶ 42].

15. Moses approached Lyons and his cameraman and shot both of them, killing Lyons. [Doc. 36, ¶¶ 43-45].

16. Moses was then arrested in a "lackadaisical and unconcerned manner" by OCSO deputies. [Doc. 36, ¶¶ 46-54].

17. "Upon information and belief" of Plaintiffs, the Sheriff's Office "did not dispatch aviation assistance to locate Moses despite his being on foot."[3] [Doc. 36, ¶¶ 55-57].

---

[3] Again, the SAC does not allege that the Sheriff's Office had made any determination that Moses was responsible for shooting Nathacha Augustin or that the Sheriff's Office considered him a

**B. Pine Hills and Windermere**

18.    Pine Hills is an unincorporated subdivision of Orange County, Florida. [Doc. 36, ¶ 13]. Pine Hills is not a municipality, but it is a census designated place for purposes of compiling Census Bureau data.

19.    Windermere is a self-governing town incorporated under the laws of the State of Florida and existing within the geographic boundary of Orange County, Florida. The Town of Windermere has its own police department for the provision of public safety, crime prevention and criminal justice with it municipal boundaries.[4]

20.    The residents of Pine Hills are predominantly Black. [Doc. 36, ¶ 13].[5]

21.    Upon information and belief of the Plaintiffs the Sheriff's Office "did not dispatch aviation assistance to locate Moses despite his being on foot,"[6] and "assigns less personnel and resources to Pine Hills than its similarly situated, but

---

suspect. Nor does the SAC allege that agency policy called for revealing Moses' identity to the public under the circumstances alleged.

[4]Per Fed. R. Evid. 201(b)(2), "The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. See Town of Windermere Police Department at https://www.town.windermere.fl.us/page/police-department.

[5] The SAC also contains allegations showing that, as a percentage, more Pine Hills residents "live below the federal poverty level" when compared to Orange County. [Doc. 36, ¶ 14]. However, none of the Plaintiffs are alleged to "live below the federal poverty level" and none of the Defendant's alleged actions are alleged to premised on discriminating against people who live below the federal poverty level.

[6]Again, the SAC does not allege that the Sheriff's Office had made any determination that Moses was responsible for shooting Nathacha Augustin or that the Sheriff's Office considered him a suspect. Nor does the SAC allege that agency policy called for the use of the Aviation unit under the circumstances alleged.

primarily White, counterpart Windermere" even though Pine Hills has a crime rate that is nearly double that of Windermere. [Doc. 36, ¶¶ 55-57, 61-62].

22. The SAC alleges that the Sheriff's Office has a policy of discrimination that results in residence of Pine Hills "not [being] treated with the same sense of urgency, importance, or respect displayed for other more affluent or White neighborhoods in Orange County." [Doc. 36, ¶¶ 58-59].[7]

23. The Sheriff's Office discriminates against black residents living in Pine Hills, and this discrimination allegedly led to the murders of Major and Lyons [Doc. 36, ¶ 15].

## II. LEGAL STANDARD FOR MOTION TO DISMISS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the

---

[7]The SAC does identify by name any "more affluent or White neighborhoods in Orange County." Instead, Plaintiffs refer to the City of Windermere.

allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### III. DEPUTY KEYES IS ENTITLED TO QUALIFIED IMMUNITY ON COUNT I AND COUNT II

A motion to dismiss on qualified immunity grounds is proper if the pleading fails to allege the violation of a clearly established constitutional right. *St. George v. Pinellas Cnty*, 285 F.3d 1334, 1337 (11th Cir. 2002). Qualified immunity protects government officials from liability for civil damages only if the official is performing discretionary duties. *Waldron v. Spicher*, 954 F.3d 1297, 1303 (11th Cir. 2020). If the facts alleged show that the public official was engaged in a discretionary function when they committed the acts complained of, the burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Id.*

The SAC alleges that Deputy Keyes was an on-duty Orange County Sheriff's Office deputy who was parked near the entrance to Turner's neighborhood to establish a police presence in the aftermath of a fatal shooting. These types of police details are commonplace and when Deputy Keyes allegedly responded to Brandi

Turner's inquiry, he was performing discretionary duties typical of a law enforcement officer. *See Hunter v. City of Leeds*, 941 F.3d 1265, 1278 (11th Cir. 2019) (officer acting within discretionary authority when pursuing and apprehending criminal suspect in response to the 911 call). Thus, the burden shifts to Plaintiffs to demonstrate that Deputy Keyes violated Turner and Major's "clearly established" constitutional rights. *Waldron*, 954 F.3d at 1303.

### a. Turner Fails to Allege a Violation of a Substantive Due Process Right

The SAC alleges that Deputy Keyes was aware that "Moses had shot and killed Nathacha Augustin" and was "still at large in the area." Notwithstanding this awareness, Deputy Keyes allegedly remained deliberately indifferent to the "risk of harm" and responded to Ms. Turner "Everything is under control." [Doc. 36, ¶¶ 75-77]. This remark, which Plaintiff allegedly relied upon, is the sole basis for the substantive due process claims brought against Deputy Keyes in his individual capacity.

