UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRANDI TURNER, individually and
As the Personal Representative for the
Estate of T'Yonna Major, and GARY
LYONS, as the Personal Representative
For the Estate of Dylan Lyons,

       Plaintiffs,

                           CASE NO: 6:25-cv-00252-PGB-UAM

vs.

JACKSON B. KEYES, an individual,
And JOHN MINA, in his official capacity
as Sheriff of Orange County,

       Defendants.

_____/

## PLAINTIFFS' RESPONSE TO DEFENDANT JOHN MINA'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

COME NOW, Plaintiffs, BRANDI TURNER, individually and as the Personal

Representative for the Estate of T'Yonna Major, and GARY LYONS, as the Personal

Representative for the Estate of Dylan Lyons, by and through their undersigned

counsel, and hereby file this Response to Defendant John Mina's Motion to

Dismiss Second Amended Complaint, as follows:

## I.    INTRODUCTION

Plaintiffs have filed their Second Amended Complaint alleging six (6) counts

against John Mina in his official capacity as Sheriff of Orange County (hereinafter,

"Sheriff Mina"), as follows:

Count III - Sheriff John Mina's Violation of Brandi Turner's Civil Rights under the Fourteenth Amendment's Equal Protection Clause;

Count IV - Sheriff John Mina's Violation of T'Yonna Major's Civil Rights under the Fourteenth Amendment's Equal Protection Clause;

Count V - Wrongful Death brought by Gary Lyons, as Personal Representative for the Estate of Dylan Lyons, against Sheriff Mina;

Count VI - Title VI of the Civil Rights Act of 1964 brought by Brandi Turner, Individually, against Sheriff Mina;

Count VII - Title VI of the Civil Rights Act of 1964 brought by Brandi Turner, as Personal Representative for the Estate of T'Yonna Major, against Sheriff Mina; and

Count VIII - Brandi Turner, Individually and as the Personal Representative for the Estate of T'Yonna Major, Consolidated Claims against Sheriff Mina pursuant to Fla. Stat. § 768.28.

Defendant Sheriff Mina has moved to dismiss each of the six (6) counts.

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Corcel Corp. v. Ferguson Enters.*, 551 Fed. Appx. 571 (11th Cir. Fla. 2014) citing; *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)); *see also, Jackson v. Okaloosa County, Fla.,* 21 F.3d 1531, 1534 (11th Cir. 1994). The plausibility standard is met where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must draw the facts from the Complaint, accept those facts as true, and construe them in the light most favorable to the

plaintiff. *Butler v. Sheriff of Palm Beach County*, 2012 U.S. App. LEXIS 13844 (11th Cir. Fla. July 6, 2012); citing *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1271 (11th Cir. 2012). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Butler, supra,* at *8-9.

For the purposes of the Motion to Dismiss, the Court must view the allegations of the Second Amended Complaint in the light most favorable to the Plaintiffs, must consider the allegations of the Complaint as true, and must accept all reasonable inferences therefrom. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 1969 (2007).

## III.   LEGAL ARGUMENT

### A. Counts III & IV Allege a Policy of Denying Residents of the Pine Hills Areas Equal Protection as to Protective Services

In Counts III & IV of their Second Amended Complaint, Plaintiff Turner, individually and as Personal Representative of the Estate of T'Yonna Major details the basis of the subject policy, as follows:

55. Upon information and belief, the Orange County Sheriff's Office did not dispatch aviation assistance to locate Moses despite his being on foot.
56. The Orange County Sheriff's Office website proudly states that:

A well-equipped aviation unit is one of the most valuable assets a law enforcement agency can have and Orange County has one of the best.
...
The Aviation Section's top crime fighting tool continues to be the use of thermal imaging to disclose the position of criminal suspects. The cameras on all of the agency aircraft are very sensitive, and a trained Tactical Flight Observer (TFO) can discover suspects that are hiding in thick brush, up in trees, in garbage cans, and even in the water. When used in conjunction with an agency K-9, this method has an extremely high success rate. [citation omitted].

57. The Orange County Sheriff's Office failed to utilize one of the best aviation units in existence and its top crime-fighting tool to locate Nathacha Augustin's killer, nor the later killings of T'Yonna Major and Dylan Lyons, further evidencing the lack of concern for, and lack of resources provided to, the citizens of Pine Hills.