Nothing in the Due Process Clause itself requires the state to protect the life, liberty, and property of its citizens against invasion by private actors. As articulated in *Deshaney v. Winnebago County Dep't of Social Services*, the Clause is a limitation on the state's power to act, not as a guarantee of certain minimal levels of safety and security. 498 U.S. 189, 195 (1989). It forbids the state itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot

8

fairly be extended to impose an affirmative obligation on the state to ensure that those interests do not come to harm through other means. *Id*. This is because the Fourteenth Amendment's Due Process Clause was intended to prevent government misuses of power not to ensure the state protected them from each other. *Id*. at 196.

Further, the Due Process Clause confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of the individual. *Id*. As a matter of law "a person does not have a constitutional right under the Fourteenth Amendment to be protected from the criminal acts of third parties." *Mitchell v. Duval Cnty. Sch. Bd., 107 F.3d 837, 838 (11th Cir. 1997)* (no general constitutional right to police services.); "In a non-custodial setting, 'conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense.'" *Saunders v. City of Lakeland, Florida*, 2025 WL 1124984, at *2 (11th Cir. 2025) (quoting *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003). "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense such as acts intended to injure in some way unjustifiable by any government interest." *Id.* (citations and internal quotations omitted). Deputy Keyes' response, even if uttered with knowledge that Ms. Augustin's murder was still at large in the area, falls well short of conscience shocking conduct needed to give rise to rise to individual liability for violating the

9

Fourteenth Amendment Due Process Clause.[8]

### b. Turner and Major's Substantive Due Process Rights Were Not Clearly Established

The Eleventh Circuit has identified three ways to show a public official had notice of a clearly established right. *Waldron*, 954 F.3d at 1304 (citations omitted). First, Plaintiffs can show that a materially similar case has already been decided. Second, Plaintiff can also show that a broader, clearly established principle should control the novel facts of this particular case. "[T]he principle must be established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id*. at 1305. Third, Plaintiff can show that the case fits within the exception of conduct which so obviously violates the Constitution that prior case law is unnecessary. *Id*. Notwithstanding these three avenues for showing a clearly established right, the Eleventh Circuit instructs that "if case law, in factual terms, has not staked out a bright line, qualified immunity

---

[8]Plaintiffs allege that Deputy Keyes' response to Turner's question "constituted the necessary state-created danger to trigger the rights secured by the due process clause." [Doc 36, ¶ 78]. The Eleventh Circuit expressly abandoned the State-Created Danger Doctrine more than 25 years ago. *See Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003) ("In *White v. Lemacks*, 183 F.3d 1253, 1257–59 (11th Cir.1999), we concluded, however, that the "special relationship" and "special danger" doctrines were superceded [sic] by the standard employed by the Supreme Court in *Collins*, 503 U.S. 115 []. Thus, conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense.").

10

almost always protects the defendant*." Corbit v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 20219).

Even if the facts within the SAC plausibly establish a due process deprivation, those rights were not clearly established by February 23, 2023, providing Deputy Keyes fair warning that his deliberately indifferent response to Plaintiff's inquiry could expose him to Section 1983 liability on the facts of the SAC.

## **CONCLUSION**

For the foregoing reasons Deputy Keyes requests that the Court dismiss the Second Amended Complaint.

## **RULE 3.01(g) CERTIFICATION**

I certify that on April 28, 2025, I conferred with opposing counsel via email wherein Plaintiffs' counsel stated that the Amended Complaint corrected some of the deficiencies raised in the motion to dismiss the original complaint and Plaintiffs' counsel believes that the other issues raised in the motion to dismiss the original complaint and now raised again in the instant motion are better suited for resolution in a motion for summary judgment.

I further certify that on October 20, 2025, after review of the Second Amended Complaint, an email was sent to Plaintiffs' counsel remarking that the Second Amended Complaint appeared to be substantially similar to the Amended Complaint and that the Defendants' arguments for dismissal are likewise substantially similar

to the arguments raised in response to the Amended Complaint and inquired as to whether further conference to resolve the issues raised in this motion would be necessary.

Defendants counsel will supplement this certification upon further conferral with Plaintiffs' counsel.

*s/ Brian F. Moes*<br>
BRIAN F. MOES, ESQ.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of October, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: DeLayne D. Penland, Esq., delayne@nejamelaw.com, Mark E. NeJame, Esq., mark@nejamelaw.com, Ryan J. Vescio, Esq., *ryan@nejamelaw.com, pi@nejamelaw.com*, NeJame Law, P.A., 111 North Orange Avenue, Suite 1300, Orlando, Florida 32801.

*s/ Brian F. Moes*<br>
BRIAN F. MOES, ESQ.<br>
Florida Bar No.: 39403<br>
*moes@debevoisepoulton.com*<br>
G. RYAN DIETRICH, ESQ.<br>
Florida Bar No.: 1007940<br>
*dietrich@debevoisepoulton.com*<br>
DeBEVOISE & POULTON, P.A.<br>
1035 S. Semoran Boulevard, Suite 1010<br>
Winter Park, Florida 32792

Telephone: 407-673-5000
Facsimile: 321-203-4304
*Attorneys for Defendants*