58. This community of color was not treated with the same sense of urgency, importance, or respect displayed for other more affluent or White neighborhoods in Orange County.

59. This failed policy exhibits discriminatory and prejudicial behavior, which resulted in the death of two innocent young people, as well as serious injury to another.

60. Not only were Brandi Turner and T'Yonna Major African-American, but the incident in question occurred in Pine Hills.

61. Upon information and belief, the Orange County Sheriff's Office assigns less personnel and resources to the area of Pine Hills than its similarly situated, but primarily White, counterpart Windermere area.

62. Orange County Sheriff's Office does this despite crime rates being almost double in the Pine Hills area as compared to the Windermere area.

63. A state actor like the Orange County Sheriff's Department, may not selectively deny protective services to certain disfavored minorities without violating the equal protection clause and Title VI of the Civil Rights Act of 1964.


100. At all times material, Sheriff Mina was required to uphold and enforce the law and implement policies to ensure all constituents receive fair and equal protection as it relates to the Orange County Sheriff's Office's response and handling of violent crimes.

101. As a resident of Pine Hills, Brandi Turner was subjected to differential treatment because of her race and to her detriment.

102. The Orange County Sheriff's Office maintains a policy that denies equal protection to residents of Pine Hills, such as Brandi Turner, while similarly situated Windermere area residents enjoy heightened security and safety measures for violent crimes.

4

103. This practice is routinely implemented such that, upon information and belief, the Orange County Sheriff's Office assigns less personnel and resources to the area of Pine Hills than its similarly situated, but primarily White, counterpart Windermere area, repeatedly constituting an unwritten policy.

111. At all times material, Sheriff Mina was required to uphold and enforce the law and implement policies to ensure all constituents receive fair and equal protection regarding the Orange County Sheriff's Office's response to and handling of violent crimes.

112. As a resident of Pine Hills, T'Yonna Major was subjected to differential treatment because of her race and to her detriment.

113. The Orange County Sheriff's Office maintains a policy that denies equal protection to residents of the Pine Hills area, such as T'Yonna Major, while similarly situated residents in the Windermere area enjoy heightened security and safety measures for violent crimes.

114. This practice is routinely implemented such that, upon information and belief, the Orange County Sheriff's Office assigns less personnel and resources to the area of Pine Hills than its similarly situated, but primarily White, counterpart Windermere area, repeatedly constituting an unwritten policy.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amdt. 14, § 1. Its primary purpose is racial neutrality in governmental decision-making. *Miller v. Johnson,* 515 U.S. 900, 904 (1995); citing *Loving v. Virginia*, 388 U.S. 1, 11 (1967); *McLaughlin v. Florida*, 379 U.S. 184, 191–192 (1964); *Brown v. Board of Education*, 347 U.S. 483 (1954). As alleged above, Orange County Sheriff's Office maintained an unofficial custom or practice of assigning fewer protective resources to residents of Pine Hills, which is predominantly comprised of African American residents, than in other areas in Orange County such as Windermere, which is primarily comprised of white

Caucasian residents.   This practice had both a discriminatory purpose/intent and effect.

"Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heigh*ts *v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 266 (1977).    "Necessarily, an invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another." *Washington v. Davis,* 426 U.S. 229, 242 (1976).   Here, the practice of not dispatching resources in the predominant African American neighborhood to the same degree as in other non-African American areas has a more harmful effect on the African American residents, including in the instant matter. "It is also not infrequently true that the discriminatory impact ... may for all practical purposes demonstrate unconstitutionality because, in various circumstances, the discrimination is very difficult to explain on nonracial grounds." *Id.*   It is hard to imagine a reason that fewer resources would be allocated or sent to an area predominantly African American and yet more resources sent to an area predominantly of Caucasian or white residents, but for their respective races.  In other words, "[s]ometimes a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action ...." *Arlington* Heights, 429 U.S. at 266. *See Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886) (discriminatory intent determined where ordinance grossly impacted Chinese laundry owners with

"unequal hand, so as practically to make unjust and illegal discriminations between person in similar circumstances…"). "[T]he substantially disproportionate racial impact of a statute or official practice. standing alone and without regard to discriminatory purpose, suffices to prove racial discrimination violating the Equal Protection Clause absent some justification going substantially beyond what would be necessary to validate most other legislative classifications." *Washington,* 426 U.S. at 244. Rarely is disproportionate racial impact alone sufficient to establish purpose or intent.

The impact of the official action and whether it bears more heavily on one race than another is just one factor that courts have considered when determining a discriminatory purpose or intent. Others factors include (1) the historical background of the decision, "particularly if it reveals a series of official actions taken for invidious purposes"; (2) the "specific sequence of events leading up to the challenged decision"; (3) departures from the normal procedural or substantive sequences, "particularly if the factors usually considered important by the decisionmaker"; and (4) the legislative or administrative history;" (5) the knowledge and foreseeability of the discriminatory impact; and (6) the availability of less discriminatory alternatives. *See Arlington Heights*, 429 U.S. at 266-68; *Jean v. Nelson*, 711 F.2d 1455, 1486 (11th Cir. 1983). In the instant case, Defendant departed from its normal procedural by failing to use any of its helicopters or other aviation craft despite knowing such usage would be highly successful in locating at-large criminals. Statistically, Defendant knew that the crime rate for violent

crime in the Pine Hills area was double that of other non-African American areas and yet, chose to send fewer personnel and protective services resources.  As such, Defendant had knowledge of and could foresee how not sending sufficient resources to areas whose population was primarily African American would have a discriminatory impact.

The effect of this practice of utilizing fewer protective services in African American areas is that individuals such as Brandi Turner and her deceased daughter, T'Yonna Major, suffered severe injury or death. For these reasons, Plaintiff Turner has alleged both a discriminatory purpose and effect.

As for allegations based on "information and belief," Plaintiff makes two such assertions.  The first is that no aviation craft was dispatched to help search for the at-large suspect.  In performing research, no news outlet reporting on this subject mentioned the use of aviation craft, and a review of the Defendant's Computer Aided Dispatch system for this incident reveals that such aircraft were not used.  There was simply a lack of any indication that Defendant had used this highly successful tool in the instant case.

The second is that the Defendant assigns less personnel and resources to the area of Pine Hills than primarily White areas.[1]  The Defendant's failure to dispatch

---

[1] Additionally, the facts as to the number of personnel and other resources which have been dispatched into Pine Hills as compared to Windermere for this instance as well as all others since 2021 is peculiarly within the possession and control of the Defendant.  The "mere fact that a complaint includes allegations asserted on information and belief is not, in and of itself, a basis for dismissal." *Deese v. Clark Equipment Co.,* 2021 WL 7450435, *4 (January 25, 2021) (citing *Upfitters, L.L.C.*

aviation craft and its corresponding personnel, Defendant's highly successful tool for finding suspects at large, supports this allegation. At least enough to nudge the Plaintiff's claims across the line from conceivable to plausible.    In other words, the allegations contain sufficient factual content, when accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Having alleged the necessary elements and criteria to state a cause of action under 42 U.S.C. §1983 for a constitution violation by Defendant under the Fourteenth Amendment's Equal Protection Clause, Defendant Sheriff Mina's Motion to Dismiss Counts III and IV should be denied.

### B. Counts VI and VII Sufficiently Allege Intentional Discrimination as to Title VI Claims against Sheriff Mina

In Counts VI and VII, Plaintiff Turner, individually and as Personal Representative of the Estate of T'Yonna Major alleges violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, which prohibits exclusion or

---

*v. Brooking*, No. 3:18-cv-496-J-34PDB, 2020 WL 954984, at *6 (M.D. Fla. Feb. 27, 2020) (unpublished) (quoting *Latele Television C.A. v. Telemundo Commc'ns Grp., LLC*, Case No. 12-cv-2539, 2013 WL 1296314, at *11 (S.D. Fla. March 27, 2013) (unpublished)).  A plaintiff may allege facts based upon information and belief if "the facts are peculiarly within the possession and control of the defendant" or if "the belief is based on factual information that makes the inference of culpability plausible." *Id*. (citing *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) and *Iqbal*, 556 U.S. at 678.)  Indeed, Plaintiffs have attempted repeatedly since January 31, 2025, to secure this peculiarly Defendant-possessed information from the Defendant but has yet to receive the requested public information despite narrowing the scope of Plaintiffs' request at the Defendant's direction and resubmitting the public records request on April 15, 2025.

discrimination based on race, color, or national origin in any program or activity receiving federal financial assistance. Defendant receives federal funding as to its public safety and law enforcement programs. [Doc. 36, ¶¶ 12, 136, 137, 147, 148]. Title VI, like the Equal Protection Clause prohibits intentional discrimination. As such, Plaintiff Turner relies upon the same factors discussed as to Counts III and IV in Section III.A. above to establish the required intentional race discrimination.

Specifically, as a starting point, is that the impact of the subject action bears more heavily on African Americans than non-African Americans. Defendant departed from its normal procedural by failing to use any of its helicopters or other aviation craft despite Defendant's own admission that using such tools is highly successful in locating at-large criminals. Statistically, Defendant knew that the crime rate for violent crime in the Pine Hills area was double that of other non-African American areas and yet, chose to send fewer personnel and protective services resources. Thus, Defendant had knowledge of and could foresee how not sending sufficient resources to areas whose population was primarily African American would have a discriminatory impact.

Therefore, Plaintiff Turner, individually and as Personal Representative of the Estate of T'Yonna Major, has sufficiently alleged claims under Title VI of the Civil Rights Act of 1964. Defendant's Motion to Dismiss as to Counts VI and VII should likewise be denied.

### C. Counts V Sufficiently Alleges a Claim for Negligence

Plaintiff Gary Lyons, as Personal Representative of the Estate of Dylan Lyons, alleges a claim of negligence against Sheriff Mina. Specifically, Plaintiff Lyons alleges that the Orange County Sheriff's Office created a foreseeable zone of risk and thereby giving rise to a legal duty. *See McCain v. Florida Power Corp.*, 593 So.2d 500 (Fla. 1992). Such a duty includes when a law enforcement officer places individuals in danger. *Kaisner v. Kolb*, 543 So.2d 732, 734 (Fla. 1989). This duty does not arise or depend upon the harmed party being in the deputies' custody. The duty arises when a deputy's actions place an individual in danger. *Henderson v. Bowden*, 737 So.2d 532, 536 (Fla. 1999).

In Count V of the Second Amended Complaint, Plaintiff Lyons described the actions of the deputies that created the foreseeable zone of risk as follows:

> 117. On February 22, 2023, the Orange County Sheriff's Office released information relating to the shooting death of Nathacha Augustin to local news stations, including Spectrum News 13, foreseeably inducing their presence at the crime scene.
> 118. Orange County Sheriff's Office released this information despite the shooter remaining at-large and on foot.
> 119. Orange County Sheriff's Office failed to barricade or restrict access to the area where the shooting occurred until the shooter was apprehended or the area was safe.
> 120. This failure led to Dylan Lyons and his cameraman parking at the exact location where Nathacha Augustin was killed.
> 121. By releasing information about the shooting, the Orange County Sheriff's Office triggered an affirmative duty to protect the news reporters who responded to the scene.
> 122. The Orange County Sheriff's Office's actions placed Dylan Lyons in a dangerous position, exposing him to a danger he would not have otherwise faced.
> 123. Orange County Sheriff's Office owed a duty to exercise reasonable care to protect Dylan Lyons, where their law enforcement activities created a foreseeable zone of risk.

124. Orange County Sheriff's Office breached this duty by knowingly releasing information about the killing of Nathacha Augustin and then removing any remenance of a crime scene.

125. Orange County Sheriff's Office further breached this duty by failing to secure the area until it was safe, when it invited news reporters, such as Dylan Lyons, to the location of an active murder scene.

[Doc. 36].

Defendant's actions in releasing information to local news stations about a fatal shooting foreseeably prompted reporters to visit the crime scene. Dylan Lyons and his cameraman arrived at the scene of the shooting and, unbeknownst to them, parked in the very parking spot where the prior fatal shooting had occurred. They did not know they were in that spot as the Defendant had removed cleared the area and removed signs of the crime. The release by Defendant of such information failed to notify the media that the shooter was at-large and on foot. This alone created a foreseeable zone of risk, and thus giving rise to a legal duty. But, Defendant also failed to restrict access to the crime scene until the shooter could be apprehended or the area declared safe.

> There is a strong public policy in this state that, where reasonable men may differ, the question of foreseeability in negligence cases should be resolved by a jury. Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.

> We see no reason why the same analysis should not obtain in a case in which the zone of risk is created by the police.

*Kaiser*, 543 So.2d at 735-36. Defendant relies upon several cases for the position that until officers arrive at the scene or assume some control over the situation, the

zone of foreseeable risk does not apply. *See Pollock v. Florida Dept. of Highway Patrol*, 882 So.2d 928 (Fla. 2004). But Defendant forgets that it had already arrived to the scene and had assumed substantial control over the crime scene, taken complete control over the access provided to the crime scene despite the shooter remaining at-large, and taken full control over the information released to the local news stations including not disclosing that the shooter was at-large and on foot. "If there is no duty to go to the assistance of a person in difficulty or peril, there is at least a duty to avoid any affirmative acts which make his situation worse." W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts*, § 53, at 378 (5th ed. 1984).

The actions of Defendant were "operational" functions. An "operational" function "is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." *Kaisner*, 543 So.2d at 737. Intervention of the courts in this case will not entangle them in fundamental questions of public policy or planning. "It merely will require the courts to determine if the officers should have acted in a manner more consistent with the safety of the individuals involved." *Id.* at 737-38. As such, the conduct was operational, not discretionary.

For the foregoing reasons, Defendant John Mina's Motion to Dismiss Count V of the Second Amended Complaint should be denied.

### D. Count VIII States a Claim for Liability under Fla. Stat. § 768.28(9)(a)

Plaintiff Turner, individually and as Personal Representative of the Estate of T'Yonna Major, asserts Count VIII against Sheriff Mina for negligence. To state a claim of negligence under Florida law, Plaintiff must allege that Defendant owed Plaintiff and the deceased a duty of care, that Defendant breached that duty, and that the breach caused Plaintiff and deceased to suffer damages. *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001). The existence of a duty is a matter of law for this Court to decide. *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992).

In Count VIII, Plaintiff alleges that Deputy Jackson B. Keyes, who was not acting in bad faith or with actual malice, undertook an act which created a duty to Plaintiff Turner and now deceased T'Yonna Major. Florida Courts have adopted what is known as the undertaker's doctrine in § 324A of the Second Restatement of Torts as a standard for when an undertaking creates a duty to a third party. *See Clay Elec. Coop. v. Johnson*, 873 So. 2d 1182, 1186 (Fla. 2003); *Union Park Mem'l Chapel v. Hutt*, 670 So. 2d 64, 67 (Fla. 1996). That section of the Restatement provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).

In this situation, the law generally recognizes a duty placed upon the defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm the risk poses. *Wallace v. Dean*, 3 So.3d 1035, 1049 (Fla. 2009). Courts have long adhered to the common-law doctrine that:

> [i]n every situation where a man undertakes to act, or to pursue a particular course, he is under an implied legal obligation or duty to act with reasonable care, to the end that the person or property of others may not be injured by any force which he sets in operation, or by any agent for which he is responsible. If he fails to exercise the degree of caution which the law requires in a particular situation, he is held liable for any damage that results to another, just as if he had bound himself by an obligatory promise to exercise the required degree of care…. [E]ven "where a man interferes gratuitously, he is bound to act in a reasonable and prudent manner according to the circumstances and opportunities of the case."

*Banfield v. Addington,* 104 Fla. 661, 140 So. 893, 896 (1932) (citations omitted)(emphasis supplied); *Wallace, supra* at 1050. More succinctly put, one who undertakes to act, even when under no obligation to do so, thereby becomes obligated to act with reasonable care. *See Slemp v. City of North Miami*, 545 So.2d 256, (Fla.1989).

In the instant matter and as alleged in the Second Amended Complaint, on February 22, 2023, at approximately 11am, Keith Moses shot and killed Nathacha Augustin in Pine Hills. Mr. Moses was identified by an eye witness to the shooting and fled. The Orange County Sheriff's Office showed up in less than 20 minutes

and cleared the crime scene in 4 hours. During that time, deputies provided no information about the suspect at-large. After Plaintiff Turner retrieved her young daughter from school at about 2pm, they drove home. Upon arrival, Plaintiff Turner inquired of Deputy Jackson B. Keyes' purpose and why he was positioned at the entrance of the neighborhood. The Deputy responded, "Everything is under control." His affirmative statement was not simply neutral. Rather, it specifically conveyed the meaning to Plaintiff Turner that any danger had been eliminated and that she and her family were not in further danger of harm by that prior danger. Plaintiff Turner, relying upon Deputy Keyes' assurance of safety, returned home with her daughter and even left her backdoor unlocked. Mr. Moses entered Plaintiff Turner's home later on that same date, shooting and killing Plaintiff Turner's daughter, and then shooting Plaintiff Turner twice.

Here, Deputy Jackson B. Keyes undertook and carried out the affirmative task of providing information to Plaintiff Turner about the investigation of Mr. Moses. By performing that task, he became obligated to act reasonably. But Deputy Keyes did not act in a reasonable manner. He provided incomplete and misleading information that placed Plaintiff Turner and her daughter in a higher risk of harm. Plaintiff Turner relied upon Deputy Keyes' actions and assurances by not only returning home when the criminal suspect was still at-large, but even by leaving her door unlocked. Had Deputy Keyes provided correct information, Plaintiff Turner would not have gone home and/or would not have left her door

unlocked. But for her reliance upon Deputy Keyes' undertaking, Plaintiff Turner's reliance, Plaintiff Turner and her daughter would not have suffered harm.

As Sheriff Mina is responsible for the duty undertaking by his Deputies while acting within the course and scope of their employment that is not in bad faith, then Plaintiff has alleged a viable claim. Defendant John Mina's Motion to Dismiss as to Count VIII should be denied.

### IV.    CONCLUSION

For the reasons stated herein, Defendant John Mina's Motion to Dismiss the Second Amended Complaint should be denied.

**WHEREFORE**, Plaintiffs, Brandi Turner, individually and as Personal Representative for the Estate of T'Yonna Major, and Gary Lyons, as Personal Representative for the Estate of Dylan Lyons, respectfully request this Court to deny Defendant John Mina's Motion to Dismiss the Second Amended Complaint as to Counts III through VIII.

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed this 10th day of November 10, 2025, using the CM/ECF portal filing system which will send an electronic copy of the foregoing to all counsel of record.

Dated: November 10, 2025                  */s/ Richard W. Smith*
                                          Richard W. Smith, Esq.
                                          Florida Bar Number 0013943
                                          DeLayne Penland, Esquire
                                          Florida Bar Number: 1024836
                                          Ryan J. Vescio, Esquire
                                          Florida Bar Number: 14032
                                          Mark E. NeJame, Esquire
                                          Florida Bar Number: 310931

NEJAME LAW, P.A
111 N. Orange Ave., Ste. 1300
Orlando, FL 32801
PH: (407) 500-0000
F:    (407) 802-1448
delayne@nejamelaw.com
ryan@nejamelaw.com
mark@nejamelaw.com
richard@nejamelaw.com
PI@nejamelaw.com
*Attorney(s) for Plaintiffs*

**RESPECTFULLY** submitted this 10th day of November 2025.

*/s/ Richard W. Smith*
**Mark E. NeJame, Esq.**
Florida Bar Number: 310931
**Ryan J. Vescio, Esq.**
Florida Bar No. 14032
**DeLayne Penland, Esq.**
Florida Bar Number: 1024836
**Richard W. Smith, Esq.**
Florida Bar No. 0013943
**NEJAME LAW, P.A**
111 N. Orange Avenue, Suite 1300
Orlando, FL 32801
PH: (407) 500-0000
F:    (407) 802-1448
mark@nejamelaw.com
ryan@nejamelaw.com
delayne@nejamelaw.com
richard@nejamelaw.com
PI@nejamelaw.com
*Attorney(s) for Plaintiffs*