**ORIGINAL**

407.423.9900
Fax 407.841.2779
Toll Free 855-MYDEPOS

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

## CASE NO.: 6:25-cv-00252-PGB-NWH

## BRANDI TURNER, ET AL.

## V.

## JACKSON B. KEYES, ET AL.

## DEPOSITION OF

## JERONIMO RODRIGUEZ

## DATE:

## MARCH 25, 2026

401 EAST JACKSON STREET,
SUITE 2370
TAMPA, FL 33602

315 EAST ROBINSON STREET,
SUITE 510
ORLANDO, FLORIDA 32801
CORPORATE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

BRANDI TURNER, INDIVIDUALLY, AND AS THE PERSONAL

REPRESENTATIVE FOR THE ESTATE OF T'YONNA MAJOR AND GRAY

LYON AS THE PERSONAL REPRESENTATIVE FOR THE ESTATE OF

DYLAN LYON,

Plaintiffs,

vs.                         CASE NO.: 6:25-cv-00252-PGB-NWH

JACKSON B. KEYES, AN INDIVIDUAL AND JOHN MINA, IN HIS

OFFICIAL CAPACITY AS SHERIFF OF ORANGE COUNTY,

Defendants.

DEPOSITION OF

JERONIMO RODRIGUEZ

MARCH 25, 2026

10:02 a.m. (ET)

Remote Proceeding

Shiloh Baillou, HH 473246

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

APPEARANCES OF COUNSEL


On behalf of the Plaintiffs, BRANDI TURNER AND GARY

LYONS:


RYAN VESCIO, ESQ.

DELAYNE PENLAND, ESQ.

NEJAME LAW

111 North Orange Avenue

Suite 1300

Orlando, Florida 32801

ryan@nejamelaw.com

delayne@nejamelaw.com

APPEARED VIA VIDEOCONFERENCE


On behalf of the Defendants, JACKSON B. KEYES AND JOHN

MINA:


BRIAN F. MOES, ESQ.

DEBEVOISE & POULTON, P.A.

1035 South Semoran Boulevard

Suite 1010

Winter Park, Florida 32792

moes@debevoisepoulton.com

APPEARED VIA VIDEOCONFERENCE

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

INDEX

Page

DIRECT EXAMINATION BY MR. MOES                                              5

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

The deposition of JERONIMO RODRIGUEZ was taken at MILESTONE REPORTING COMPANY, 315 EAST ROBINSON STREET, SUITE 510, ORLANDO, FLORIDA 32801, via videoconference in which all participants attended remotely, on WEDNESDAY, MARCH 25TH, 2026, commencing at 10:02 a.m. (ET);  said deposition was taken pursuant to the FLORIDA Rules of Civil Procedure. It is agreed that SHILOH BAILLOU, being a Notary Public and Court Reporter for the State of FLORIDA, may swear the witness and that the reading and signing of the completed transcript by the witness is not waived.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

THE REPORTER:  All right.  And we are on record.  Will all parties, except for the witness, please state your appearance, how you are attending, and your location?

MR. VESCIO:  Ryan Vescio on behalf of plaintiffs, appearing from Orlando, Florida.

MR. MOES:  Brian Moes on behalf of Sheriff John Mina suited in his official capacity, and Deputy Jackson Keyes, sued individually.  I'm appearing virtually from my office in Winter Park.

THE REPORTER:  All right.  Mr. Rodriguez, can you please state your full name for the record?

THE WITNESS:  Jeronimo, I go by Jerry, Rodriguez.

THE REPORTER:  Thank you.  And we've already stipulated with your ID off record to the camera.  So Mr. Rodriguez, can you please raise your right hand for me?  Do you solemnly swear or affirm that the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS:  I do.

THE REPORTER:  All right.  Thank you, sir.

And with that, Counsel, you may begin.

DIRECT EXAMINATION

BY MR. MOES:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q. Good morning, Mr. Rodriguez. As you've heard, I represent the defendants in this particular action. You've been retained as a police practices expert to offer opinions critical of the conduct of Deputy Keyes in the Orange County Sheriff's Office. I want to spend a few hours with you today to discover your opinions, which you've reported in writing, which was served on -- in this case. I have a report of March 6, 2026. Before I begin, have you received any additional material since you wrote your report of March 2026?

A. No, sir.

Q. When were you first retained?

A. I don't remember the date, but it was probably less than a month, a couple of weeks, three weeks, I'd say, roughly before the -- the report date.

Q. So in the month of February, fair to say?

A. End of February, sometime there, yes.

Q. And you were contacted by the Nejame Law Firm, and asked to become involved in this case as a reviewer?

A. Yes, sir.

Q. Prior to that inquiry, had you any awareness or knowledge of the shooting incident that's at issue here?

A. No, sir.

Q. After being asked to review this case, did you

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

do any independent research or require any news article, news reports, or review any news broadcasts?

A.    No, sir.  Just what was provided to me.

Q.    There's Ring camera video evidence in this case.  Have you seen the Ring camera video evidence?

A.    I don't think so.

Q.    Particularly the Ring camera video from the residence of Brandi Turner?

A.    I don't have a recollection of seeing a Ring camera.

Q.    Have you reviewed the deposition transcript of Brandi Turner?

A.    I believe so.  I don't remember now everything that I reviewed.

Q.    You keep an inventory of what material that you received and reviewed?

A.    It -- it's in the report, yes, sir.

Q.    So Ms. Turner's deposition transcript is not indicated in your report.  Safe for me then to conclude that you haven't reviewed her deposition transcript?

A.    That's correct.

Q.    And same with the Ring camera video.  You -- the Ring camera video is not indicated in your report, so safe to assume that you derived your opinions without consideration of the Ring camera video?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

430399 Rodriguez Geronimo 3-25-2026

8

A.    That is correct.

Q.    You're familiar with what CAD is certainly, right?

A.    Yes, sir.

Q.    Recall reading the CAD from the initial shooting involving Nathacha Augustin?

A.    Could you repeat that question, please?

Q.    Have you reviewed the CAD report concerning the Orange County Sheriff's Office response to the Nathacha Augustin shooting occurring, which commenced at about 11:17 in the morning of February 22, 2023?  Have you reviewed the CAD?

A.    I remember seeing the CAD.

Q.    Any reason -- not have indicated having reviewed that CAD in your -- as your -- the material that you relied upon in formulating your report?  Any reason why you would omit that from the materials reviewed?

A.    If I reviewed it -- it was listed, and I -- I don't know which report you're referring to, but I thought I had a -- a CAD report or something that looked like a CAD report in there.

Q.    Okay.  Perhaps it was subsumed within one of the early investigative reports concerning the homicide. You've indicated 15 body cam video that you've seen?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.    I don't remember the number.  Again, I would have to refer to whatever is listed on the report.

Q.    Well, your report indicates that -- if you could turn to Page 6, Line 180.

A.    One second.  I don't know that that represents 15 cameras, and this is -- or 15 different videos.  I believe that represents a number before that camera.

Q.    Are you able to look at your records to determine which body cam video, whether it's a single video, or 15 videos you've actually reviewed?

A.    Yes.  One second.  Let me get you back up here. I don't know what happened to the screen.  Yeah, there we are.  I have two videos.  They start, one with a number 15, one with a number 17.

Q.    Okay.  All right.  Fair to say that you haven't listened to any 9-1-1 communication?

A.    There were some audio tapes, and they're listed on there as well.  I believe there's two, four, six, seven of them.

Q.    You're aware that you -- do you know who Calvin Collins is?

A.    That name doesn't ring a bell.

Q.    Calvin Collins was the driver in the -- of the vehicle in which Nathacha Augustin was murdered.

A.    The cousin.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.    The -- you referred to him as a -- as a cousin. Calvin Collins was interviewed at the Orange County Sheriff's Office headquarters within hours of the shooting.  That video, that interview was produced in litigation, have you seen the video?

A.    I don't believe it's listed, and I don't remember seeing it.

Q.    Have you seen any video that provides a firsthand account of the statements made by Calvin Collins, in connection with the law enforcement response to the Augustin shooting?

A.    I don't recall seeing a video.

Q.    So the totality of your information concerning -- or the totality of the facts that you have relied upon in determining what Calvin Collins said and when is derived from what material, if you didn't review any body cam video, or video of the interview?

A.    Information provided in the incident reports from the deputies.  The information that he was a firsthand witness, and that he was the cousin, and it's also based on my experience of having handled similar situations, based on the information that we would attempt to obtain from a primary witness.

Q.    Well, let me -- let me put an obvious question to you.  You would -- you would agree with me as to the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

738399 Rodriguez Geronimo 3-25-2020

11

best evidence of what Calvin Collins was reporting at the scene, and in custody, would be the video evidence?

A.   The video evidence of a -- of an interview taken at least an hour or a couple hours later?

Q.   Correct.

A.   I don't know that I could agree with that. No, sir.

Q.   Why wouldn't -- why couldn't you agree with that very plain proposition?

A.   Because I don't know what was asked of him later on.  I don't know what he provided.  I think that it could differ from he -- what he would have provided on the scene right after the incident, if questioned, when questioned about what happened.

Q.   Well, you would agree that the -- let's refer to the body-worn camera video of the first-responding deputies.  You would agree that that video would provide the best evidence of what Calvin Collins was reporting to law enforcement, at the time the body cam was active?

A.   I think it would be an accurate account of what he provided while the camera is on to that person with the body-worn camera.

Q.   Correct.  And the same would be true for the interview recording.  At the time that the recording was being made or occurring, you would agree with me that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

that video would be the best evidence of what Calvin Collins was informing law enforcement about the circumstance of the shooting.  You would agree with that, wouldn't you?

A.   I don't know that it's the best, sir.  I understand your question, but I think they're both good, and I think they're both very relevant.  I don't know that I could classify it as the best.

Q.   Okay.  All right.  So in your report, you speak to the conduct of Deputy Jackson Keyes, correct?

A.   Yes, sir.

Q.   And you focus your opinions on the performance of Deputy Keyes, correct?

A.   Specifically, the interaction he had with Ms. Taylor.

Q.   Right.  And you were asked specifically to focus your review on the performance of Deputy Keyes at the outset of your retainer in this case?

A.   Yes.

Q.   You were not asked to review the performance of any other deputy who responded to the Nathacha Augustin report?

A.   I think the review and the scope is also in its entirety on their response and how they handled that incident.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900   www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q.   Well, in your report, you only especially identified one deputy, that's Deputy Jackson Keyes, correct?

A.   I think I identified two other deputies; am I right?

Q.   You do identify two other deputies.  You identify a K-9 Deputy Davila, and you do -- and you do -- you identify a second deputy, Deputy Rutherford.

A.   I believe so, the two that I listed.

Q.   Okay.  You expressed opinions concerning the conduct of Deputy Jackson Keyes, but I did not read your report as indicating any opinion concerning the conduct of Deputy Davila or Deputy Rutherford.  Is it fair for me to assume then that you have not offered -- that you are not offering opinions concerning the performance of Deputy Davila or the performance of Deputy -- what was the second name?  Rutherford.

A.   That is correct.  To the degree that I mentioned about my belief that a canine search should have been done, but I did not opine with regards to Davila, with regards to any deficiencies.

Q.   Okay.  I'm going to identify some other -- I'm going to name some other deputies, and ask you if your report in any way speaks to the performance of them, okay?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

258399 Rodriguez Geronimo 3-25-2026                    14

A.    Yes, sir.

Q.    Does your -- does your report, and necessarily your opinions, do they concern the performance of the deputy by the name of Taylor Atlee?

A.    No, sir.

Q.    Does your report -- do your -- does either your report or your opinions concern the performance of a deputy by the name of La'Jerrold White?

A.    No, sir.

Q.    Does your report, or do your opinions concern in any way the performance of a deputy by the name of Lewis Tejera, spelled T-E-J-E-R-A, Jr.?

A.    No, sir.

Q.    Does your report, or do your opinions concern in any way the performance of a deputy last named Kitchen (phonetic)?

A.    No, sir.

Q.    Does your report concern the performance of either of the two homicide detectives that are prominent in this case, Detective Robles or Detective Savelli?

A.    No, sir.

Q.    Fair to say that, of those enumerated individuals employed with the Orange County Sheriff's Office, you have no opinions?

A.    That is correct.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q.   Are you currently a sworn law enforcement officer?

A.   No, sir.

Q.   When were you last sworn?

A.   2021.

Q.   Which state?

A.   California.

Q.   Ever been sworn in the state of Florida?

A.   No.

Q.   Ever been employed in the capacity of a homicide detective?

A.   No.

Q.   Ever been employed in the capacity of a canine handler?

A.   No.

Q.   Ever been employed in the capacity of a public information officer?

A.   Well, I didn't hold that title.  When I was in Baltimore as the deputy police commissioner, I would often be tasked with being the PIO, public information officer on critical incidents.

Q.   From your resume, you were most recently employed with the Baltimore Police Department?

A.   Most recently?

Q.   Yes.  Was that your last employer?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900        www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

A.    No, sir.

Q.    I have it right -- I see that.  I'm looking at your CV.  You were employed with the Baltimore Police Department, January 2013 through 2015?

A.    Correct.

Q.    You were not employed in the capacity as the designated public information officer, but you worked alongside or collaborated in some fashion?

A.    When my office was in charge of conducting those investigations, I would roll out to all critical incidents, and I had been tasked by the then police commissioner, on those situations, to act as the PIO.

Q.    Outside of that experience with the Baltimore Police Department, any other work experience as a PIO?

A.    In Los Angeles, as a commanding officer, not as frequent as Baltimore, but I would provide press conference as the PIO, or at least the person in charge of the incident.  Also, while in San Francisco, on a couple of occasions, I did as well.

Q.    Did the Los Angeles Police Department have a designated PIO on those occasions, when you would speak to a particular incident?

A.    They have a PIO always assigned to the multiple, but that still wouldn't preclude someone else providing the press release or press conference.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

Toll Free 855-MYDEPOS

Q.   In those circumstances where you had special knowledge of the matter that was being reported?

A.   That wasn't for me, I take it?  I -- I heard some --

Q.   Yeah.  Yeah, just a minute.  On those occasions where you would speak to a particular matter of public interest for the Los Angeles Police Department, fair to say that you were always doing that under the guidance of the designated PIO officer for the Los Angeles PD?

A.   No, sir.

Q.   You acted independent of the PIO?

A.   I provided information, and the PIO was not always at scene.  I have had occasions where a PIO would be there, but that isn't always the case.

Q.   I guess a better question is, you would not have offered that public information unless you were asked to do so by someone with the PIO office, in the City of Los Angeles Police Department; fair to say?

A.   Or some other ranking person, that's correct.

Q.   So you were last employed with the City of Los Angeles in 2013, more than a decade before the shooting at hand here, right?

A.   That's correct.

Q.   And when you separated from the City of Los

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900        www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Angeles Police Department, what were those circumstances of your separation?

A. I was a commanding officer with nearly 27 years on, and I was asked to take on the role of a deputy police commissioner in the city of Baltimore.

Q. So you left the city of Los Angeles for a job opportunity on the East Coast, more or less?

A. Yes, sir.

Q. What is the rank hierarchy within the City of Los Angeles Police Department?

A. Police Officer 1, that's a probationary officer, a person who's not fully tenured, Police Officer 2 is a tenured police officer, then you have Police Officer 3, which is a field training officer, Sergeant, Detective, Detective 1 is not a supervisor. You have Sergeant 1 or Sergeant 2, Lieutenant, Lieutenant 1 and 2. You have Detective 1, 2, and 3. You have Captains 1, 2, and 3, Commander, Deputy Chief, Assistant Chief, and Chief.

Q. Have you ever been a detective?

A. Yes, I worked a detective trainee position when I left Hollywood Vice for -- I -- I think it was about a year, working crimes against persons.

Q. How long were you employed as a detective in that unit of crimes against persons?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.    I was a detective trainee, and I was there, I think, just under a year.

Q.    And what year would that have been approximately, sir?

A.    Yeah.  Between 1990 and '93, roughly, just on my guesstimate.

Q.    Okay.  The highest rank that you've held with the Los Angeles Police Department was patrol commanding officer?

A.    That's correct.

Q.    And how long did you occupy that position?

A.    I think it was about two years.

Q.    2000 -- I'm assuming that the last two years of your employment there?

A.    That's correct.

Q.    2011 to '13, roughly?

A.    '13, I believe.

Q.    So given your years with the City of Los Angeles Police Department, what prompted you to leave for a new and different agency on the opposite side of The United States?

A.    I had enough time on to retire.  They wanted me to bring in a Professional Standards and Accountability Bureau, and start a Force Investigation Division within the Baltimore Police Department as a

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

deputy police commissioner, which at the time I thought was a good segue.

Q. Did you have any grievance between you and the City of Los Angeles, at the time, Police Department, the City of Los Angeles Police Department at the time that you separated?

A. I did not.

Q. Were any complaints made against you when you were employed with the City of Los Angeles Police Department within the last, oh, five years of your service there?

A. There may have been. I don't remember anything standing out.

Q. Were any of those complaints validated?

A. Not sustained, no.

Q. So in 2013, you leave the City of Los Angeles Police Department, and you join the Baltimore Police Department where you worked for about two years, four or five months, right?

A. Approximately.

Q. And you separated from this Baltimore Police Department in May of 2015. Did you -- but you did not fully retire. You went to be -- you accepted a position with NiCE, assuming that's how you pronounce it --

A. Yes, sir.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900      www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q.    -- systems?  What is NiCE Systems?

A.    Yes.  It's an international company that is in many spaces.  The one that I was associated with was public safety, and at the time, they were in the process of developing a software solution to -- used in policing, specifically with investigations.

Q.    **Give me some detail as to the application of this particular software.**

A.    Right.  So for investigators, this software -- as a detective, you have different silos where you have information, CAD, one of them, risk -- you -- you -- you know, your report management system, 9-1-1s, et cetera, in which a detective oftentimes has to go to those locations to gather the evidence that they need.  This was a system that would pre-actively digitize, and it gave you one location to reach out to those different platforms, and retrieve digitally whatever evidence you wanted.

Q.    **And so how did you support the business?**

A.    I was the -- the law enforcement business development manager in which I liaised with the different law enforcement agencies, and provided demonstrations.  I also assisted in providing insight on the development needs.

Q.    **Was part of your job with NiCE Systems to**

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

promote and sell the service?

A.    I did not sell.  No, sir.

Q.    Did you market it?

A.    I would attend the different conferences, and provide demonstrations, and be a person there at the booth.

Q.    The position was in New Jersey.  It seems like you fly back to the West Coast?

A.    At the time, I moved -- it was the -- the -- the brick and mortar was in New Jersey.  It was a 99 percent online job, in which I did travel, and I would go to New Jersey, but it was very infrequent.

Q.    I see.

A.    I worked from home.

Q.    I see.  So after completing your job with NiCE Systems, chose to continue with law enforcement, and not retire, even though you've retired from the City of Los Angeles, you accepted a position with the San Francisco District Attorney's office?

A.    Yes, sir.

Q.    You worked there for three years, approximate?

A.    That's correct.  They had asked me to bring in the model of force investigation division that we brought into LA, and we brought into Baltimore, and they were initiating one in San Francisco.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q.   You were employed from 2019 to 2021 with the -- with the San Luis Obispo County Sheriff's Office?

A.   Yes, sir.

Q.   What caused you to return to law enforcement in 2019?

A.   Well, I think I was in law enforcement with the DA's office, that was in the investigative -- strictly investigative, and I wasn't ready yet to leave law enforcement, and I had a position where they asked me to be there, and be a special investigator.

Q.   Special investigator, specializing in any particular cause?

A.   I did -- right.  So I did not necessarily crime, I did investigations from audits analysis investigations of personnel complaints, of the jail operations.  At times, I would assist them with some background investigations if they had an issue with individuals, things of that nature.  I also worked on the biometric system, in which I helped run the computer system that liaised with DOJ, in transferring the arrestees' fingerprints, and any of the prints that would be searched at the local county and state databases.

Q.   Were the special projects that you were investigating with that sheriff's office, were those

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

internal?  Like internal reviews, professional standard investigations?

A.  Yes.

Q.  You established your consulting group, JR Investigative and Consulting Groups in July of 2021. That's a Palm Coast company?

A.  That is correct.

Q.  Palm Coast, Florida, to be particular?

A.  Yes, sir.

Q.  And you are here today in that capacity as a consulting professional with your company?

A.  Yes, sir.

Q.  Are you a resident of Florida?

A.  Yes, sir.

Q.  And when did you become a resident?

A.  2021.

Q.  And you live in Palm Coast, right?

A.  Yes, sir.

Q.  Have you testified in the Middle District Court?

A.  I testified in a -- I apologize.  I -- I testified in a grand jury in Middle District on a use of force case.

Q.  Okay.  And we won't get into details about that.  But is that the sole -- is that the sole

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

experience that you're being -- or offering expert testimony, in the Middle District?

A.   I don't remember if I was depoed in that case or not, but that would be the only two in Middle District.

Q.   Without identifying any parties, what was the -- what was the subject matter that you were brought in at the -- for -- to assist the grand jury?

A.   Well, I was connected with the plaintiff's case, and the grand jury heard from a defense expert and a plaintiff's expert, and I provided opinions and answered questions, and this dealt with a -- a lethal force -- use of force that resulted in multiple injuries and a death.

Q.   A police use of force resulting in death?

A.   Yes, sir.

Q.   In other words, a police shooting of a civilian?

A.   Multiple civilians, yes, sir.

Q.   Okay.  Certainly a scenario that we are -- we fortunately, are not dealing with today, right?

A.   Not an officer-involved shooting.  That is correct.

Q.   What if I expand the view and I looked at federal -- or the federal courts within the state of

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900     www.MILESTONEREPORTING.com
ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Florida, have you testified as an expert in any federal case in Florida?

A.   I think I testified in two arbitrations for two law enforcement.  This was for the defense.  And that was in Florida, if my memory serves me correct.  I think -- I'm sorry.  I had, at one or two other depos also in Florida, Central Florida.

Q.   Did those depositions, those one or two other depositions, did they concern a question as to whether use of force was reasonable?

A.   Yes, sir.

Q.   In other words, they concerned police use of force on a civilian?

A.   Yes, sir.

Q.   Which is not at all at issue in this particular case, right?

A.   That is correct.

Q.   Let me approach it this way.  Have you -- have you ever offered opinions -- are you familiar with the 11th Circuit, Court of Appeals and the 11th Circuit in the federal system?

A.   Probably a little more than the average person, but not an expert.

Q.   All right.  So if I just limit it to the Southeastern United States, have you ever been -- have

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

you ever, as an expert, been asked to opine to a homicide investigation and the quality of that investigation?

A.   Yes, sir.  I have.  I don't remember what circuit it was in.  It was in, I think Virginia, Alabama.

Q.   Are you identifying two for me or are you --

A.   Two, at least that I remember.  And -- and I don't have -- I -- I don't recall all of the ones that I may have testified in.  Those are the ones that come to mind.

Q.   Okay.  Well, why do those two cases stand out to you?

A.   Because you asked me about being in Florida.

Q.   Okay.  So what was the -- what was the essence of your review in those cases?

A.   The one was a negligent prosecution, and I was on the defense of homicide investigation and incarceration of four individuals.  And I've done others.  I just can't think of them.  Those are the ones that just come to mind.  I apologize.  And the other one I think was a Central Florida -- I believe it was Central Florida, non-lethal use of force.  Yes.

Q.   Approximately when did you offer opinions?  It seems like the case in Virginia concerned a claim made

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900   www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

by a -- an individual who was alleging that they were wrongfully convicted due to the deficiencies of a homicide investigation; is that a fair summary?

A.   That is correct.   It was four individuals.  Four --

Q.   What -- who asked who -- you to review and opine in that case?  Roughly.  I'm not asking you for a pinpoint.

A.   Yeah, I don't remember exactly, but it was basically the overall handling, investigation, follow-up interviews, documentation of the involved officers, of which, if I remember correctly, were multiple agencies.

Q.   And approximately how long ago were you asked to testify in that case?  Five years?

A.   No, less.  I think it may have been two, give or take.  Definitely two years, but not exactly --

Q.   Do you know if you were deposed in that action, sir?

A.   I believe I was deposed in that.

Q.   Do you know the -- and you were retained for the defense?

A.   That is correct.

Q.   Do you recall the name of the agency or the names of the detectives that you were retained on behalf of?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900     www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

A.    I think it was West Virginia, either state police -- I don't recall as I stand here today.

Q.    Is that indicated on your testimonial history?

Mr.  Rodriguez, I don't know if you heard the question, but is that indicated on your testimonial history?

A.    Yes, sir.

Q.    Do you have that handy?

A.    I'm getting it open now.  Give me one second.

Yes, sir.

Q.    Well, would you peruse your testimonial history and identify for me the case, please?

A.    Number four and five.

Q.    And can you read into the record the case style?

A.    "West Virginia State Police, Anthony Cummings, Kimberly Pack, Greg Losh, Mike Parde, Eddie Blankenship, and unknown officers of the WVSP," I think it's West Virginia State Police, "Case number 3:22-CD96 defense." And number five, "Nathan Barnett and Philip Barnett," same case, "West Virginia State Police, et al., Case number 3:22-cv-0203."

Q.    Thank you for that.  You testified having a recollection of a second case, an Alabama case where you were asked to opine on matters that concerned an -- a

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

detective investigation of some nature.  Are you, by perusing your testimonial history, are you able to identify that case for me?

A.    That was not a detective case.  That was just in -- in that area, right?  That was a case of an in custody death at a county facility.  I have other ones that are Morant v. City of New Haven for the defense. That was also a wrongful prosecution.

Q.    Could you read into the record, please, that case file?

A.    Yes, sir.  "Morant v. City of New Haven, et al., Case number 3:22-cv-000630CSH."

Q.    Are you often asked to review police use of force lawsuits?

A.    I have been, yes.

Q.    Would it be fair to say that the predominant number of cases that you're asked to review as a police practices expert concern the use of force and the appropriateness of that force used by a law enforcement officer?

A.    I have yet another case that was a wrongful death -- I'm sorry.  A wrongful prosecution that I don't think I've read yet, but a aside from that, the other ones deal with pursuits, uses of force, lethal and less lethal.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

Q.   Well, since you mentioned it, as you were reviewing your testimonial history, please provide me with the third case that concerned a wrongful -- a claim of wrongful conviction.

A.   Yes.  That was Adam Carmon v.  City of New Hampshire, et al., case number 3:23-cv-00944JCH.

Q.   Thank you for that.  Are you currently on the faculty of any teaching institution?

A.   Yes, sir, I am.

Q.   Which institution?

A.   Law Enforcement Risk Management Institute.

Q.   Where are they headquartered?

A.   Indiana.

Q.   What is your status there?  In other words, what is your title with that institute?

A.   I provide training for law enforcement agencies, state, federal, tribal, throughout the U.S. on predominantly use of force, internal affairs, police practices, pursuits.  There was another one and it just left my mind.  I also provide webinars.

Q.   Yeah, I'm sorry.  I didn't mean -- I -- you paused.  I thought you were through.  I didn't mean to step on you.

How long have you been affiliated in some -- in some employment capacity with Legal and Liability

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

Risk Management Institute?

A.    I believe it's since 2018.

Q.    Where is your place of employment when you're working for Legal and Liability Risk Management at the institute?

A.    Well, if I do a webinar-based training, then I do that from my home office.  But at least once or twice a month, I would travel to different venues throughout the U.S. to provide training.

Q.    That training being in person?

A.    Yes, sir.

Q.    Have you, within the last three years, traveled to the state of Florida to provide any such training to a law enforcement agency within the state?

A.    Yes, sir.

Q.    When -- what was the most recent?

A.    Last year, about this time, and next week, or in two weeks, again, in Florida.

Q.    And last year, what was the duration of the training that you provided with this company?

A.    I think in this particular conference, it was a one or a one and a half day.

Q.    Okay.  And you kept the syllabus, I'm assuming, of the subject matter?

A.    I don't have it.  No, I -- I -- if anybody has

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

it, it may be LLR.

Q.   What was the topic last year that was focal to your teaching?

A.   I think it was officer-involved shootings.

Q.   Okay.  And this year, you have something on your calendar to -- no, I shouldn't say something.  But you have another teaching session in Florida in the coming weeks?

A.   Yes, sir.

Q.   What is the -- what is the focal topic that you will be instructing on?

A.   I believe it's officer-involved shooting in custody deaths investigations, and adjudications --

Q.   Okay.

A.   -- of administrative complaints.  Sorry.

Q.   Thank you.  Adjudications causes me to believe that you are speaking to adjudications made internally by reviewing law enforcement agency?

A.   Well, with every investigation, certainly on the administrative side, because the criminal side, as you know, is determined by the prosecutor's office, but on -- on the administrative side, there's an adjudication, if there's -- whether there's allegations of wrongdoing or not by the employees, but certainly with -- with regards to following policy and procedure

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900        www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

as well.  And that's -- the audience there ranges from officers, sergeants, all the way up to chiefs, sheriffs, so some have more than others in the arena of adjudication.

Q.    Okay.  I suppose it was a -- it was a bad question.  You're teaching on aspects of adjudication, that is within the context of a professional standard or an internal affair review of conduct?

A.    Yes, but the adjudication would be by the final authorities as well.  The recommendation could start at Internal Affairs but it deals all the way up with what are mitigating factors, what to consider, as you move all the way up to the final adjudication.

Q.    Adjudication by committee?

A.    Not necessarily.  Some departments, the sheriff or the chief by themselves have the final say. Sometimes they allow recommendations from subordinates who review and provide a recommended adjudication or finding.

Q.    Okay.  So this coming -- in the coming weeks, you'll be teaching on police shooting investigations and the adjudications that occur in connection with those incidents from the vantage point of administration, right?

A.    Yes, sir.

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.    Would it be fair to say that your teaching
with legal and liability risk management institute
concerns police shootings, police use of force, and
adjudications that occur administratively following
those incidents?

A.    Yes, with the understanding that there's a
wide gamut, practices, policy, procedures, pursuits,
lethal as well as non-lethal, and there's a criminal
component to just about all of those that we also talk
about, even though they're generally investigated by an
outside entity for the criminal piece.

Q.    Your affiliation with legal liability and risk
management in that -- in that context where you offer
your training on that subject matter, those issues do
not concern those that are present inside this lawsuit,
do they?

A.    This is absolutely not an officer-involved
shooting.  It touches on practices, but it is absolutely
not a use of force.

Q.    It touches tangentially on police practices.
In as much as one subject matter concerns police
practices and this subject matter concerns police
practices, right?

A.    Yes.

Q.    Are you able to give me any more concrete

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900        www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

correlation between what you instruct with this institute and the issues that are present in this case, other than the fact that they generally concern the application of police practices?

A.   General investigative, interview, crime scene, perimeter, search, seizure, evidence handling, communications, public safety statement, bifurcation of criminal and admin investigations, review of officers handling based on policy, procedure, and training. That's what comes to mind right now.

Q.   Your CV references a single publication?

A.   That is correct.

Q.   With the title of, "I just got in a shooting, what happened next?"

A.   Correct.

Q.   That was authored by you March 2025?

A.   Correct.  I don't remember the date, but I'm sure you read it verbatim.

Q.   I'm just reading from your curriculum vitae. Does that publication have -- touch on or concern any of the issues that you've been asked to opine on in this case?

A.   I don't think so.

Q.   Can you identify any of the 79 presentations that you -- or you've indicated on your CV as touching

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

on or concerning the very same issues that you've been asked to opine on in this case?

A.   There might be some that touch on, you know, follow-up, canvassing perimeters, et cetera, but I couldn't identify them by name.

Q.   Thank you for that.  Have you made a request for any materials that you know that are likely to exist in connection with the incident of this nature, but have not yet been provided?

A.   I don't recall making any such reports.

Q.   In your report, you make reference to police critical incidents and police incidents.  When you use that term, are you referring to police use of force incidents?

A.   No.  A critical incident could be a missing person, could be an injury, could be a robbery, could be an assault.  There's many types of incidents that would fall under that or could fall under that.

Q.   But when you characterize or describe the incident as a police hyphen critical, are you referring to an incident involving the police as opposed to critical incidents?  I'm trying to see if you distinguish between critical incidents of a certain category and police hyphen critical incidents of another category.  One involves an investigation internally from

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900   www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

an administrative perspective that may have a correlated criminal investigation parallel versus critical incident.

So in your report, I took notice on the first few pages of your report that you speak to your experience in police hyphen critical incidents, which, as a reader of your report, led me to believe that the police critical incidents that you're referring to are those use of force incidents and the investigations that follow those.  Is that a fair -- is that a fair reading?

A.   It includes that, but that doesn't encompass just that.  I've handled critical incidents as a young police officer all the way to a deputy police commissioner that dealt with critical missing persons, that dealt with domestic violence, that dealt with employees being arrested, that dealt with DUIs of employees, multiple unit pursuits that resulted in death other than -- or serious injury other than a firearm.

So there's a number of them.  So I have experience in that and we talk about it.  The issue with some of these critical incidents as it results could often result in a use of force.  We never know what may start as a pursuit, full pursuit as a radio call, can escalate and become something critical, hostage situation, things like that.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q.    Very good.  Thank you for that.  Did you identify any published police practice procedure in or during your review of this matter?

A.    As you know, within the United States, we have over 18,500 police departments.  None of which has one uniform policy and procedure.  That is derived more from experience of training, teaching, interacting with the various well-run agencies throughout the nation.  I teach throughout the nation and I come across different policies, procedures, and training.  I also read policies from agencies and you also get the reasonable officer and there is, unlike a scientific discipline, there is no one.

For example in pursuits, police pursuits vary from jurisdiction, department, in the way that they're handled when an officer is allowed or a deputy is allowed to go in pursuit versus other agencies, so that does not exist.

Q.    I appreciate that.  I'm simply asking, did you identify any publication that sets forth a police practices guideline that you -- that you referenced or relied upon to bolster or support some of the conclusions that you made?

A.    Other than the policies from the department, no.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q. Other than the policies of the Orange County Sheriff's Office, no?

A. Correct.

Q. And similarly, are you able to cite to any authoritative source, other than your personal experience, extrapolated from your years of experience in law enforcement, have you been able to -- or did you cite any authoritative source material in deriving an appropriate police practice in this instance?

A. Other than the policies with which guides the officers of the sheriff's department, no.

Q. And last, did you identify any curriculum that is offered in any training program for law enforcement that correlates to the opinions that you've entered -- rendered in this case, which bolster or support the opinions that you've made in this case?

A. I didn't cite any.

Q. Do you know of any, other than the internal policies of the agency?

A. I know that different departments have that in some of their post-curriculums. I wasn't provided that information in this case. And to be honest with you, the information that I was reviewing was such a, in my opinion, such a basic law enforcement function of having an armed murder suspect walk into a community that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

things like that are pretty basic instructions that you receive early on in your career.

Q. In other words, you're taught early in your career to apprehend armed dangerous people?

A. As it states in some of their policies, stop the killing, make sure that the community, to the -- the best of your abilities is safe. And if necessary, communicate that, but ensure or try to the best of your abilities to ensure that you stop the killing or further killing or harming of the community members and officers.

Q. You don't need to go to the police academy to lead with that philosophy, do you?

A. I think it's pretty basic, sir. And I say that respectfully. I'm not being flippant about it.

Q. All right. Walk me through the methodology that you used in supporting the opinions that you described in your report of March 6th?

A. So again, we can't discredit the nearly 40 years of law enforcement, my continuous training of all of the different agencies throughout the U.S. All of the cases that I've done, which exposed me to the different policies, procedures. In addition to that, I train. I've been accepted in courts as far as my methodology, as far as my opinions. And I reviewed all

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

of the provided materials with the backdrop of basic police functions to, like I said, try to ensure the welfare, the wellbeing, the safety of the community at large, in addition to their policies and resources available to the officers.

I also looked at what a reasonable officer would do, and it's my opinion, as I stated in there, that a reasonable officer, with the information that an armed suspect who just committed a cold-blooded murder, walked into the community would not have been handled the same way.

Q.   You've been testifying long enough as an expert to know that the determination of what a -- whether the officer's performance or conduct was reasonable is a jury question?

A.   Absolutely.

Q.   So you're not -- you're not substituting yourself for a jury in this case and opining that Deputy Keyes acted unreasonably, are you?

A.   I'm saying that his actions were not based on the reasonable officer with similar training.  That has nothing to do with objective reasonableness, nor is this meant to take away or in any way interfere with the jury decisions.

Q.   I appreciate that.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

A.   Those --

Q.   I'm sorry.

A.   Yeah, those are -- those are -- and I apologize, but those are terms that we use in training and they are common terms in use of force and in police review of incidents, in no way meant to take place of the final adjudicators of the jury.

Q.   I did not -- I didn't perceive you to do.  I just wanted to make sure that it was clear in the record that you're not about to offer opinions as to whether the judgment or the conduct of Deputy Keyes was reasonable, which is the ultimate question, I suppose, to be determined.  Thank you for that clarification.

On Page 7 of your report, Line 214.

A.   Let me get to that.

Page 7 and 214.  Yes, sir.

Q.   This speaks to the -- a portion of the methodology that you follow, right?

A.   Yes, sir.

Q.   All right.  And you wrote, "I reviewed the materials and consider whether I need additional materials before forming my opinions."  So that would suggest to me that you were supplied with the materials that you enumerated in your report.  And you paused, and you reflected on your years with law enforcement,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900     www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

knowing what records generally occurred to document a particular incident, and you reflected on that, and you determined that you had everything that you needed in that moment to begin writing your -- or beginning your review, fair?

A.   That is correct.

Q.   Because you earlier testified that you have not asked for any additional material?

A.   I have not.

Q.   And so your opinions were fixed on March 6th of 2026, correct?

A.   They were documented, finally on that date.

Q.   Of course, you reserve in your report.  I did take notice that you reserve the right to consider additional information as it becomes available, but you have not asked for any additional information?

A.   I have not.

Q.   You also indicate as part of your methodology is that you sometimes conduct research on related topics and publications and standards.

Did you do any research on related topics to identify any publication or any written standard that might inform your opinions or bolster your opinions?

A.   I didn't feel with this basic handling of a crime scene that I needed more, nor did I do additional

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900     www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

research.

Q.   I do not intend this question to be disrespectful of you, Mr. Rodriguez, but you are employed in the practice as a police practices expert. You are often called upon to review records, and knowing that at the end of your review, you'll have to generate a report, right?

A.   Correct.

Q.   A written report, right?

A.   Correct.

Q.   So a substantial portion of your occupation involves report writing?

A.   And reviewing.

Q.   That's not -- again, I'm not trying to diminish the review part of the case.  But when you begin a report, do you go to a template from a previous case and kind of take out some of the core background information and just cut and paste into the new case that you are about to put pen to paper on and report?

A.   That may be the case in certain sections.  For example, my background, my methodology does not change much.  From time to --

Q.   Okay.

A.   From time to time, it may change, but my curriculum, my background, things like that are pretty

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

standard.

Q.   I can accept that.  In your written report, Line 16, 2-16, 2-17, you indicate as part of your methodology and before you derive an opinion, you will review model policies created by well-run professional organizations in the industry.

Did you pause in your review of the case material that you then supplied, go look for some source material of model policies by well-run organizations in the industry, or did you just extrapolate from your generally acquired, absorbed experience in your decades of law enforcement?

MR. VESCIO:  I'm going to object as to the term "well-respected agencies," as that's vague.

MR. MOES:  Well, that's -- I'm reading verbatim from the report, Ryan, so --

MR. VESCIO:  I'll withdraw the objection then.

THE WITNESS:  So I believe that I had two well-run or two policies from well-run -- a well-run organization that highlighted resources.  The information was -- the information that I needed was contained in the materials that I reviewed, and I was able to form the opinion.

BY MR. MOES:

Q.   Thank you for that.  The policies that you are

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

referring to, are those policies for the Orange County Sheriff's Office?

A.   Yes.

Q.   Which obviously, upon review, you determined that those policies of the Orange County Sheriff's Office that you had considered compote with policies of a "well-run professional organization in the industry?"

A.   I think the policy is well-written.  The issue is -- is how it's adhered to, and I find that to be the case in many departments that are well-run.  Like I stated earlier, I -- I visit different parts of the nation twice a month, and in those training sessions, I may have five or six different organizations, so I get exposed to a lot of those in their policies and procedures.

Q.   And then on Line 18, you wrote that, "Based upon your review and analysis, I provide an opinion on whether the actions and decisions of the involved officers or deputies were consistent with generally accepted practices."

And in connection with this case, the deputy under review by you was Deputy Keyes and no other?

A.   Correct.

MR. MOES:  Are we due for a break?

MR. VESCIO:  Yes, please.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

MR. MOES:  Okay.  Why don't we come back at 11:20?

MR. VESCIO:  Okey doke.

THE REPORTER:  All right.  Give me one second and I'll take us off record.

(A recess was taken.)

THE REPORTER:  All right.  And we are back on record.

BY MR. MOES:

Q.  Okay, Mr. Rodriguez.  I'm going to ask you some questions that concern your understanding of the facts of this particular incident, okay?  And they predominantly concern the claims made by Gary Lyons as the personal representative of Dylan Lyons.

You know who Dylan Lyons is, right?

A.  Yes, sir.

Q.  Were you able to identify any record of direct communication between the Orange County Sheriff's Office and its personnel and Dylan Lyons as an individual?

A.  I think he was mentioned in the incident reports and the overall reports as far as one of the victims, although I think the name was redacted.

Q.  Okay.  Let me put a better question to you, because I'm not sure you understood.  Did you -- in your review, did you find any indication that Dylan Lyons

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

personally was in contact with any uniformed deputy or any personnel of the Orange County Sheriff's Office before he was murdered?

A.   I don't recall reading that.

Q.   Do you have any knowledge as to whether Dylan Lyons had an encounter with law enforcement prior to his death?

A.   I have nothing that indicates that.  I don't remember reading anything of that.

Q.   Do you have any knowledge as to whether the Orange County Sheriff's Office, its deputies or personnel, directed Dylan Lyons in any particular way?

A.   I -- I don't have that -- I don't have anything to base that on.

Q.   Do you know what the status of the criminal investigation into the shooting death of Nathacha Augustin was at the moment that Dylan Lyons was murdered?

A.   Say that again?  I'm sorry.

Q.   You understand the criminal investigations proceed on a continuum, right?  We know this.  We have a report of a crime, law enforcement, and I'm speaking in general senses as you can appreciate.

Law enforcement receives the call, they respond to the call, they handle first aid, they do

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900      www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

emergency measures, they control, they seek, and they investigate information, right?

A.   Correct.

Q.   Given that very general continuum of events, what was the status of the criminal investigation into the shooting death of Nathacha Augustin at the moment that Dylan was murdered?

A.   If I understand your question, I believe they had wrapped up their on-scene investigation and had cleared the scene, they being the Orange County sheriffs, and Mr. Dylan and his cameramen responded to the same location after the scene was cleared up or thereabouts.

Q.   And when he did so respond, is it your understanding that there were no law enforcement units or sheriff deputies in the vicinity at the time of his murder?

A.   I don't know about the vicinity, but I believe I remember reading that the crime scene had been shut down.

Q.   Do you have any -- did you discover any fact that led you to believe that law enforcement were in the vicinity and able to intervene with Mr. Moses when Mr. Lyons was shot and murdered?

A.   When Mr. Lyons was shot and murdered, I know

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900        www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

that deputies responded to the location.

Q. After the report of a shooting though, correct?

A. That's my understanding.

Q. Do your opinions inform in any way the claims made by the estate of Dylan Lyons against the Orange County Sheriff's Office, or have your opinions focused on the claims made by Brandi Turner individually and as the personal representative of T'Yonna Majors for the remarks and conduct of Deputy Keyes?

A. To a large part, I -- I think -- I -- I believe it's towards Ms. Taylor and her daughter. Mr. Lyons was employed as a representative of the news media. While information would have been beneficial, I don't believe I wrote an opinion other than it would have been beneficial with regards to Mr. Lyons.

Q. Right. You -- your report does not draw a connection between the performance of Deputy Keyes and the 4:00 p.m. shooting of Deputy Lyons after --

A. Of Mr. Lyons.

Q. I'm sorry. Of Mr. Lyons after the crime scene had been removed?

A. Correct, sir.

Q. Well, I know I'm about to ask you to speculate, which we don't do. But is there anything

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

that Deputy Keyes did or didn't do that somehow, in your mind, led to the shooting death of Dylan Lyons?

MR. VESCIO: And I'll object as to calling for speculation.

But you can answer, Mr. Rodriguez.

THE WITNESS: I don't know that I could opine that it led, but I believe, based on what I read, I believe, based on my experience having been in scenes like this hundreds of times throughout my career, that it more likely than not may have contributed.

BY MR. MOES:

Q. All right. Well, let's untangle that. Can you break that chain of causation down for me?

A. I believe that by allowing individuals to go back into a scene that was not yet secure, with no active search present, no warnings, no communications of the potential threat to the community, I believe it contributed to Mr. Moses being able to walk to some degree undetected by law enforcement into Ms. Taylor's house, and then walk out the front, encountering Mr. Lyons, and then continuing to walk down the street until he was confronted.

Q. So I'm mindful of Ryan's ask, so I'll ask you one question before we break. Who allowed Dylan Lyons

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

to drive to the location in preparation of making a live action report from the scene of Nathacha Augustin's death?  Who allowed that?

A.  I don't know that I could answer that because that's not within my scope.  I didn't consider that, and I don't have an opinion on it.

Q.  Well, you -- well, I asked you how you could draw a causal connection between Deputy Keyes, and among the things said by you was that Dylan Lyons was allowed to go to the scene.  I'm trying to determine who allowed Dylan Lyons to go to the scene based upon your understanding of the facts.  And you -- it seems like you don't know the answer to that question.

A.  No, I think I'm being confused by the question, but let me see if I could answer it again. It's not a matter of allowing.  I think we earlier talked about some of the issues that may have contributed to the individuals being shot in that scene that was still very dangerous, in my opinion, because Mr. Moses had not been apprehended.  And I was critical of that.  I never mentioned anything about a notification with regards to speaking personal one-on-one.

Q.  Right.  You didn't find any record evidence that would suggest to you that Dylan Lyons came to law

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

enforcement, asked their opinion as to whether or not it was safe to report, and then relied upon that opinion, and then went to the scene.

You found no record of that, did you?

A. No record.

Q. And I think it's pretty clear that you found no record, no evidence, of Mr. Lyons receiving information from law enforcement or encountering law enforcement before he made the decision to drive to the location in service of making a live action report.

You have no indication?

A. I don't know who made the decision, but if I remember correctly from what I reviewed, there was notification to the local news agencies about the crime that had been committed, the murder, and a decision was made for Mr. Lyons to go to that location. Who made that decision, I don't know.

MR. MOES: All right. Why don't we take a brief adjournment to accommodate Ryan and --

MR. VESCIO: I appreciate it. I'll sign right back in as soon as I can.

MR. MOES: All right.

THE REPORTER: All right. Give me one moment and I'll take us off record.

(A recess was taken.)

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

THE REPORTER: All right. And we are back on record.

BY MR. MOES:

Q. All right, Mr. Rodriguez. Clearly, we have two discrete claims within this one lawsuit. We have the claims made by Brandi Turner individually, and as the personal rep, and we have the claims made by the estate of Dylan Lyons.

And while there are some similarities between the two, insofar as the facts, I would like to -- if feasible with you, I would like to discern which opinions of yours concern the claim made by the estate of Dylan Lyons, and especially identify the deficiencies of the OCSO that you've opined on or the conduct of Deputy Keyes that you've opined on, that relates to the -- those -- to the claim of the Dylan Lyons estate.

And then I'll examine and question you and explore your opinions that more directly relate to the claims made by the Turner plaintiffs, okay?

A. Okay.

Q. So I've obviously started to question you about the Dylan Lyons lawsuit, and I believe I understood that you do believe that in some aspects, the performance of Deputy Keyes in the continuum of events somehow contributed to the shooting death of Dylan

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Lyons.  I'd like to understand that.

A.    Yeah.

Q.    I would like to understand which particular performance issues that you have with respect to Deputy Keyes in the morning of the Nathacha Augustin shooting bear on the events that happened in the 4:00 p.m. hour later that day.

A.    Yeah, I don't think I mentioned, I don't recall mentioning, that there is a connection between Deputy Keyes and Mr. Lyons as far as deficiencies.  I -- I think it was more in -- broader as far as the agency and communications with the community, businesses, and other folks that may be entering into that area with regards to the potential dangers posed by Mr. Moses.

Q.    Okay.  So your performance criticisms of Deputy Keyes relate solely to the claims made by Mrs. Turner and her encounter with Deputy Keyes prior to her shooting?

A.    Correct.

Q.    All right.  So without clarification, I won't question you about Deputy Keyes and ask you to go through the exercise of attenuating some causal chain of events in the scheme of things, because I understand that you don't have an opinion as to Deputy Keyes with respect to the Dylan Lyons lawsuit.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900        www.MILESTONEREPORTING.com

ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

That concerns only the claims made by the Turner family, right?

A.   Correct.

Q.   So if we were to look at the agency in general, what opinions did you derive that concerned the performance of the Orange County Sheriff's Office that in your opinion were substandard?

A.   Are we talking specifically to Mr. Lyons?

Q.   Yes, I'm going to -- I'm going to structure this deposition in that way.

A.   Okay.  But do you want me to look through them and identify them?

Q.   If you would, please.

A.   Sure.  I would say the one about the lack of bringing in aviation and the search of the K-9 contributed to the delay in apprehending Mr. Moses.

Q.   Can you help me find that in your report, please?

A.   Sure.  It is Page 13, 391 and 387, I think it starts.

Q.   Any others, sir?

A.   I think number -- Page 13, number 405.  Page 14, again, to some degree, 424, Line 424.  427, 434.  I believe that's it as I -- just quick perusal.

Q.   Well, I don't want to -- I don't want to

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

compromise you, so you're under -- you're under no.

A.    Okay.

Q.    -- hurry to do that, sir.

A.    Yep, yep.  Then number 397.  I may have said it already.  427.

Q.    You did.

A.    Okay.  I think that's it.

Q.    All right.  Very good.  I'll go through them in numerical order which you've identified them, and I appreciate that you were reading the numbers that you were providing were the line -- the line.

So Line 387, your report reads, "I know from experience that a coordinated aerial search from above by aviation helicopter unit, in addition to using K-9 units to attempt to track from the ground, is a good use of available resources."

And then you draw on your experience that there's a probability that apprehension occurs if you use those things, those resources, right?

A.    Yes, sir.

Q.    So we have a shooting report that a 911 call of a shooting that's received by the Orange County Sheriff's officer -- office by Calvin Collins, who's the driver of the vehicle in which Nathacha Augustin was murdered, right?  And then we have several other

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

civilian calls that come into the 911 operation center, and deputies respond to that or to those calls, render aid, and they contain the crime scene.

Then we know for around the 4:00, close to the 4:00 p.m. hour, additional calls are received by the -- of the -- at the 911 center of an unrelated call, of an unrelated shooting.

So when in that continuum would the use or the launch of a helicopter have been a good use of those units?

MR. VESCIO:  I'm going to object to the form of the question only as it relates to the classification of the 4:00 call being an unrelated incident, as we've pled that this was one continuous course of conduct and therefore think there's a lack of foundation.

But you can answer, Mr. Rodriguez.

THE WITNESS:  Okay.  So the issue for me is once -- in my opinion, my experience, my review, once that shooting happened of Ms. Augustin, and we had a witness who saw the shooting and provided us with clothing description and unique characters of the individual, I read nothing in the materials reviewed where any attempts were done to bring in an aerial support such as an air unit helicopter.  And

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900      www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

I think that would've been the appropriate time, working with ground forces.

And the reason I say that is we know that Mr. Moses, after the shooting, was alleged to have left still armed, on foot, into the neighborhood.

BY MR. MOES:

Q.   So the CAD report would indicate that a description was given of a person of interest, Black male, 17, 18 years of age, muscular build, approximately 180 pounds.  That was the description that was indicated in the CAD report.  You believe that is sufficient identifying information to responsibly launch a helicopter in the Orange County area, an urban area of Orlando?

A.   You had an eyewitness to the shooting who knows the cousin, knew exactly his name and what he was wearing.  And I think the fact that we had a cold-blooded murder in the city, I would've elected, it's my opinion, any resource that could've brought this person into custody and hopefully prevent further killing.

Q.   Even if we had a name of a third person in the car, how would that inform a helicopter pilot looking for a person of that description?

A.   Even with clothing as nondescript as wearing

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

all black and slip-on or flip-flops, or slip-ons as they were referred to, and the distinct nature of the hairdo, but you had the cousin in the car who knew the name and could provide additional information, plus can also do a field ID if we were to stop someone and eliminate if it wasn't him.

The issues is we'll never know what could have been done.  I believe that this would've been suffice to get ground units and an aerial unit to search this area.

Q.    You would agree with me that -- well, maybe you won't, but what experience do you have in service of an aviation unit attached to a law enforcement agency?

A.    For 27 years, actually, longer than that, because in Baltimore and in LAPD, we had air units.  And often as an officer, as a sergeant, as a lieutenant, as a commanding officer and even higher than that, I either requested, I communicated with, or I responded to observations by the air unit on critical incidents like this.  And I know how effective they can be.

Q.    So you last worked for the City of Los Angeles in what year, sir?

A.    2013.

Q.    All right.  So with respect to aviation, right, they're in search of an individual based upon a visual description.  Would you agree with that?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900     www.MILESTONEREPORTING.com

ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

A.   Absolutely.

Q.   In other words, with the tools and resources that they have, they need to know an identification by description.  How does the person appear, right?

A.   I think, respectfully, you're taking away from the air unit.  They're looking at areas like this.  They train for it.  It's in the policy that they help with assisting for searches.  And I think with the clothing description and the proximity, working together with a K-9, but even the air unit alone can see a lot more than what the police officers on the ground can see, which by the way, I reviewed nothing that detailed an active search for Mr. Moses.

Q.   So you refer to the -- to the assumption that there was an individual who was offering a name of Keith Moses.  The question I have for you is, from the vantage point of a police helicopter unit, what use would knowing the person's first name or name be when they are visually searching for someone who matches a particular description?

Can you agree with me that that would not necessarily be helpful information?

A.   No, sir.  Absolutely not.  The information of the name, date of birth, or at least average age can -- can -- can lead to the picture of -- of the culprit. And

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

in fact, I read that there was a detective or an officer -- a deputy who pulled up his -- his picture.

So even in 2010 and prior to 2013, we were talking with the air unit, giving them clothing description and when we had a name and some additional information on a suspect, we're able to relay that to individuals that can look up that person's picture, whether it's a driver's license picture, whatever picture it may be, prior arrest record, and be able to send that out, via a BOLO, and to the air unit and officers that are on the ground that are looking for it.

Q.    So do you know what type of -- or have you asked or done any research into the type of aviation equipment then available to the Orange County Sheriff's Office in February of 2023?

A.    According to the -- the policy, the aviation section, which is commanded by a captain, operates and maintains the agency's aircraft.  The aircrafts are available to assist operational units, conduct search and rescue missions and transport individuals.

So I know that in 2010, we have radios that we can communicate.  We have cell phones that we can communicate with department cell phones and transmit pictures.  And at the very least, that should have been done.  But more importantly, I read nowhere where it was

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

done.

Q.   Do you -- are you knowledgeable of the elevation at which a law enforcement helicopter is able to patrol?

A.   I would suspect that different areas are different, but helicopter units have equipment on board, like a forward-looking infrared.  They have binoculars, and you have a tactical flight officer that assists the pilot.

And that tactical flight officer oftentimes uses visual aids to assess or to assist in their looking for individuals.  This is something has been ongoing in air support unit for decades.

Q.   I said, do you know at what elevation those devices are useful?

A.   I know from experience that I've communicated with air units, and I know from experience that those devices have worked.  And I know that when we're conducting -- I've never been a pilot, so I -- I -- I don't have that information.

What I have been is countless times on the ground working with an air unit that adjusts their altitude when conducting searches of that nature.

Q.   Do you do any research into the population density or the demographics of the Pine Hills area of

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Orange County?

A.    If my -- my memory serves me correct, there's documentation of that in the complaint.

Q.    **But apart from the allegations within the complaint, did you research to determine the nature of the neighborhood, the population, the density, the demographics, so that you had some context for your opinion as to whether launch of a helicopter would be helpful in identifying a young Black man wearing a particular colored shirt?**

A.    If you're saying that it would be difficult because of the race makeup in the community, I disagree with that.  We've often launched and been successful in identifying individuals that may look like the community that we were searching for them in.

I didn't have a need, nor was it within my scope to look at the demographics, although there was ample information of the demographics, the population of that community.

I have also experience firsthand in communities that are very densely populated, urban environments in which the helicopters work under those conditions.

Q.    **So if I understood your testimony, the moment that the Orange County Sheriff's Office received a**

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900        www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

physical description of the third occupant of the Nathacha Augustin vehicle or the Calvin Collins vehicle, someone should have notified the aviation unit to put a helicopter in the air, fly to the location, and begin looking for an individual matching the physical characteristics that were known at that time?

A.   That is exactly the way it works.  Now, whether the helicopter was already airborne or not, I could tell you this.  If I was T'Yonna's mother or father, I would certainly want every asset up in the air or the ground, to capture this individual before what happened happened.

That is exactly what is broadcast in -- in a BOLO.  When you have a crime like that, you put it out via the police radio for a number of reasons.  You put it out there, so that the officers understand that this person is armed and dangerous and loose in the community.

That would also be a consideration of when you would put it out to the community, so that they understand the dangers and they take precaution until we apprehend this individual.  Again, none of which I read that had happened.

Q.   Right.  And you're offering this opinion, not knowing whether there was an aviation unit or a

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

407.423.9900        www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

Toll Free 855-MYDEPOS

helicopter available at the time, right?

A. I'm saying that based on what the policy says, that they have an aviation unit for.

Q. Correct. But those are two different things. Whether they have a unit that is specialized in aviation and they have a helicopter available to launch at its particular date and time, those are two different questions.

But you offer -- you're offering these opinions without knowing whether or not there was even a helicopter that was capable of taking the air at that point in time.

A. That wasn't my scope to learn if they hadn't. My understanding is they had that capability. It's in the policy, that's what they do and nothing was written.

There's oftentimes where the air unit can't be launched. For example, weather condition, visibility, things like that. Nothing was written with regards to that.

Q. Do you know whether infrared is useful in daylight hours?

A. It is not, in my understanding.

Q. And you do not know at what flight level law enforcement helicopters are able to operate in Orange County?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

A. No I don't, but that's not within my scope. I didn't -- it's not necessary for -- for me to know that. I know from experience that -- that's their mission and they fly and they adjust their height, based on the mission that they have at the moment.

Q. Is it fair to say that your experience working with aviation is being on the ground and having real-time communication with helicopter pilots as they're on patrol and, or, responding?

Is that the extent of your experience with aviation?

A. Let -- let me answer it this way, see If I can. I have never -- I've been in plenty of helicopters -- police helicopters. I have never operated as a pilot or tactical flight officer.

I have been at various ranks an officer on the ground, communicating or supervising the communications and the searches of individuals wanted by the police.

Q. Let me change subjects with you. Have you ever been employed as a K-9 handler?

A. No. Once again, I have a number of times, had the occasion as an officer, as a supervisor, lieutenant, to have the canine officer be requested if I was the officer, after a foot pursuit or when a person goes -- hides in order to launch searches.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q.    I appreciate that.  So you've certainly worked alongside of specially trained canine deputies and all law enforcement officers.  But a question I have, have you ever -- have you ever been specially trained in handling the canine?

A.    No.

Q.    Specially trained on what the detectable attributes are of a particular dog?

A.    There are various kinds of dogs, tracking dogs, clothing dogs.  What I could tell you is that here there was no information of any attempts of that deployment.

Q.    You're not -- you're not qualified to offer an opinion as to what -- or what is or is what isn't a trackable event?

A.    I disagree.

Q.    Well, what qualifies you to give an opinion as to whether an event is trackable by canine a or not?

A.    I've handled hundreds of these cases.  In this case here, they had a dog that was there at the location early on, as it reads.  They had a vehicle in which the suspect was located in.  They had a last-known location as he walked away.

I would have liked a -- an attempt to have been done.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q.    Well, what do you know about scent contamination?

A.    I know that it can be contaminated and they said here different things as to why they -- they enumerated that they didn't have a description, they didn't have a location, and that individuals had already walked around the scene.  I don't know if that was necessarily when Deputy Davila got there or not.

Q.    Are you offering expert opinion on canine tracking scent contamination?

A.    I think I said earlier that I'm not an expert on canines.  I am an expert in the sense that I've been the -- the user, the procurer of canines in a variety of situations where I brought them to the scene and they determine after an attempt whether they can or cannot.

Q.    You read the incident reports where the canine handler indicated that the scent was contaminated and would not be helpful to deploy this canine?

A.    I think the statement that I read, if I recall correctly, is that the canine officer was advised that the scene was contaminated.  And the canine officer, if I remember correctly, remained at scene in the event that they do decide to launch the dog.

Q.    In your report, you make reference to canine handler, Rene Davila.  You speak to Deputy Rene Davila

MILESTONE │ REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

being at scene.  You cite to his incident report that you reviewed.  Did you note upon review of the report that Deputy Davila stated that while on scene, he was advised there was a third outstanding subject?

"However, due to the time delay, as well as no known uncontaminated starting point for the canine track, I was unable to deploy my canine partner."

Did you consider that?

A.   I did.

Q.   I'm sorry.  And so you have what is an -- a statement made by the canine handler who was at the scene opining that the scene was scent-contaminated and he was unable to deploy his canine.

A.   I took that --

Q.   Are you quibbling with the determination of a specially trained canine handler?

MR. VESCIO:  I'm going to object as to the term "quibbling" as it's vague.  And as such, the question's improper.

BY MR. MOES:

Q.   You can still answer the question.

A.   I -- I think that what I said very specifically -- first of all, I think that statement by Davila, if I'm pronouncing the name right, was -- it -- I -- it gave me the impression that he was talking about

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

407.423.9900        www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

sometime later a third suspect, which I don't even believe was accurate.

What I'm saying here is this. We had two resources within the Orange County Sheriff's Department that were not utilized. And in my opinion, I think with the response of officers showing up quickly, and I think the vehicle being there in which Mr. Moses was seated at I think it would've been worthwhile, especially given -- and no one knew that this would happen. Given the continued level of violence of Mr. Moses I would've preferred it would've been appropriate to utilize whatever resources we had.

Q. Well, to be clear, upon review of the record, you did notate that K-9 Deputy Rene Davila responded to the shooting of Nathacha Augustin with the first responders.

You knew that, right?

A. The K-9 deputy responded. I don't know that I know exactly what time they got there versus the other deputies. But that deputy, the K-9 deputy got there pretty quick, which bolsters my concern that the canine unit was not utilized.

Q. Well, that brings me to my point. It seems as though you are critical of the judgment of Rene Davila, who I will represent to you arrived with the first

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

responders to include fire department.

He is a special trained canine deputy.  And in his determination, the scene was already contaminated scent-wise.  And he determined that his dog would not be helpful.  Do you have any reason to set aside the judgment of Deputy Davila in that regard?

A.   I have a concern for the death of a nine-year-old girl, where I think that we should have done everything we could.

Now, whether the canine could have picked him up or not, I would also argue that there was no efforts by foot patrols to go out and search for this individual.

That was one tool.  And I'm not questioning the deputy's statement or veracity behind it.  I am just looking at the outcome where it was tragic.  Beyond tragic.

Q.   Well, I -- we're not litigating whether the death of a civilian is tragic.  You understand that, right?

A.   I mean --

Q.   We're litigating -- we're litigating whether the performance of the Orange County Sheriff's Office and its deputy, Jackson Keyes, conformed with professional standards.  So you do not need to bring me

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

to the tragedy in your response to my questions.  We need to simply explore your opinions that relate to the performance of the deputies, okay?

A.    In the incident -- I'm sorry.  Go ahead.

Q.    So given that, you expressed criticism for the Orange County Sheriff's Office not bringing all available resources in response to the shooting of Nathacha Augustin, to include the aviation unit and the K-9 unit.

But I'm challenging you on the fact that we did, in fact, bring a canine unit with the first responders.  So I want you to revisit your assumed fact that we didn't bring canine.

Can you agree with me that you're mistaken as to that fact, that we did actually bring a canine?

A.    No.

MR. VESCIO:  I'm going to object as to a lack of foundation and improperly argumentative question. I have no objection if you're asking the question in a hypothetical.  But at this point there's no foundation that's been presented to the witness.

BY MR. MOES:

Q.    All right.  What leads you to believe, for purposes of your opinions, that the Sheriff's Office did not bring sufficient resources to the investigation?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com
ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

What causes you to believe that the deputy Rene Davila did not respond with a first responder, and was at the scene of the shooting of Nathacha Augustin within minutes of the 911 call being received?

A.    That in and of itself, in my opinion, bolsters the potential for deploying the dog.  And bringing the dog or having the dog at the scene is not the same as deploying the dog.  That's my point.

And the other issue is, based on what I read, the deputies handled a crime scene.  In fact, they walked people in and out of the crime scene to protect the crime scene.

I read nothing that led me to believe, or to understand, what was being done in order to identify the location and apprehend this violent murderer who was loose on foot in the neighborhood.

Q.    All right.  Here's my understanding of what you just testified to.  You do not dispute that the Orange County Sheriff's Officer dispatched a canine deputy to the scene with the first responders.

You agree that we did, right?

A.    I don't know if he was dispatched.  He was self-dispatched with the understanding that -- that he responded early on.  And it's my understanding from the documents that I read, that Deputy Davila was told by

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

Deputy Keyes that no search was needed by the K-9 for the reasons you enumerated.

Q.   Well, where do you draw that fact that he was - - Deputy Keyes told K-9 Deputy Davila that a canine search was not needed?  Where -- what's the source for that fact?

A.   There is a incident report in which Deputy Davila writes that.  I don't have -- unless you want me to go through every material that I reviewed, I can try to find it.  Whoops.

Q.   Well, it seems to be important to the case, as much as you hold the view that Deputy Keyes made an affirmative statement to the K-9 deputy that canine was not needed.

A.   Sure.  Let me look for that.  So it's incident report written -- it appears to be written by Deputy First Class Rene Davila, and it's titled 23-11822 -- 822.

Q.   And can you read into the record the report -- the pertinent section of that report?

A.   Sure.  "Upon arrival, I observed several deputies on scene as well as fire rescue personnel attempting lifesaving measures.  I was" -- "I was informed by the on" -- "by on-scene as well as fire rescue personnel" -- "attempting lifesaving measures on

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

the victim.

"I was informed by supervisors on the scene the victim had succumbed to their injuries, and deputies were standing by with a witness who was the driver of the vehicle.

"I then confirmed with Corporal Jackson Keyes they did not believe they had a valid starting point for a canine to track, as well as they did not know if there were any outstanding suspects or any suspect descriptions.

"I remained on the scene in case new information was developed," and it continues.

Q.   Well, please continue to read the remainder of that paragraph.

A.   Sure.  "I remained on scene in case any new information was developed, which I could then deploy to my canine partner.

"While on scene, the witness later advised there was a third outstanding suspect.  However, due to the time delay, as well as no known uncontaminated starting points or a track, I was unable to deploy my canine."

Q.   All right.  So according to that incident report, Deputy Davila arrives, he's on scene with Deputy Keyes.  Deputy Keyes indicates that they are unsure

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900     www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

whether there's any outstanding suspects, right?

A.   And no description.

Q.   And no description.  But later on the scene, as the Davila offers to stand by, he later was advised that there is a third outstanding subject.  However, due to time and the contamination, he was unable to deploy his canine.

Do you agree with that?

A.   Well, that's what he wrote, and I have no reason to dispute it.  But if he arrived there with -- with first responders early on, you have a victim that's being treated still on scene.  You have a crime scene, you have a car.  It is my opinion that an attempt to start the track with a canine should have been done.

And it -- it is my opinion that it was not done based on what Corporal Keyes told Davila.

Q.   Nowhere in that incident report is it indicated that Deputy Keyes told the K-9 handler not to deploy his K-9.

A.   Well, let me read it again.  I was informed of -- of -- I -- "I then confirmed with Corporal Jackson Keyes they did not believe they had a valid starting point for a canine track as well as they did not know if there were any outstanding suspects, nor any suspect description."

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

Q.    Are you suggesting that we should have brought the K-9 to the vehicle where nearby lifesaving chest compressions were being given to Nathacha Augustin?  Or that we should have brought the canine to the vehicle, while fire rescue personnel, many of them, were attempting to save the life of Nathacha Augustin?

And for the purpose of that dog acquiring some sort of track scent from within the car?  Is that what you're suggesting should have happened --

A.    What I --

Q.    -- based on your experience?

A.    What I'm suggesting is that Davila says that the victim was pronounced dead already.  And you had a crime scene, and the canine was there.  I think that it is commonly known that when you have a canine there that quickly after the incident, as you stated, that an attempt could have and should have been done.  That's my opinion.

And I am in no way talking about interfering with whatever the fire department is doing.  But I do understand the dangers posed by Mr. Moses to the community.

Q.    Why are you -- why are you diminishing or disregarding Deputy's Davila's statement in his report that -- where he wrote, "Upon arrival, I observed

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

several deputies at the scene as fire rescue personnel,

attempting to save the life of Nathacha Augustin."

Why are you -- why are you dismissing that

relevant fact?

A.   You'll forgive me, but you misheard me.  I

read, "I was informed by the supervisors on the scene

the victim had succumbed to their injuries and the

deputies were standing by with a witness."  Those aren't

my words.

Q.   Do you agree that your experiences in law

enforcement would inform you that would be improper for

a K-9 deputy to bring a track dog to a car, where nearby

many individuals are trying to save the lives of someone

who'd just been shot?

You would agree with that, right?

A.   I believe police officers are able to do

multiple things, as the fire department as well.  And

whether you wait until the lifesaving measures have

ended, or stopped, or ceased -- and as in this case, she

was already pronounced dead and you have a scene where

an individual was last seen walking away.

There's multiple -- based on my experience,

multiple opportunities to track the dog.  And I'm not

diminishing what Davila said.  And that was afterwards.

When he first arrived there, and then later

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com
ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

on, he talks about they didn't know whether there was a third suspect. I think the immediacy of Mr. Moses walking away should have been more of a focus.

Q. Would it be fair that the core -- your core opinion is grounded on the fact that within minutes of the 911 call concerning the shooting of Nathacha Augustin, Orange County Sheriff's deputies, in particular Deputy Keyes, knew who shot Nathacha Augustin?

A. I don't know at what moment that was available to them. What I do know is that they had the cousin of Mr. Moses. And he knew who the cousin was, so there was an individual there that can provide the identification of Mr. Moses.

Whether that was done and whether it was asked, I don't know. Or what time it was asked.

Q. That's an important fact, is it not, when Deputy Keyes knew who shot Nathacha Augustin? That's a -- that's a pretty important fact to your opinions, isn't it?

A. Absolutely.

Q. So when did Deputy Keyes know who shot Nathacha Augustin?

A. I can only tell you what is written. And based on what is written, he wrote, and he -- it's

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

written that he told the deputy canine officer that they had no description.

Now, whether he failed to ask, or didn't have the information, based on my experience I find it hard to believe that that information wasn't obtained on the scene.

Q.    Well, set aside your disbelief.  I want to know, for purposes of your opinions, critical of Deputy Keyes, when Deputy Keyes, upon your review of the record, knew who shot Nathacha Augustin?

A.    I have nothing in writing that talks about Deputy Keyes knowing or documenting the individual that committed the crime.

Q.    Well, when do you believe Deputy Keyes knew who shot Nathacha Augustin?

A.    I believe, given having handled hundreds of these, that should have been known early on, as they're required to write a -- to put out a BOLO to be on the lookout for.  That would include, at the very least, a description, last known location, armed, not armed, et cetera.  And name if you have it.

Q.    Set aside your experience and come back to your opinions.  You've offered criticism of Deputy Keyes' performance due to his actions or inactions, once he knew who shot Nathacha Augustin.

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

And as you know from investigation, investigations develop evidence, they develop facts, they lead to inferences. So I want you to tell me, based on your review in this case, on the continuum of this investigation, beginning with the 911 call, when Deputy Keyes knew who shot Nathacha Augustin?

A. I don't know when he knew, and I don't know that -- that's important for my opinions. What I know is that Deputy Keyes made decisions to tell Davila information that, in my opinion, set things in motion, like, not doing the dog search.

Q. Well, how would Deputy Keyes have communicated to aviation to be on the lookout for a shooter for Nathacha Augustin if he didn't know who the shooter of Nathacha Augustin was?

A. They had a witness there, and part of their policy is that you put out a BOLO, and all you have to do is -- it's part of the investigation. So you would ask, what -- what was the suspect? Where did he go? What did he look like? Who is it? Are they known to you? And that's the information you put out because it's critical.

Q. Of course, Deputy Keyes didn't witness the shooting. We can agree with that proposition, right?

A. Correct.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

Q.   And there was a witness to the shooting, and his name was Calvin Collins, right?

A.   Correct.

Q.   Keith Moses had ran from the vehicle.  He was not at the scene or in the area for law enforcement when they responded to the shooting of Nathacha Augustin. You can agree with that?

A.   He fled.  I'm not sure that I read whether he ran or walked, but he fled away from them on foot.

Q.   So the information supplied by Calvin Collins was the sole source of information that Deputy Keyes and the other deputies who responded had as a lead to identify who shot Nathacha Augustin.  Would you agree with that?

A.   An eyewitness to the murder who knew the suspect, yes, and I think it's a pretty good witness.

Q.   Yeah, he -- well, he's the only one that had any viable information; do you agree?

A.   At that time.

Q.   And so when did Calvin Collins, in your base facts assumption, when did Calvin Collins identify that the shooter was Keith Moses?

A.   The name comes up in the reports, and it was identified with his descriptors as well, and that he walked away.  When that was done, I just know that it

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

wasn't done by Keith Moses, and when he allowed Ms. Taylor to walk in without giving any warning. Whether he knew that at the time or not, he knew that a murder had occurred.

Q.   All right.  I appreciate you haven't reviewed the interview of Calvin Collins.

A.   That's correct.  I don't believe I have give been given that.

Q.   So fair to say that you don't know when Calvin Collins identified Keith Moses in the continuum of events?

A.   I have nothing that I've read that states when he was identified and when that was put out.

Q.   Do you know when the mere suggestion that a third person was in the vehicle at the time of the shooting, do you know when that was known by Deputy Keyes?

A.   I only know what was written here, for example, by Davila.

Q.   And Davila wrote in that very same report that we read earlier that the identity of the third person in the vehicle was not known.

A.   That's correct.  And I -- I read nowhere else that I can recollect about a third person, nor did I see anyone write about looking for a third person.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q.   So in your experience, would Calvin Collins have been a suspect in the shooting death of Nathacha Augustin initially?

A.   Those are decisions that are made by the first responding officers on the scene, and there's a lot of factors that you determine that.  You can base that on their state of mind, their actions, and interviewing them and getting information.

Q.   So upon your review of the record, would Calvin Collins have been a suspect in the shooting death of Nathacha Augustin?

A.   I think it would be not out of the question to consider that as soon as you get up there.  But once you start hearing their information and you start to put together the evidence on the scene, I think that helps a first responder to understand that this is a witness and not the suspect, if that's the case.

Q.   Based on your assumed facts or your -- the facts that you acquired from reviewing the record, when was it known that the shooting occurred within the car?

A.   I believe that would've been when the witness stated that.  I believe in one of the incidents that I read, they were driving around, and he said that Moses shot her for no reason.

Q.   Okay.  That's an important fact, isn't it, in

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

your opinion?

A.   Yes.

Q.   So I need you to source that fact for me.

A.   You want me to look at the report, or reports?

Q.   Whatever material you source that fact from, I need to know it.

A.   I believe it was also, or may have also been in the complaint.

Q.   Well, you appreciate that the complaint are mere allegations of fact, they are not sworn fact, and they are not documented facts that are attributable to the Orange County Sheriff's Office or Deputy Keyes.

You appreciate that distinction, right?

A.   I reviewed all of the documents there, and I give no credibility to everything or anything that I read.  I -- I cite from where I read it.

Q.   So is it an assumption of yours that Deputy Keyes was told that the shooting occurred within the car?

A.   I have nothing that documents what Deputy Keyes was told, and I can't opine to that.  I can't speak to that.

Q.   Is that true as well as to whether the third person in the car was armed?

A.   I have nothing that I've read or seen that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

talks about a third suspect at all or being armed, other than what I read by Davila.  Someone else may have referred to that, and it's not uncommon during the fog of early on in an incident to have allegations of multiple suspects that don't turn out to be true.

Q.    So you have no information that informs your fact basis that there was an armed individual in the car, correct?

A.    There was an armed individual in the car.

Q.    Well, we know that after the fact, right? Because you've read the homicide investigative report. We know that the shooting occurred in the car.  Perhaps it was a poorly worded question, so let me rephrase that.

With the -- from the vantage point of Deputy Keyes, you cannot identify any source material that would lead you to believe that Deputy Keyes knew that there was a gun in the car that was used to murder Nathacha Augustin?

A.    I think if you have an individual who's shot in the face that was in a car, and you're being told she was shot in the car, or the evidence is she was shot in the car, I would believe that there's a gun in the car, or there was a gun at some point in the car.

Q.    So you have two occupants and one victim of

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

the car, right?

A.    Three occupants and one victim?

Q.    Two occupants.  There were three --

A.    Okay.

Q.    -- occupants.  Calvin Collins, later -- an individual later identified as Keith Moses, and Nathacha Augustin.  I'm trying to -- I'm trying to learn from you, since these are important facts, when you believe Deputy Keyes knew that the shooting was committed by someone other than Calvin Collins.

A.    I read nothing in the reports that documents that fact.

Q.    Have you read anything that documents when Deputy Keyes knew the identity of the third person in the vehicle?

A.    I don't have anything that I reviewed regarding the identity of a third suspect that was outstanding.

Q.    Did you review anything that informed you that Deputy Keyes knew that the third person, later identified as Keith Moses, was armed with the gun?

A.    Again, when you commit a murder with a gun, that was the assumption.  That's correct.  But I have nothing in writing, no statements from him, as to when he would know that.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900     www.MILESTONEREPORTING.com

ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q.   So what you did testify to from the statement of Davila is that you knew that Deputy Keyes was informed that there was another occupant of the vehicle who had left or fled from the scene, right?

You knew -- that's what you knew from Davila's statement?

A.   That there was a suspect who had fled.

Q.   In addition to the suspect who was present, you would agree, Calvin Collins, right?

A.   Listen, I have nothing to suggest that Kevin -- Calvin Collins was a suspect, so I'm confused by your question.

Q.   Okay.  Well, during the initial response, would you have had cause to suspect Calvin Collins as being somehow involved in the shooting of Nathacha?

A.   Based on my experience, you come up there with caution, not knowing who's involved or what happened. But it has been my experience that pretty quickly, once you start gathering information and asking questions and looking at the crime scene, more often than not, you can identify -- I -- I believe that it would have been identified that Collins was not the suspect.

Q.   Well, where is that identified that he was never a suspect in the shooting death of Nathacha Augustin?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.    I told you earlier that that is not written anywhere.  I have -- don't have him listed anywhere that I recall reading that he was a suspect.  I told you, and I thought you asked me, would it be unreasonable for a first responder showing up to have that go through their mind?  It wouldn't be unreasonable.  But through your investigation, you should be able to determine whether he was or was not likely involved.

Q.    **Why would it be reasonable for a first responder to regard Calvin Collins as a suspect in the shooting?**

A.    It's been -- it's been my experience, whenever you respond to a shooting like that, you don't necessarily or always know who may be or may not be involved, and you may have more than one person.  I don't think it would be unreasonable for the officers to be guarded or to ask questions.

Q.    **Okay.  So based on your understanding of the record, when should Calvin Collins have no longer been regarded as a suspect?**

A.    That's an individual question for the deputies that spoke with him, but once they had sufficient information or an understanding of what he was saying and felt comfortable that he was not involved, that he was a witness.

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   Okay.   So are you able to articulate when that would have occurred, given the record that you reviewed?

A.   There is nothing in the record that I've reviewed that talks about when Mr. Collins would have been considered not a suspect, or that he was ever identified as a third suspect, that I recall.

Q.   Well, based on your experience, since your opinions derive in part from your experience, in your experience, when would you have no longer regarded Calvin Collins as a suspect in the shooting death of Nathacha Augustin?

A.   Based on the corroboration of his statements. Based on the evidence at the scene.

Q.   Corroboration of the statements made in -- during the custodial interview by the homicide detectives?

A.   No.

Q.   When?

A.   At scene.   First responding officers.

Q.   What did Calvin Collins say or do to allay any suspicion of him at the scene?

A.   Based on what I read, I read nothing that specified what allayed their suspicion.  What I read is a person who was identified as a witness throughout.

Q.   All right.   Reasonable for a law enforcement

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

officer to be suspicious and to regard Calvin Collins as a suspect in the shooting death until the investigation is further along and details are known through a custodial interview?

Reasonable for a deputy to believe that, correct?

A.   Listen, I know what you're getting at, and I'm sorry, I think that is so critical.  And there is a first determination by the first responders there, because you have to determine whether you're going to detain Mr. Collins, whether he poses a threat, maybe do a pat down.  So I think that determination is early on, earlier than that.

Now, could there be additional information that may lead you some other place based on the hours later, or hour and a half, or whenever it happened later? Possibly.

Q.   Are you aware of any statement made by Calvin Collins where he tells law enforcement that his cousin, Keith Moses, shot Nathacha Augustin from within the backseat of the car?

A.   I don't remember -- possibly the backseat of the car, but I do recall reading in the materials that I read where Mr. Collins was attributed to alleging that Mr. Moses had shot Augustin for no reason.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900      www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q.    Yeah, this is an important fact to me, so I need to know which individual with the Orange County Sheriff's Office -- since they would be the only agency privy to that information, which individual you believe Calvin Collins made such a statement implicating Keith Moses specifically in the shooting of Nathacha Augustin?

A.    Even what I read doesn't delineate whether he said that to him specifically or at the moment or if that was obtained through other statements to other deputies.  The information I read was that Collins identified Moses as the shooter.

Q.    I want to draw a distinction between identifying Keith Moses as an occupant of the vehicle and Keith Moses as a possessor of a gun who used that gun to shoot and kill Nathacha Augustin, okay?

And you appreciate that there is a quality and quantity to that fact, or those facts, that would inform suspicion; you would agree?

A.    It's my recollection that Mr. Collins advised that his cousin Moses was the person who shot her.

Q.    And you believe that to have happened while Collins was still at the scene prior to his transport to the Orange County Sheriff's Office headquarters where he was interrogated or questioned in custody?

A.    Absolutely.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

MR. MOES:  All right.  Ryan, let's take a break and you and I can caucus about how we're going to continue with the deposition today.  My intention is to continue while you prepare for your -- for your hearing with the judge, okay?

MR. VESCIO:  That's fine.  I'll drop my cell phone in the chat.  You can just call me.

MR. MOES:  Okay.

THE REPORTER:  All right.  Give me one moment. I'll take us off record.

(A recess was taken.)

THE REPORTER:  All right.  We are back on record.

MR. MOES:  Okay, very good.  Thank you for appearing, Delaney.  I appreciate you substituting in for Ryan who was summoned to the Court last-minute, not in this case, of course, but I appreciate it so we can move along.

BY MR. MOES:

Q.   Mr. Rodriguez, continuing with the subject that I was questioning you on that was -- I was questioning you regarding the facts that base your opinions concerning the claims made on behalf of the Lyons estate, and we were going through them, you enumerated in your report the particular lines that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

you've opined in writing that concern mainly the claims brought by the estate of Dylan Lyons.

I'd like to question you about Line 405, Page 13 of 18 of your opinions.

A.    Hang on one sec.  Let me get back to that if you would, please.  And I'm sorry, what page and number?

Q.    Page 13, Line 405.

A.    Yes, sir.

Q.    That reads, "Experience has shown," that is your experience, "has shown that when law enforcement learns of a violent suspect who has already murdered someone, is still armed and at large in the neighborhood, efforts must be made to apprehend the suspect and alert the community about the ongoing threat."

I read that correctly, right?

A.    Yes, sir.

Q.    All right.  So we recognize that the only two witnesses to the shooting are Calvin Collins and Keith Moses.  We know this, right?

A.    Calvin Collins and who else?

Q.    Keith Moses.  The actual -- the, well --

A.    Suspect.

Q.    -- who was actually later determined to have been responsible, right?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.   I don't know how much later, but yes.

Q.   Okay.  So I would like to -- obviously, Calvin -- excuse me.  Keith Moses wasn't at the scene during our investigation into the death of Nathacha Augustin. You accept that, right?

A.   That's correct.

Q.   All right.  So the only witness to the shooting was Calvin Collins, and I would like to question you about your understanding as to when Calvin Collins shared information regarding the shooting.  And I'm going to bracket it in such a way as to information shared by Calvin Collins at the scene while questioned by law enforcement against information required by law enforcement upon questioning Calvin Collins at the Orange County Sheriff's Office headquarters.

Now, you've already testified that you haven't reviewed the video of the custodial interview of Calvin Collins at the HQ, okay?

A.   Correct.

Q.   All right.  So based upon the report that you have written, when did you know, or when did you determine for purposes of your opinions, that Calvin Collins was no longer a suspect in the shooting death of Nathacha Augustin?

A.   When they talked about Collins identifying Mr.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Moses as the suspect, like for example in the incident report in which the lead detective, Robles, before he leaves the scene, identifies Moses as the suspect.

Q.   And you're referring to the homicide investigative report from Detective Robles?

A.   Correct.

Q.   Can you give me a page of that report, please?

A.   Sure.  Let me -- let me go back to it.  It would be Page 18.  Let me verify that.  18.  Top paragraph.

Q.   Could you read that paragraph into the record, please?

A.   "Calvin was interviewed by Detective Robles. During the interview, Calvin Collins identified Keith Moses as the person who shot Nathacha Augustin.  After serving the search warrant, I departed the scene," is the next sentence.

Q.   And your reading of that is to conclude, in your opinion, that Detective Robles knew Keith Moses was involved in the shooting while he was still at the scene?

A.   That's the way I interpreted that.

Q.   Okay. All right.  When did you have cause to believe that there was some other person suspected in the shooting of Nathacha Augustin, based on your read

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900     www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

and interpretation of the record?

A.   I believe I've stated the only person I believe that was identified was Keith Moses based on what I read.

Q.   And when did that occur?  During the -- are you relying upon the report of Detective Robles for that factual predicate?

A.   That's one.  I'm relying on everything I read. I could go through all the materials and I identified where I read them, but there's multiple places where I read them.

Q.   Well, that's a -- it's an important fact that bases your opinion.  So other than Detective Robles' written report, can you identify the other Orange County Sheriff's Office source material for that fact basis?

A.   I believe it's the complainant and incident reports.

Q.   Okay.  We -- I need you to exclude the complaint because those are mere allegations of unsubstantiated fact.  Let's -- could you answer the question by identifying the Orange County Sheriff's Office material documents that you relied upon or rely upon in deriving that particular fact?

A.   I'd have to go back and look at each one of them.  I don't have them memorized.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900     www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q.    Can you identify which incident reports you reviewed in deriving that particular fact?

A.    The deputy -- the deputy incident reports that responded to the Augustin murder.

Q.    And I -- you can't recall a specific deputy incident report that you grounded your opinion on?

A.    No, sir.  It was the totality of everything I read.

Q.    Was Calvin Collins still at the scene when that fact, according to you, basing your opinions, was known to law enforcement?

A.    Based on what I read, yes.

Q.    And what you read, again, excluding the allegations of the complaint, what you read are the investigative report authored by Detective Robles and the incident reports that you reviewed of the responding deputies?

A.    That is correct.

Q.    So I don't believe I've asked you to enumerate the incident reports, but if you would, please, identify the incident reports of the deputies that you've reviewed?

A.    Sure.  Do you want me to give you the report numbers on them or what would you like me to state?  I think you're muted, sir.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   The deputies' names, please.

A.   Gabriel Vasquez and Junior George or George Junior.  I think it's Junior George.  Dallas Vass, who identifies in the face sheet of the report as suspect being Keith Moses.  Javier Abonte.  Hang on, that -- that may not be the -- I apologize.  It's difficult to track where the deputies' names are written.

Q.   Does it look like this, Mr. Rodriguez?  It's in a report?

A.   Yes.  With the number on top, that's correct.

Q.   So if you look, you know, a few lines down from the top, it would indicate the deputy's -- the name of the deputy making the report.

A.   Yeah.  I'm -- I'm looking right about there, but it's not present.  I don't see a title for that.  It says e-mail address, Phyllis, or -- yeah.  Let me look through the next page.  Maybe it's on the next page of the incident report.  This has a -- a record number and incident number.

Okay.  The other one is Deputy Gabriel Valdez, FTO George, J.  George.  One of them is all blacked out or redacted, and I can't read the name.  Let me see if that's the same number.  Yeah, I think it is the same number.  Carlos Cabrera.  Seth Hardman.

Q.   Spell his last name, please.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

A.   H-A-R-D-M-A-N.  Deputy Michael, and I'll spell the last name, S-C-H-W-A-R-Z.  Stephen Lee.

Q.   S-T-E-P-H-E-N?

A.   Yes, sir.  Last of Lee.

Deputy -- I'll spell the last name.  B-A -- I'm sorry.  B-H-A-R-R-A-T-T.  I don't see a first name. Also lists Moses as the suspect.  Deputy D.  Edwards. Joshua Burns.  Deputy D.  Edwards, I don't know if I've already said that.

Q.   I believe you did.

A.   I -- I have a different report here.  I don't know if it's a different number.  I don't know if it's a supplemental.

Q.   What is the number?  The second one?

A.   2311822.  I -- I believe it's a supplemental. Possibly, because it says Supplemental 8.  I don't know. And Joshua Miller.  Rene Davila.  Lawyer Lee Cliborne.

Q.   Can you say the first name for me again?

A.   Yes, sir.  Cliborne, C-L-I-B-O-R-N-E.

Q.   And the first name of the deputy?

A.   It appears to be Lawyer, with Lee.

Q.   L-A -- L-A-W-Y-E-R?

A.   L-A-W-Y-E-R.  Yes, sir.  Wilbens Marcellon.  I can spell both names.  W-I-L-B-E-N-S.  Last name, M-A-R-C-E-L-L-O-N.  It also lists Moses.  This one

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

doesn't have.  Michael Peers.

Q.  T-E-A-R-S?

A.  No.  Last of -- let me get back to it.  I apologize.  Michael Peers, P-E-E-R-S.  I think I already mentioned Stephen Lee.  There's another --

Q.  Yes, you did.

A.  -- yeah.  It says Supplemental 14.  I don't know if that means anything.  This is much shorter.  It appears it's possibly -- it -- it is a supplemental.

When you're ready.

Q.  That's -- have you -- have you identified all of them?

A.  No, I'm still going through them.  I -- there's another one.  If you're ready, I'll continue.

Q.  Yes, please.

A.  Christopher Gilberetti.  Corporal Richards.  Taylor Atlee.  Robert Gautam -- Gautam.

Q.  Spell that for the court reporter, please.

A.  Sure.  G-A -- Robert, common spelling.  Last name, G-A-U-T-A-M.  Nicholas Cockriel, C-O-C-K-R-I-E-L.  Frank Hernandez.  There's a supplemental here, where -- oh, yeah.  No, I can't -- Brian Savelli, S-A-V-E-L-L-I.  Daveranda [sic], I'll spell the last name, B-H-A-R-R-A-T-T.  That may be another one, and it's Supplemental number 21.  This is to -- a supplemental to

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

make a correction.  And that was the last one, aside from the homicide investigation.

Q.  Okay.  So you didn't indicate, in there, the incident report of Deputy Keyes, or supplemental report of Deputy Keyes.  You haven't seen or considered that report?

A.  I don't recall reading that.

Q.  The investigative homicide report that you had cited to me, of Detective Carlos Robles, can you give me the case number that was assigned to that report?

A.  Yes, sir.  It has two numbers 2023-011822/202311850.

Q.  And who's the lead investigator indicated on that report?

A.  It's my recollection that -- in fact, hang on one sec.  It identifies Detective Carlos Robles was the lead homicide detective of Nathacha Augustin.  And it has another number in the body, I don't know if you want that as well.

Q.  What is the other number?

A.  23-11740.

Q.  Is that the report that you were referring to, of Detective Robles?

A.  No, the report I'm referring to has the numbers that I previously gave you, at the top, as the

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

header.

Q.   You understand that Detective Robles investigated the shooting death in Nathacha Augustin and T'Yonna Majors and Dylan Lyons; he was the detective? You knew that?

MS. PENLAND:  Object to form.

BY MR. MOES:

Q.   Did you know that from your review?

A.   I know only what was written.  He is the lead investigator as it states here on the Augustin murder. It makes sense because they're somewhat connected, but I don't know that I knew that before.

Q.   Returning to your written report, Page 14.

A.   Yes, sir.

Q.   Beginning at Line 424, you wrote, "There were no coordinated efforts to track, apprehend, or warn the community about this armed and highly dangerous suspect."

A.   I read nowhere where that was provided other than in the homicide investigation, I read an entry where, if my memory serves me correct, there was a, there was a statement that the apprehension was put out, I think, over Instagram or something like that.

Q.   What warning do you believe was called for?

A.   Well, there's different kinds that I've seen

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

throughout my years of experience.  Everything from a bullhorn, everything from a police loudspeaker to the Air Unit's loudspeaker to the Everbright -- Everbridge [sic] system, which the Orange County Sheriffs had, according to their Order 11-11, which is used for that purpose.  To not only put out information, but also receive information on, in this case, as Mr. Moses would have been seen possibly walking down the street.

Q.   Prior to reviewing the Orange County policies, were you familiar with the Everbright [sic] system?

A.   Yes, sir.  And I'm not sure if that's the universal name, but there's systems similar to that, with the goal, for a long time now, where a department can communicate with the communities, business for things such as this.  Emergencies, things like that.

Q.   And so is this a -- is this a program, software that is proprietary that is -- it's owned by and purchased, or it's purchased by law enforcement agencies throughout the -- throughout the nation?

A.   Yes, sir.  I -- I'd foolish to think that there's only one.  There may be multiple but this is a platform where it allows the department, through the use of cell phones or other devices, to be able to communicate with and from the community and business -- businesses.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

407.423.9900     www.MILESTONEREPORTING.com

ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q.   And so what type of -- are you familiar with the Everbright -- I mean, have you ever been in -- have you ever utilized a Everbright communication program or system within the agencies that you work?

A.   We had individuals that were tasked with implementing that.  I've been the one who has called for a particular message to go out.  I've also been the receiver as a community member and received information from departments where I've lived about different situations.

Q.   And so did you -- did you take notice that the Everbright system, the general order that you referred to, has an effective date that postdated the incident? Did you take notice of that?

A.   I didn't.  I noticed that they have that system.  That system's been around a long time and I mentioned other systems that could be used as well.  But I don't remember when it was either updated or if that was the first time it was ever posted to be used.

Q.   So if the Everbright system was utilized by the Orange County Sheriff's Office, sometime after the -- this case, this shooting, you would have no cause to criticize the Sheriff's Office for not utilizing the Everbright system, correct?

A.   Say that again, I apologize.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   If the Everbright system was acquired and used by the Orange County Sheriff's Office, sometime after this particular shooting, you would have no cause to fault the sheriff's office for not using the Everbright system, right?

A.   Clearly, they wouldn't have had it, and I would be curious to find out when they acquired it.  But there are other ways of doing it, to communicate to the community.  And -- and one of those is using media to, also, put out information, which I know that, when Detective Robles left, he commented in his report that he saw a lot of news medias at the crime scene or just outside the crime scene.

Q.   All right.  So how would the law enforcement utilize media to issue a warning where there's an ongoing investigation into a shooting?

A.   Not the investigation.  The warning would be the -- the viable threat to the community.  We've done that often.  We do that often.  We have to go out to the community and seek their help with vulnerable children that may be missing, vulnerable elderly people, or in this case, when there's an active threat in the community, as Mr. Moses, I believe, posed.

Q.   Okay.  So if you're suggesting, which I believe you are, that law enforcement would utilize

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

media to issue a warning of some kind to the community, on the facts of this case, what warning would have or could have been given to media?

A.   You keep saying the facts of this case.  At no time have I said to divulge the facts of the case.  I'm specifically talking about the active viable threat that Mr. Moses posed, loose, and -- and armed in the community, after just having committed one crime, a murder.  And I've done this before.  I've been in front of the camera while the investigation is going on and you -- you're absolutely right, you have to be very careful not to divulge investigative questions or leads or anything like that.  That's not what I'm talking about.  I'm talking about addressing the viable threat, that proved to be volatile in the following murders.

Q.   So what would the communication consist of to convey the threat, utilizing the media, understanding that media broadcasts through a broad geographic area, right?  We do not -- we don't concentrate media reports to a neighborhood.  They encompass all the contiguous areas, counties, municipalities.  You would agree with that?

MS. PENLAND:  Objection.

BY MR. MOES:

Q.   So it would appear if your -- the premise of

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

your opinion is that we could have relied upon media to convey a threat to the community, through the -- through the media, then that threat communication would necessarily be broadcast well beyond the neighborhood that was this -- the location of the shooting.  Would you agree with that?

A.   Let me -- let me tell you what I do agree, because you put a lot in there.  I -- I agree, and I -- I've done this before.  I would say that LA, Baltimore, is a large market.  I've utilized warnings like this in both markets.  In this case, in particular, in the Pine Hill communities, people know where they live.  Orlando is a pretty large media market.  I get it where I'm at, but when they highlight a particular community, for example, you -- you say, "The investigation -- " " -- we're investigating a murder.  The suspect is outstanding.  He's believed to be armed and very dangerous.  We're asking the folks in the Pine Hill community -- ", for example, and you give them directions.

Q.   Okay.  You mentioned using a bullhorn or amplifier, an audible amplifier, I think you suggested through the Aviation Unit, right?

A.   I -- I didn't say a suggestion.  I said what has worked and what we've used in the past.  We have

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900     www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

done that, again, for doing searches, and when you're doing an active search, we have done that, where you don't have the -- the time to either put it out with the media, or you do it both simultaneously.

Q.   So if a bullhorn or an amplified -- an amplifier --

A.   Public announcement.

Q.   -- yeah, or attached to a helicopter, what would you expect that warning to be?

A.   "Residents of the Pine Hill area, we're actively searching for armed and dangerous suspects. Stay in your homes.", or whatever they decided would be the appropriate.  That's what we've done in the past. When we're doing canine searches, for example, we've gotten on the bullhorns and told people to bring their pets inside, for obvious reasons.  Different things that we've utilized.

Q.   And when in the continuum of events is, would you believe, the earliest opportunity existed for that type of threat broadcast?

A.   If you're asking: Could we multitask?  I absolutely believe we can.  You have a crime scene that's very stagnant, that has been locked down, that is controlled, and we use the incident command system to be able to -- to do more than one thing.  You'd have an

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900        www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

active search and you're going to have a crime scene perimeter.

Q. Okay. So along the timeline of events, as known by you, from your review, when should this -- is it fair to call it a public announcement? Would you refer to it as a public safety announcement?

A. That's one of the things that we've talked about, yes. As early as possible, once we knew that there was an armed murder suspect roaming the community.

Q. Okay. And that would have occurred, based on your understanding of the record, while Calvin Collins was still at the scene being questioned by law enforcement?

A. I think that is the opportune time, given my experience. That's what we do is we ask information. We ask descriptions of the suspect, last known location and travel, type of weapon, and you want to put it out in the BOLO, which it states in the policies of the Orange County Sheriff's, and it's common practice for police officers to put that out. It's important for the officers to also know who is -- who is on the loose and the threat.

Q. Do your opinions rely upon the fact that we were told the direction of travel of the armed suspect?

A. That is based on police 101. Whenever you

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

have a crime, the first -- and an outstanding suspect, we want informations like that.  It's part of the public safety statements that we get as well.  It's crucial. If the suspect is outstanding, if the suspect still poses a threat to the community, you want to know if the suspect is still armed?  Is there more than one suspect? Which direction?  Did they leave in a car?  Bike? Walking? Yes.

Q.   Yeah, I'm not -- my question didn't suggest that that information would [sic] be helpful to apprehending somebody.  The question was: Did you, in deriving the facts that support your opinion, determine that Orange County Sheriff's Office deputies were told, at some time, that he took off in that direction?

A.   Whether they were told or not, that is a reasonable question for deputies doing a scene where a suspect has walked away.  So I don't know if he volunteered that information or if that was a question that they asked him, but it's vital and I have no doubts that -- that they asked it.

Q.   And you have no knowledge or information that leads you to believe that they were actually told he ran off in that direction?

A.   I think it's very possible that he maybe have told -- been told that, but if they didn't tell him

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

that, what I'm saying is it's a very important question that is a follow-up question.

Q.    Have you reviewed any e-mail communication that came from Orange County Sheriff's Office PIO to media at around 12:15 a.m., about 20-2-2023, concerning the investigation into the shooting of an adult woman at Pine Hills?

A.    12:15 a.m.?  The -- the day of, 12:15 a.m.  I don't recall reading --

MS. PENLAND:  For the record, I think he meant p.m.

MR. MOES:  I'm sorry?

MS. PENLAND:  You meant p.m., right?

MR. MOES:  So --

MS. PENLAND:  For the record?

MR. MOES:  Yeah, yeah.

BY MR. MOES:

Q.    12:00 -- 12:15 p.m.

A.    I don't remember.  As I say, I've read it, but I don't remember it.  Yeah, I -- I don't have an independent recollection.  There was so much that I reviewed.

MR. MOES:  Can you -- can you get me the hard one?  Yep.

BY MR. MOES:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q.   Okay, I want to shift to the claims made by Brandi Turner, individually, and as personal rep of the estate.  And I -- and I appreciate there's some correlation between the testimony that you've already given, regarding the warnings that should have been given to the community and the use of police tools and police resources, so it's not my intention to re-ask you on that subject matter, okay?  But it does -- structurally, your report does criticize an individual deputy, Deputy Keyes, in the performance of his duty for his -- for his conduct during an encounter with Ms. Turner.  What do you understand the totality of that encounter to be?

A.   That, after Ms. Taylor picked up her daughter from school, she saw the police, which is a common issue practice.  I've -- I've -- I've experienced that many times.  A community member will come up to you and ask what's going on.  It's my understanding that she asked him something to the effect of, "Why are you here?", or, "What's going on?", to which he replied something to the effect of, "It's all under control."

Q.   Okay.  And so how do you know that, without reading the complaint or without drawing on the complaint?  How do you know that that's the encounter there?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900        www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

A.    That was written in the complaint.

Q.    All right.  So you have no other information that informed your opinion about the nature of the encounter with Deputy Keyes?

A.    I -- I believe, also, the attorneys that -- that Ms. Delaney told me that.

Q.    Okay.  So the sole source of your understanding, as to the encounter between Deputy Keyes and Brandi Turner, is what counsel for Brandi Turner informed you and what you learned, upon reading the allegations contained within the complaint, right?

A.    I believe so.  I don't think that was documented in any of the other incident reports.

Q.    Well, Ms. Turner was questioned at deposition, about a month ago, on that very issue.  And she testified under oath as to when that encounter occurred and the brevity of that encounter and what was said in connection with that encounter and what she did following that encounter.  And you haven't considered any of that evidence in -- record evidence in this case, in deriving an opinion?

A.    What's important for my opinion is that that statement was made, and I have no reason to disprove or not believe that it was made.  And if -- if made, as purported, I -- I believe that that was inappropriate

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com

ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

and we should have been more forthcoming with -- with her.

Q.   So Ms. Turner testified -- you just -- you just have to accept my representation of it, for purposes of this question, but Ms. Turner testified that, at about 12:15 p.m., she was returning home and she rolled up -- and she was driving home, and she rolled up to a deputy in uniform, standing at the -- at the -- near the corner of Hialeah and I forget the cross street, or the intersection street, but Hialeah.  And she rolled her driver's side window down, and she asked, "What's up? What's going on? " And the deputy, who she believes is Deputy Keyes, or is, at least, identified as Deputy Keyes, said, "Everything is under control.", And she acted on that and then went home.  What would you expect the warnings, that you believe should have been given, whether through bullhorn, through helicopter loudspeaker, or through some program equipment, Everbright -- or the deputy himself, Deputy Keyes.  What do you think -- what would the warning have been to her, that you believe, was proper?

A.   Well, at its basic, that was a -- a statement that was not true.  Based on what we know, Mr. Moses was still on the loose.  Mr. Moses posed a threat, a threat that he carried out.  So as policing agencies have

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

evolved, the days of dragging it, where you say, "Police business.  Go.  Move along," those days are gone.  The community is much more informed, and they ask for more information, and I believe this was an opportunity where, rather than saying, "Everything is under control.", when, in fact, it was not, we should have provided her with some guidance and alerted her.  And it wouldn't have interfered with any of the investigations to this outstanding suspect, maybe that would have caused her to shut her doors and windows, specifically her sliding back door.

**Q.   So you're suggesting that the warning should have encouraged her to lock her doors?**

A.   I think --

MS. PENLAND:  Object to form.  Go ahead. Sorry.

THE WITNESS:  I think most adults, when you're given that type of warning, if you're going to stay in the house, they're going to make sure that --

And she said that -- that she normally kept it locked, except she left it open for the dog.  We'll never know, but I think most people, when you're warned that there's an active murder suspect armed and loose in your neighborhood, you may take steps to lock your home.

BY MR. MOES:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q.   All right.  So in your testimony, you suggested -- said -- stated it directly, that the remark attributed to Deputy Keyes that everything under control was false?  Was not "true," to use your word, right?  That's what you testified to.

A.   That is my understanding.  It is not true.

Q.   All right.  So you understand that you can only judge the performance of Deputy Keyes, based upon the information that he had in that moment, right?

A.   It is my understanding that he had information that there was an outstanding suspect.  He wasn't under arrest.  He walked back into the community.

Q.   Well, you understand that he -- Deputy Keyes can only be measured based upon the information that was known to him at the time he was speaking.  You would agree with that very basic premise, wouldn't you?

A.   And I believe that he knew, or should have known, that the suspect was outstanding.  There was no suspect under arrest.

Q.   All right.  So this is where we get to the foundation of your opinion.  Your belief as to what he knew at the moment that he had an encounter with Mrs. Turner, and why you believe that wasn't, "not true."

So let's break that down.  At that moment, at 12:15 p.m., accepting Mrs. Turner's sworn testimony,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

that that is the time that Deputy Keyes and she had an encounter, what knowledge did Deputy Keyes have based on your review?

A.   It is my belief, based on what I review, that Deputy Keyes knew that the suspect was not in custody.

Q.   Anything else?

A.   Yeah.  He was loose in the community, armed, and had just committed a murder.

Q.   And anything else?

A.   I don't know everything that he knew, because there -- there was nothing documented.  That is what would have been known by on-scene first responders, given what Mr. Collins would say.  And said.

Q.   But we are not going to judge the -- maybe you are.  Are you judging Deputy Keyes, based upon the collective knowledge of the numerous deputies that were involved in the response to the Nathacha Augustin shooting?

A.   I am not judging Deputy Keyes.  I am providing an opinion based on my knowledge, my experience with crime scenes, with an outstanding suspect who just committed a violent murder and is loose in the community.

Q.   All right.  So your opinions assume these facts were within the knowledge of Deputy Keyes when

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900   www.MILESTONEREPORTING.com
ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Deputy Keyes purportedly made the statement, "Everything is under control."

And I'll enumerate the assumed facts, and you can correct me if they are not assumed fact of your -- facts of yours.  You assume that Deputy Keyes knew that Nathacha Augustin was shot by an occupant of Calvin Collins' vehicle?

A.   I believe they knew that she was shot.  And I believe, based on what Collins was saying, that they knew that the occupant -- the shooter was in the vehicle.

Q.   And your opinions assume the fact that Deputy Keyes knew that Calvin Collins, who was at the scene and being detained, was not suspected in the shooting death of Nathacha Augustin?

A.   Based on everything I've read, based on the fact that he called 911, based on the fact that he was not arrested, based on the fact that he was interviewed by the detective at the scene, I have not read anything to indicate that he was a suspect.

Q.   So your answer is yes?  Deputy, you -- your opinions assume that Deputy Keyes knew that Calvin Collins was not suspected of being involved in the shooting death of Nathacha Augustin?

A.   That is my belief based on everything I've

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900     www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

read.

Q.   And another assumed fact of yours that underpins your opinion, is that Deputy Keyes knew that the individual who did shoot Nathacha Augustin was armed, and in the -- or had fled from the scene?

A.   Absolutely.  He was not there, and we always err on the side of cautious -- caution.  If a person is armed and did a -- a murder you're not going to put out the person is unarmed now.  Because even if they would've dropped one weapon, suspects had been known to have multiple weapons.

I believe that he knew that the suspect was outstanding, because he wasn't there.  There was nobody handcuffed.  And that he was outstanding and armed.

Q.   And you assumed as well, for the purposes of your opinions, that Deputy Keyes knew that this individual, this armed suspect, was at large and posed a threat to anybody in the community?

A.   When you have an incident like this, the person just committed a cold-blooded murder as it was purported and walked away armed, we have to assume that there's a propensity to continue with the violence.

MR. MOES:  Okay.  All right.  Give me a moment.  Let me review some things.  I'll be right back.  It's 3:07.  If we just want to reconvene at 3:15,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

that'd be fine.

MS. PENLAND:  Okay.

THE REPORTER:  All right.  That's fine.  I'll take us off record real quick.

(A recess was taken.)

THE REPORTER:  All right.  We are back on record.

BY MR. MOES:

Q.  Hello.  Mr. Rodriguez, inherently, is there anything -- inherently, is there anything that is questionable about including a crime-scene investigation within four hours?

A.  I don't know that I understand the question. Including and what?

Q.  Is there anything inherently wrong with beginning an investigation of a shooting in a -- in a particular automobile at, 11:30 and including that investigation at the location of the shooting four or five hours later?

Is there anything inherently wrong with that?

A.  I don't think I understand your question.  I apologize.

Q.  If I -- based on this sole fact alone, that the crime-scene tape was placed and then removed four hours later, does that inherently cause you any problem?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

438999 Rodriguez Geronimo 3-25-2026                124

Just the mere fact that the crime scene was described through crime-scene tape for that period of time?

A.   I don't recall ever once saying that I had a problem with the duration, if I understand your question correct, of the crime scene and the crime scene perimeter.  Or the fact that it was taken down four -- four or so hours later.  I have no issues nor have I expressed any.

Q.   What would you regard -- based on your understanding of the fact, what would you regard the crime scene to be?

A.   Usually, and it's described in their policies as well, an inner and outer perimeter.  And the inner perimeter would have, for example, where the body was found, where the vehicle was.

And the outer perimeter would be the investigators and where the evidence -- you want to make sure that you contain the evidence.  Sometimes you may have more than one crime scene.

In this case, it's my understanding they had one, and I have no idea how large or small it was.

Q.   You had one what, sir?  I lost you in your answer again.

A.   It is my understanding they had one crime scene.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900        www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

Q.   Okay.  And that crime scene was the automobile and the immediate proximity to it, right?

A.   Wherever there was evidence, blood, anything else.  But it would encompass whatever contains evidence, right?

Q.   What is the purpose of placing crime-scene tape?

A.   Secure the crime scene to prevent the entrance and exit of unauthorized individuals and even police.  And make sure that you have encapsulated, if you will, the evidence, and allow the investigators to do their -- their investigation of the crime scene without interruptions or contaminations.

Q.   Does crime-scene tape serve to warn the community against the possibility of a threat at large?

A.   That -- that's an interesting question.  I think it alarms the community that a major crime took place, that -- which they may or may not know that it was a homicide.

But I don't know that -- that -- that interprets into a notification to the community of an outstanding armed suspect.

MR. MOES:  All right.  Mr. Shiloh, can you read the answer back to me, please?

THE REPORTER:  Sure thing.  One moment.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

(The requested answer was played back.)

BY MR. MOES:

Q.   Mr. -- Mr. Rodriguez can you -- could you turn your attention to Page 9, Paragraph 47?

A.   Oops.  Okay, sir.

Q.   These are facts that you've summarized that support your opinions, right?

A.   Correct.

Q.   Paragraph 47 makes a footnote reference to the second amended complaint and the Orange County Sheriff's Office timeline of events.  See that?

A.   Yes.

Q.   Fair to say that the entirety of those facts that you've expressed in Paragraph 47 derived from those two sources?

A.   I would say it's derived from everything, but specifically those two.

Q.   All right.  So since you opened the window to include everything, let me go through each of the facts and ask if this fact that you rely upon was derived from the second amended complaint?  Or if it was derived from the timeline of events?  Or if it was derived from some other source?  So indulge me, please.

A.   Absolutely.

Q.   First sentence, Line 267, "According to the

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

suspect's cousin, he, "the cousin," was driving around with Ms. Augustin in his car when he saw his cousin, Mr. Moses walking down the street."

Is that derived from the complaint?  Is that derived from the timeline of events?  Or is it derived from some other source material?

A.   I don't remember exactly.  It's a combination of everything that I read.  Even in Mr. Robles identified that the cousin identified Moses.  So there's a lot of -- that there's a lot of things that I read, but that's my understanding from what -- the information that I read.

Q.   Principally, the investigative report of Detective Robles?

A.   Well, that's one.  But also all the incident reports, the 911 calls, the body-worn videos, everything that I reviewed.

Q.   Are you aware that Detective Robles began his interview of Calvin Collins at 13:30 hours on Feb 22, 2023?

A.   I don't believe his -- the report that we were talking about earlier had a timeline on it, or a timestamp for the --

Q.   For the report?  For the -- go ahead.  I'm sorry.  I don't mean to speak over you, Mr. Rodriguez.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900      www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

A.   Nor do I.  I just want to be clear.  The report or -- or Detective Robles is interviewing Collins in the field about the time he secures the search warrant, didn't have a specific time when that was done.

Q.   So you do not know when Detective Robles interviewed Calvin Collins to acquire that information?

A.   It appears based on what I read that was in -- at the crime scene.

Q.   Can you cite that paragraph for me, please, that you rely upon?  You had -- you'd referenced it earlier, too.

A.   Yeah, I did.  So it -- it's in 17 and 18, the last and the first sentence.  "Calvin Collins was interviewed by Detective Robles.  During the interview, Calvin Collins identified Keith Moses as the suspect who shot Nathacha Augustin."  "After serving the search warrant, I departed the scene," is the next sentence.

Q.   I'm going to pull that so I can read along with you.  And that's in report 23-11822?

A.   The header on that reads, "Case number 20231182-202311850."  Let -- let me go to the first page and see if there's a title to it.  I think these are multiple reports, but Page 17 and 18 is where I was discussing.

Q.   Is it the report 41 pages long?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

A.    Yes, sir.  Page 17 should start where it talks about, that the Orange County sheriffs received a -- a 911 call from Calvin Collins.

Q.    I found it.  So on the top of Page 18 of that report, reads, "Calvin Collins was interviewed by Detective Robles.  During the interview, Calvin Collins identified Keith Moses as the person who shot Nathacha Augustin."

A.    Yes, sir.

Q.    So have I found the particular language that you've relied upon?

A.    The -- the entire thing where it even starts that Calvin Collins called 911 to identify.  So that's a reporting person.

Q.    Right.  So your interpretation of that is that the interview of Calvin Collins must have necessarily occurred while Calvin Collins was at the scene of the crime?

A.    The next sentence after that statement is that, "After serving the search warrant I departed the scene." So I -- that's the way I understand it to be. And this is -- I'm sorry.

Q.    No.  I -- again, I'm not trying to step on you, or stop you, or -- I thought you were done with your answer.  Please continue.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

A.   Yeah.  I speak a little slow at times.  I apologize.  So that is the way I interpret it.  And this is the detective who got there, arguably, a little later than the first responders.  But the first responders would also have information that Collins put out a 911 call.

Q.   Returning to your report, Paragraph 47, "The cousin stated that he pulled over and Mr. Moses got into his vehicle."

Where did you derive that fact from?

A.   I have no independent recollections, because I used so much of it.  So it would be the entirety of everything that I reviewed.  In fact, there was statements I remember that he thought his cousin looked sad, so he brought him into the car.  Something to that effect.  But I don't remember that piece, where it was from.

Q.   Next sentence, "The cousin stated" -- "the cousin" in this sentence is Collins?

A.   Yes, sir.

Q.   "The cousin stated that he pulled over and Mr. Moses got into his vehicle, while the vehicle -- while in the vehicle, Mr. Moses shot Mr. -- Ms. Augustin in the face for no known reasons."  And you cite to the complaint for that fact?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

A.   Correct.

Q.   "After the shooting, Mr. Moses exited his cousin's vehicle, still armed with the gun and fled on foot back into the neighborhood."

What's the source of that fact that underpins your opinion?

A.   Again, from everything that I read, he fled. He kept the gun, because it didn't stay there, and we know that he was found with the gun that was still hot to the touch.

Q.   Well, those were -- those were known at the conclusion.  But when did Deputy Keyes have that -- when you're -- based on your opinion, when did you assume Deputy Keyes had that information?

A.   I never said, nor do I know, nor have I spoken about what information Deputy Keyes had, because I wasn't provided with what information he had.

I'll tell you, based on what the scene was, what he should have known was that there was a murder suspect out on the loose, and that they were investigating a dead body as a result of being shot in the face.

MR. MOES:  All right.  Let me review my notes, Mr. Rodriguez.  I think we're near done.

THE WITNESS:  Yes, sir.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900   www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

MR. MOES:  Okay.  Mr. Rodriguez, thank you for your time today.  I'm certain that an invoice is due you, so I will look for --

THE WITNESS:  Yes, sir.  If it's okay with you, I will send it via Ms. Penland's office to forward to you, because I don't really have that information.

MR. MOES:  No, that's fine.  That works.  Yeah.

THE WITNESS:  Thank you very much.  You be well.  Everybody else take care.

MR. MOES:  You too.

THE REPORTER:  Would the witness like to read or waive?

THE WITNESS:  I will read.

THE REPORTER:  Okay.  And what will be a good e-mail for you?

THE WITNESS:  Yes, sir.  jrod631@msn.com.

THE REPORTER:  All right.  Thank you.

And Mr. Moes, would you like to do a copy of the transcript at this time?

MR. MOES:  Yes, I'll order.

THE REPORTER:  Okay.  Regular --

MR. MOES:  Usual is --

THE REPORTER:  Electronic turnaround time?

MR. MOES:  Yeah.  Usual turnaround.  Electronic

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

is good.

THE REPORTER:  All right.

And for you, Ms. Penland, would you like to order too?

MR. MOES:  Yes, we'll take a copy.  Thank you.

THE REPORTER:  All right.

Really quick before you go, Mr. Rodriguez -- but before that, let me take us off record.

(Deposition concluded at 3:36 p.m. ET)

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900        www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

CERTIFICATE OF OATH

STATE OF FLORIDA

COUNTY OF ORANGE


     I, the undersigned, certify that the witness in the
foregoing transcript personally appeared before me and
was duly sworn.


Identification:  Produced Identification

_____

Shiloh Baillou

Court Reporter, Notary Public

State of Florida

Commission Expires: 12/14/27

Commission Number: HH 473246

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

C E R T I F I C A T E


STATE OF FLORIDA)

COUNTY OF ORANGE)


     I, Shiloh Baillou, Court Reporter and Notary Public

for the State of Florida at Large, do hereby certify

that I was authorized to and did report the foregoing

proceeding, and that said transcript is a true record of

the said proceeding.


     I FURTHER CERTIFY that I am not of counsel for,

related to, or employed by any of the parties or

attorneys involved herein, nor am I financially

interested in said action.


Submitted on: April 7, 2026.




_____

Shiloh Baillou

Court Reporter, Notary Public


MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

**1**

**1** 18:11,15,16, 17,18

**101** 112:25

**11-11** 106:5

**11:17** 8:11

**11:20** 48:2

**11:30** 123:17

**11th** 26:20

**12:00** 114:18

**12:15** 114:5,8, 18 117:6 119:25

**13** 19:16,17 57:19,22 96:4,7

**13:30** 127:19

**14** 57:23 103:7 105:13

**15** 8:25 9:6,10, 14

**16** 46:3

**17** 9:14 60:9 128:12,23 129:1

**18** 47:16 60:9 96:4 98:9 128:12,23 129:4

**18,500** 39:5

**180** 9:4 60:10

**1990** 19:5

**2**

**2** 18:13,16,17, 18

**2-16** 46:3

**2-17** 46:3

**20-2-2023** 114:5

**2000** 19:13

**2010** 63:3,21

**2011** 19:16

**2013** 16:4 17:22 20:16 61:22 63:3

**2015** 16:4 20:22

**2018** 32:2

**2019** 23:1,5

**2021** 15:5 23:1 24:5,16

**2023** 8:11 63:15 127:20

**2023-011822/ 202311850** 104:12

**20231182- 202311850** 128:21

**2025** 36:16

**2026** 6:8,10 44:11

**21** 103:25

**214** 43:14,16

**22** 8:11 127:19

**23-11740** 104:21

**23-11822** 76:17 128:19

**2311822** 102:15

**267** 126:25

**27** 18:3 61:13

**3**

**3** 18:14,17,18

**387** 57:19 58:12

**391** 57:19

**397** 58:4

**3:07** 122:25

**3:15** 122:25

**3:22-CD96** 29:19

**3:22-cv- 000630csh** 30:12

**3:22-cv-0203** 29:22

**3:23-cv- 00944jch** 31:6

**3:36** 133:9

**4**

**40** 41:19

**405** 57:22 96:3, 7

**41** 128:25

**424** 57:23 105:15

**427** 57:23 58:5

**434** 57:23

**47** 126:4,9,14 130:7

**4:00** 51:19 56:6 59:4,5,13

**6**

**6** 6:8 9:4

**6th** 41:18 44:10

**7**

**7** 43:14,16

**79** 36:24

**8**

**8** 102:16

**822** 76:18

**9**

**9** 126:4

**9-1-1** 9:16

**9-1-1s** 21:12

**911** 58:21 59:1, 6 75:4 81:6 83:5 121:17 127:16 129:3, 13 130:5

**93** 19:5

**99** 22:10

**A**

**a.m.** 114:5,8

**abilities** 41:7,9

**Abonte** 101:5

**absolutely** 35:17,18 42:16 62:1,23 81:21 94:25 109:11 111:22 122:6 126:24

**absorbed** 46:11

**academy** 41:12

**accept** 46:2 97:5 117:4

**accepted** 20:23 22:18 41:24 47:20

**accepting** 119:25

**accommodate** 54:19

**account** 10:9 11:20

**Accountability** 19:24

**accurate** 11:20 72:2

**acquire** 128:6

**acquired** 46:11 86:19 108:1,7

**acquiring** 79:7

**act** 16:12

**acted** 17:12 42:19 117:15

**action** 6:2 28:18 53:2 54:10

**actions** 42:20 47:18 82:24 86:7

**active** 11:19 52:17 62:12 108:22 109:6 111:2 112:1 118:22

**actively** 111:11

**actual** 96:22

**Adam** 31:5

**addition** 41:23 42:4 58:14 90:8

**additional** 6:9 43:21 44:8,15, 16,25 59:5 61:4 63:5 93:14

**address** 101:16

**addressing** 109:14

**adhered** 47:9

**adjournment** 54:19

**adjudication** 33:23 34:4,6,9, 13,14,18

**adjudications** 33:13,16,17 34:22 35:4

**adjudicators** 43:7

**adjust** 68:4

**adjusts** 64:22

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

admin 36:8

administration 34:23

administrative 33:15,20,22 38:1

administratively 35:4

adult 114:6

adults 118:16

advised 70:20 71:4 77:18 78:4 94:19

aerial 58:13 59:25 61:9

affair 34:8

affairs 31:18 34:11

affiliated 31:24

affiliation 35:12

affirm 5:18

affirmative 76:13

age 60:9 62:24

agencies 21:22 28:12 31:17 39:8,11, 17 41:21 46:14 54:14 106:19 107:4 117:25

agency 19:20 28:23 32:14 33:18 40:19 56:11 57:4 61:12 94:3

agency's 63:18

agree 10:25 11:6,8,15,17,25 12:3 61:10,25 62:21 74:14 75:21 78:8 80:10,15 83:24 84:7,13,18 90:9 94:18 109:21

110:6,7,8 119:16

ahead 74:4 118:15 127:24

aid 49:25 59:3

aids 64:11

air 59:25 61:14, 18 62:6,10 63:4,10 64:13, 17,22 66:4,10 67:11,16 106:3

airborne 66:8

aircraft 63:18

aircrafts 63:18

Alabama 27:6 29:24

alarms 125:17

alert 96:14

alerted 118:7

allay 92:20

allayed 92:23

allegations 33:23 65:4 87:10 88:4 99:19 100:14 116:11

alleged 60:4

alleging 28:1 93:24

allowed 39:16, 17 52:25 53:3, 9,10 85:1

allowing 52:15 53:16

alongside 16:8 69:2

altitude 64:23

amended 126:10,21

ample 65:18

amplified 111:5

amplifier

110:22 111:6

analysis 23:14 47:17

Angeles 16:15, 20 17:7,10,19, 22 18:1,6,10 19:8,19 20:4,5, 9,16 22:18 61:20

announcement 111:7 112:5,6

Anthony 29:16

apologize 24:21 27:21 43:4 101:6 103:4 107:25 123:22 130:2

Appeals 26:20

appearance 5:3

appearing 5:6, 9 95:15

appears 76:16 102:21 103:9 128:7

application 21:7 36:4

apprehend 41:4 66:22 75:15 96:13 105:16

apprehended 53:20

apprehending 57:16 113:11

apprehension 58:18 105:22

approach 26:18

appropriateness 30:19

approximate 22:21

approximately 19:4 20:20 27:24 28:13

60:9

arbitrations 26:3

area 30:5 56:13 60:13 61:9 64:25 84:5 109:18 111:10

areas 62:6 64:5 109:21

arena 34:3

arguably 130:3

argue 73:11

argumentative 74:18

armed 40:25 41:4 42:9 60:5 66:17 82:20 87:24 88:1,7,9 89:21 96:12 105:17 109:7 110:17 111:11 112:9,24 113:6 118:22 120:7 122:5,8,14,17, 21 125:22 131:3

arrest 63:9 119:12,19

arrested 38:16 121:18

arrestees' 23:21

arrival 76:21 79:25

arrived 72:25 78:10 80:25

arrives 77:24

article 7:1

articulate 92:1

aspects 34:6 55:23

assault 37:17

assess 64:11

asset 66:10

assigned 16:23 104:10

assist 23:16 25:8 63:19 64:11

Assistant 18:19

assisted 21:23

assisting 62:8

assists 64:8

assume 7:24 13:14 120:24 121:5,12,22 122:21 131:13

assumed 74:12 86:18 121:3,4 122:2, 15

assuming 19:13 20:24 32:24

assumption 62:14 84:21 87:17 89:23

Atlee 14:4 103:17

attached 61:12 111:8

attempt 10:23 58:15 69:24 70:15 78:13 79:17

attempting 76:23,25 79:6 80:2

attempts 59:24 69:11

attend 22:4

attending 5:3

attention 126:4

attenuating 56:22

Attorney's 22:19

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900
www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

**attorneys** 116:5

**attributable** 87:11

**attributed** 93:24 119:3

**attributes** 69:8

**audible** 110:22

**audience** 34:1

**audio** 9:17

**audits** 23:14

**Augustin** 8:6, 10 9:24 10:11 12:22 49:17 50:6 56:5 58:24 59:20 66:2 72:15 74:8 75:3 79:3,6 80:2 81:7,9,18,23 82:10,15,25 83:6,14,15 84:6,13 86:3,11 88:19 89:7 90:25 92:11 93:20,25 94:6, 15 97:4,24 98:15,25 100:4 104:17 105:3, 10 120:17 121:6,15,24 122:4 127:2 128:16 129:8 130:23

**Augustin's** 53:2

**authored** 36:16 100:15

**authoritative** 40:5,8

**authorities** 34:10

**automobile** 123:17 125:1

**average** 26:22 62:24

**aviation** 57:15 58:14 61:12,23 63:13,16 66:3,

25 67:3,5 68:7, 11 74:8 83:13 110:23

**aware** 9:20 93:18 127:18

**awareness** 6:21

---

**B**

---

**B-A** 102:5

**B-H-A-R-R-A-T-T** 102:6 103:24

**back** 9:11 22:8 48:1,7 52:16 54:21 55:1 82:22 95:12 96:5 98:8 99:24 103:3 118:11 119:12 122:24 123:6 125:24 126:1 131:4

**backdrop** 42:1

**background** 23:17 45:17,21, 25

**backseat** 93:21,22

**bad** 34:5

**Baltimore** 15:19,23 16:3, 13,16 18:5 19:25 20:17,21 22:24 61:14 110:9

**Barnett** 29:20

**base** 49:14 84:20 86:6 95:22

**based** 10:21,22 36:9 42:20 47:16 52:7,8 53:11 61:24 67:2 68:4 75:9 78:16 79:11 80:22 81:25 82:4 83:4 86:18 90:16 91:18

92:7,12,13,22 93:15 97:20 98:25 99:3 100:12 112:10, 25 117:23 119:8,14 120:2, 4,15,20 121:9, 16,17,18,25 123:23 124:9 128:7 131:13, 18

**bases** 99:13

**basic** 40:24 41:1,14 42:1 44:24 117:22 119:16

**basically** 28:10

**basing** 100:10

**basis** 88:7 99:15

**bear** 56:6

**began** 127:18

**begin** 5:23 6:9 44:4 45:16 66:4

**beginning** 44:4 83:5 105:15 123:16

**behalf** 5:5,7 28:24 95:23

**belief** 13:19 119:21 120:4 121:25

**believed** 110:17

**believes** 117:13

**bell** 9:22

**beneficial** 51:14,16

**bifurcation** 36:7

**Bike** 113:7

**binoculars** 64:7

**biometric** 23:19

**birth** 62:24

**black** 60:8 61:1 65:9

**blacked** 101:21

**Blankenship** 29:17

**blood** 125:3

**board** 64:6

**body** 8:25 9:9 10:17 11:19 104:18 124:14 131:21

**body-worn** 11:16,22 127:16

**BOLO** 63:10 66:14 82:18 83:17 112:18

**bolster** 39:22 40:15 44:23

**bolsters** 72:21 75:5

**booth** 22:6

**bracket** 97:11

**Brandi** 7:8,12 51:8 55:6 115:2 116:9

**break** 47:24 52:14,25 95:1 119:24

**brevity** 116:17

**Brian** 5:7 103:22

**brick** 22:10

**bring** 19:23 22:22 59:24 73:25 74:11,13, 15,25 80:12 111:15

**bringing** 57:15 74:6 75:6

**brings** 72:23

**broad** 109:18

**broadcast** 66:13 110:4 111:20

**broadcasts** 7:2 109:18

**broader** 56:11

**brought** 22:24 25:7 60:19 70:14 79:1,4 96:2 130:15

**build** 60:9

**bullhorn** 106:2 110:21 111:5 117:17

**bullhorns** 111:15

**Bureau** 19:24

**Burns** 102:8

**business** 21:19,20 106:14,24 118:2

**businesses** 56:12 106:25

---

**C**

---

**C-L-I-B-O-R-N-E** 102:19

**C-O-C-K-R-I-E-L** 103:20

**Cabrera** 101:24

**CAD** 8:2,5,8,12, 13,15,21,22 21:11 60:7,11

**calendar** 33:6

**California** 15:7

**call** 38:23 49:24,25 58:21 59:6,13 75:4 81:6 83:5 95:7 112:5 129:3

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

407.423.9900      www.MILESTONEREPORTING.com

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

Toll Free 855-MYDEPOS

130:6

**called** 45:5
105:24 107:6
121:17 129:13

**calling** 52:3

**calls** 59:1,2,5
127:16

**Calvin** 9:21,23
10:2,9,15 11:1,
18 12:1 58:23
66:2 84:2,10,
20,21 85:6,9
86:1,10 89:5,10
90:9,11,14
91:10,19 92:10,
20 93:1,18 94:5
96:19,21 97:2,
8,9,12,14,17,22
98:13,14 100:9
112:11 121:6,
13,22 127:19
128:6,13,15
129:3,5,6,13,
16,17

**cam** 8:25 9:9
10:17 11:19

**camera** 5:16
7:4,5,7,10,22,
23,25 9:7
11:16,21,22
109:10

**cameramen**
50:11

**cameras** 9:6

**canine** 13:19
15:13 68:23
69:2,5,18 70:9,
16,18,20,21,24
71:6,7,11,13,16
72:21 73:2,10
74:11,13,15
75:19 76:4,13
77:8,17,22
78:7,14,23
79:4,14,15 82:1
111:14

**canines** 70:12,
13

**canvassing**
37:4

**capability**
67:14

**capable** 67:11

**capacity** 5:8
15:10,13,16
16:6 24:10
31:25

**captain** 63:17

**Captains**
18:18

**capture** 66:11

**car** 60:23 61:3
78:13 79:8
80:12 86:20
87:19,24 88:8,
9,12,18,21,22,
23,24 89:1
93:21,23 113:7
127:2 130:15

**care** 132:10

**career** 41:2,4
52:10

**careful** 109:12

**Carlos** 101:24
104:9,16

**Carmon** 31:5

**carried** 117:25

**case** 6:8,19,25
7:5 12:18 14:20
17:15 24:23
25:3,10 26:2,16
27:25 28:7,14
29:12,14,19,21,
24 30:3,4,5,10,
12,21 31:3,6
36:2,22 37:2
40:15,16,22
42:18 45:15,17,
18,20 46:7
47:10,21 69:20
76:11 77:11,15
80:19 83:4
86:17 95:17
104:10 106:7
107:22 108:22
109:2,4,5
110:11 116:20
124:20 128:20

**cases** 27:12,16
30:17 41:22
69:19

**category**
37:24,25

**caucus** 95:2

**causal** 53:8
56:22

**causation**
52:14

**caused** 23:4
118:10

**caution** 90:17
122:7

**cautious** 122:7

**ceased** 80:19

**cell** 63:22,23
95:6 106:23

**center** 59:1,6

**Central** 26:7
27:22,23

**cetera** 21:12
37:4 82:21

**chain** 52:14
56:22

**challenging**
74:10

**change** 45:21,
24 68:19

**characteristic
s** 66:6

**characterize**
37:19

**characters**
59:22

**charge** 16:9,17

**chat** 95:7

**chest** 79:2

**chief** 18:18,19
34:16

**chiefs** 34:2

**children**
108:20

**chose** 22:16

**Christopher**
103:16

**circuit** 26:20
27:5

**circumstance**
12:3

**circumstance
s** 17:1 18:1

**cite** 40:4,8,17
71:1 87:16
128:9 130:24

**cited** 104:9

**city** 17:19,21,
25 18:5,6,9
19:18 20:4,5,9,
16 22:17 30:7,
11 31:5 60:18
61:20

**civilian** 25:18
26:13 59:1
73:19

**civilians** 25:19

**claim** 27:25
31:3 55:12,16

**claims** 48:13
51:5,8 55:5,6,7,
19 56:16 57:1
95:23 96:1
115:1

**clarification**
43:13 56:20

**Class** 76:17

**classification**
59:13

**classify** 12:8

**clear** 43:9 54:6
72:13 128:1

**cleared** 50:10,
12

**Cliborne**
102:17,19

**close** 59:4

**clothing** 59:22
60:25 62:8 63:4

69:10

**Coast** 18:7
22:8 24:6,8,17

**Cockriel**
103:20

**cold-blooded**
42:9 60:18
122:20

**collaborated**
16:8

**collective**
120:16

**Collins** 9:21,23
10:2,10,15
11:1,18 12:2
58:23 66:2
84:2,10,20,21
85:6,10 86:1,10
89:5,10 90:9,
11,14,22 91:10,
19 92:4,10,20
93:1,11,19,24
94:5,10,19,22
96:19,21 97:8,
10,12,14,18,23,
25 98:14 100:9
112:11 120:13
121:9,13,23
127:19 128:2,6,
13,15 129:3,5,
6,13,16,17
130:5,19

**Collins'** 121:7

**colored** 65:10

**combination**
127:7

**comfortable**
91:24

**command**
111:24

**commanded**
63:17

**Commander**
18:18

**commanding**
16:15 18:3 19:8
61:16

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900
www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

**commenced** 8:10

**commented** 108:11

**commissioner** 15:19 16:12 18:5 20:1 38:14

**commit** 89:22

**committed** 42:9 54:15 82:13 89:9 109:8 120:8,22 122:20

**committee** 34:14

**common** 43:5 103:19 112:19 115:15

**commonly** 79:15

**communicate** 41:8 63:22,23 106:14,24 108:8

**communicate d** 61:17 64:16 83:12

**communicatin g** 68:17

**communicatio n** 9:16 48:18 68:8 107:3 109:16 110:3 114:3

**communicatio ns** 36:7 52:17 56:12 68:17

**communities** 65:21 106:14 110:12

**community** 40:25 41:6,10 42:3,10 52:18 56:12 65:12,14, 19 66:18,20 79:22 96:14 105:17 106:24 107:8 108:9,18,

20,23 109:1,8 110:2,14,19 112:9 113:5 115:6,17 118:3 119:12 120:7, 23 122:18 125:15,17,21

**company** 21:2 24:6,11 32:20

**complainant** 99:16

**complaint** 65:3,5 87:8,9 99:19 100:14 115:23,24 116:1,11 126:10,21 127:4 130:25

**complaints** 20:8,14 23:15 33:15

**completing** 22:15

**component** 35:9

**compote** 47:6

**compressions** 79:3

**compromise** 58:1

**computer** 23:19

**concentrate** 109:19

**concern** 14:3, 7,10,14,18 26:9 30:18 35:15 36:3,20 48:11, 13 55:12 72:21 73:7 96:1

**concerned** 26:12 27:25 29:25 31:3 57:5

**concerns** 35:3,21,22 57:1

**conclude** 7:19 98:18

**concluded** 133:9

**conclusion** 131:12

**conclusions** 39:23

**concrete** 35:25

**condition** 67:17

**conditions** 65:23

**conduct** 6:4 12:10 13:11,12 34:8 42:14 43:11 44:19 51:10 55:14 59:15 63:19 115:11

**conducting** 16:9 64:19,23

**conference** 16:17,25 32:21

**conferences** 22:4

**confirmed** 77:6 78:21

**conformed** 73:24

**confronted** 52:23

**confused** 53:14 90:11

**connected** 25:9 105:11

**connection** 10:10 34:22 37:8 47:21 51:18 53:8 56:9 116:18

**consideration** 7:25 66:19

**considered** 47:6 92:5 104:5 116:19

**consist** 109:16

**consistent** 47:19

**consulting** 24:4,5,11

**contact** 49:1

**contacted** 6:18

**contained** 46:22 116:11

**contaminated** 70:3,17,21 73:3

**contamination** 70:2,10 78:6

**contamination s** 125:13

**context** 34:7 35:13 65:7

**contiguous** 109:20

**continue** 22:16 77:13 95:3,4 103:14 122:22 129:25

**continued** 72:10

**continues** 77:12

**continuing** 52:22 95:20

**continuous** 41:20 59:14

**continuum** 49:21 50:4 55:24 59:8 83:4 85:10 111:18

**contributed** 52:11,19 53:18 55:25 57:16

**control** 50:1 115:21 117:14 118:6 119:3 121:2

**controlled** 111:24

**convey** 109:17 110:2

**convicted** 28:2

**conviction** 31:4

**coordinated** 58:13 105:16

**copy** 132:19 133:5

**core** 45:17 81:4

**corner** 117:9

**Corporal** 77:6 78:16,21 103:16

**correct** 7:21 8:1 11:5,23 12:10,13 13:3, 18 14:25 16:5 17:20,24 19:10, 15 22:22 24:7 25:23 26:5,17 28:4,22 36:12, 15,17 40:3 44:6,11 45:8,10 47:23 50:3 51:3,23 56:19 57:3 65:2 67:4 83:25 84:3 85:7,23 88:8 89:23 93:6 97:6,19 98:6 100:18 101:10 105:21 107:24 121:4 124:5 126:8 131:1

**correction** 104:1

**correctly** 28:12 54:13 70:20,22 96:16

**correlated** 38:1

**correlates** 40:14

**correlation** 36:1 115:4

**corroboration** 92:12,14

**could've** 60:19

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

**counsel** 5:23 116:9

**counties** 109:21

**countless** 64:21

**county** 6:5 8:9 10:3 14:23 23:2,22 30:6 40:1 47:1,5 48:18 49:2,11 50:10 51:7 57:6 58:22 60:13 63:14 65:1,25 67:25 72:4 73:23 74:6 75:19 81:7 87:12 94:2,23 97:15 99:14,21 106:4,9 107:21 108:2 112:19 113:13 114:4 126:10 129:2

**couple** 6:14 11:4 16:19

**court** 24:20 26:20 95:16 103:18

**courts** 25:25 41:24

**cousin** 9:25 10:2,20 60:16 61:3 81:11,12 93:19 94:20 127:1,2,9 130:8,14,18,19, 21

**cousin's** 131:3

**created** 46:5

**credibility** 87:15

**crime** 23:14 36:5 44:25 49:22 50:19 51:21 54:14 59:3 66:14 75:10,11,12 78:12 79:14 82:13 90:20 108:12,13

109:8 111:22 112:1 113:1 120:21 124:1,5, 11,19,24 125:1, 8,12,17 128:8 129:18

**crime-scene** 123:11,24 124:2 125:6,14

**crimes** 18:23, 25

**criminal** 33:20 35:8,11 36:8 38:2 49:15,20 50:5

**critical** 6:4 15:21 16:10 37:12,15,20,22, 23,24 38:2,6,8, 12,14,21,24 53:20 61:18 72:24 82:8 83:22 93:8

**criticism** 74:5 82:23

**criticisms** 56:15

**criticize** 107:23 115:9

**cross** 117:9

**crucial** 113:3

**culprit** 62:25

**Cummings** 29:16

**curious** 108:7

**curriculum** 36:19 40:12 45:25

**custodial** 92:15 93:4 97:17

**custody** 11:2 30:6 33:13 60:20 94:24 120:5

**cut** 45:18

**CV** 16:3 36:11, 25

---

**D**

---

**DA's** 23:7

**Dallas** 101:3

**dangerous** 41:4 53:19 66:17 105:17 110:18 111:11

**dangers** 56:14 66:21 79:21

**databases** 23:23

**date** 6:13,15 36:17 44:12 62:24 67:7 107:13

**daughter** 51:12 115:14

**Daveranda** 103:23

**Davila** 13:7,13, 16,21 70:8,25 71:3,24 72:14, 24 73:6 75:2,25 76:4,8,17 77:24 78:4,16 79:12 80:24 83:9 85:19,20 88:2 90:2 102:17

**Davila's** 79:24 90:5

**day** 32:22 56:7 114:8

**daylight** 67:21

**days** 118:1,2

**dead** 79:13 80:20 131:21

**deal** 30:24

**dealing** 25:21

**deals** 34:11

**dealt** 25:12 38:14,15,16

**death** 25:14,15 30:6,22 38:17 49:7,16 50:6 52:2 53:3 55:25 73:7,19 86:2,10 90:24 92:10 93:2 97:4,23 105:3 121:14, 24

**deaths** 33:13

**decade** 17:22

**decades** 46:11 64:13

**decide** 70:23

**decided** 111:12

**decision** 54:9, 12,15,17

**decisions** 42:24 47:18 83:9 86:4

**defendants** 6:2

**defense** 25:10 26:4 27:18 28:21 29:19 30:7

**deficiencies** 13:21 28:2 55:13 56:10

**degree** 13:18 52:20 57:23

**Delaney** 95:15 116:6

**delay** 57:16 71:5 77:20

**delineate** 94:7

**demographics** 64:25 65:7,17, 18

**demonstration s** 21:23 22:5

**densely** 65:21

**density** 64:25 65:6

**departed** 98:16 128:17 129:20

**department** 15:23 16:4,14, 20 17:8,19 18:1,10 19:8, 19,25 20:4,5, 10,17,18,22 39:15,24 40:11 63:23 72:4 73:1 79:20 80:17 106:13,22

**departments** 34:15 39:5 40:20 47:10 107:9

**deploy** 70:18 71:7,13 77:16, 21 78:6,19

**deploying** 75:6,8

**deployment** 69:12

**depoed** 25:3

**depos** 26:6

**deposed** 28:17,19

**deposition** 7:11,18,20 57:10 95:3 116:14 133:9

**depositions** 26:8,9

**deputies** 10:19 11:17 13:4,6,23 47:19 49:11 50:16 51:1 59:2 69:2 72:20 74:3 75:10 76:22 77:3 80:1,8 81:7 84:12 91:21 94:10 100:17,21 113:13,16 120:16

**deputies'** 101:1,7

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

**deputy** 5:8 6:4 12:10,13,17,21 13:2,7,8,11,13, 16 14:4,8,11,15 15:19 18:5,18 20:1 38:13 39:16 42:18 43:11 47:21,22 49:1 51:10,18, 19 52:1 53:8 55:15,24 56:4, 10,16,17,21,24 63:2 70:8,25 71:3 72:14,18, 20 73:2,6,24 75:1,20,25 76:1,4,7,12,13, 16 77:24,25 78:18 80:12 81:8,18,22 82:1,8,9,12,14, 23 83:6,9,12,23 84:11 85:16 87:12,17,20 88:15,17 89:9, 14,20 90:2 93:5 100:3,5 101:13, 20 102:1,5,7,8, 20 104:4,5 115:10 116:4,8 117:8,12,13,14, 19 119:3,8,13 120:1,2,5,15, 19,25 121:1,5, 12,21,22 122:3, 16 131:12,14, 16

**deputy's** 73:15 79:24 101:12

**derive** 46:4 57:5 92:8 130:10

**derived** 7:24 10:16 39:6 126:14,16,20, 21,22 127:4,5

**deriving** 40:8 99:23 100:2 113:12 116:21

**describe** 37:19

**description** 59:22 60:8,10, 24 61:25 62:4,

9,20 63:5 66:1 70:5 78:2,3,25 82:2,20

**descriptions** 77:10 112:16

**descriptors** 84:24

**designated** 16:7,21 17:9

**detail** 21:7

**detailed** 62:12

**details** 24:24 93:3

**detain** 93:11

**detained** 121:14

**detectable** 69:7

**detective** 14:20 15:11 18:15,17,20,21, 24 19:1 21:10, 13 30:1,4 63:1 98:2,5,13,19 99:6,13 100:15 104:9,16,17,23 105:2,4 108:11 121:19 127:14, 18 128:2,5,14 129:6 130:3

**detectives** 14:19 28:24 92:16

**determination** 42:13 71:15 73:3 93:9,12

**determine** 9:9 53:10 65:5 70:15 86:6 91:7 93:10 97:22 113:12

**determined** 33:21 43:13 44:3 47:4 73:4 96:24

**determining** 10:15

**develop** 83:2

**developed** 77:12,16

**developing** 21:5

**development** 21:21,24

**devices** 64:15, 18 106:23

**differ** 11:12

**difficult** 65:11 101:6

**digitally** 21:17

**digitize** 21:15

**diminish** 45:15

**diminishing** 79:23 80:24

**direct** 5:24 48:17

**directed** 49:12

**direction** 112:24 113:7, 14,23

**directions** 110:20

**directly** 55:18 119:2

**disagree** 65:12 69:16

**disbelief** 82:7

**discern** 55:11

**discipline** 39:12

**discover** 6:6 50:21

**discredit** 41:19

**discrete** 55:5

**discussing** 128:24

**dismissing** 80:3

**dispatched** 75:19,22

**disprove** 116:23

**dispute** 75:18 78:10

**disregarding** 79:24

**disrespectful** 45:3

**distinct** 61:2

**distinction** 87:13 94:12

**distinguish** 37:23

**District** 22:19 24:19,22 25:2,5

**division** 19:25 22:23

**divulge** 109:5, 12

**document** 44:1

**documentation** 28:11 65:3

**documented** 44:12 87:11 116:13 120:11

**documenting** 82:12

**documents** 75:25 87:14,20 89:11,13 99:22

**dog** 69:8,20 70:23 73:4 75:6,7,8 79:7 80:12,23 83:11 118:20

**dogs** 69:9,10

**DOJ** 23:20

**doke** 48:3

**domestic** 38:15

**door** 118:11

**doors** 118:10, 13

**doubts** 113:19

**dragging** 118:1

**draw** 51:17 53:8 58:17 76:3 94:12

**drawing** 115:23

**drive** 53:1 54:9

**driver** 9:23 58:24 77:4

**driver's** 63:8 117:11

**driving** 86:23 117:7 127:1

**drop** 95:6

**dropped** 122:10

**due** 28:2 47:24 71:5 77:19 78:5 82:24 132:2

**DUIS** 38:16

**duration** 32:19 124:4

**duty** 115:10

**Dylan** 48:14, 15,19,25 49:5, 12,17 50:7,11 51:6 52:2,25 53:9,11,25 55:8,13,16,22, 25 56:25 96:2 105:4

---

**E**

**e-mail** 101:16 114:3 132:16

**earlier** 44:7 47:11 53:16 70:11 85:21 91:1 93:13 127:22 128:11

**earliest** 111:19

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

**early** 8:24 41:2, 3 69:21 75:24 78:11 82:17 88:4 93:12 112:8

**East** 18:7

**Eddie** 29:17

**Edwards** 102:7,8

**effect** 115:19, 21 130:16

**effective** 61:19 107:13

**efforts** 73:11 96:13 105:16

**elderly** 108:21

**elected** 60:18

**Electronic** 132:24,25

**elevation** 64:3, 14

**eliminate** 61:5

**Emergencies** 106:15

**emergency** 50:1

**employed** 14:23 15:10,13, 16,23 16:3,6 17:21 18:24 20:9 23:1 45:4 51:13 68:20

**employees** 33:24 38:16,17

**employer** 15:25

**employment** 19:14 31:25 32:3

**encapsulated** 125:10

**encompass** 38:11 109:20 125:4

**encounter**

49:6 56:17 115:11,13,24 116:4,8,16,17, 18,19 119:22 120:2

**encountering** 52:21 54:8

**encouraged** 118:13

**end** 6:17 45:6

**ended** 80:19

**enforcement** 10:10 11:19 12:2 15:1 21:20,22 22:16 23:4,6,9 26:4 30:19 31:11,16 32:14 33:18 40:7,13,24 41:20 43:25 46:12 49:6,22, 24 50:15,22 52:20 54:1,8,9 61:12 64:3 67:24 69:3 80:11 84:5 92:25 93:19 96:10 97:13,14 100:11 106:18 108:14,25 112:13

**ensure** 41:8,9 42:2

**entered** 40:14

**entering** 56:13

**entire** 129:12

**entirety** 12:24 126:13 130:12

**entity** 35:11

**entrance** 125:8

**entry** 105:20

**enumerate** 100:19 121:3

**enumerated** 14:22 43:24 70:5 76:2 95:25

**environments** 65:22

**equipment** 63:14 64:6 117:18

**err** 122:7

**escalate** 38:24

**essence** 27:15

**established** 24:4

**estate** 51:6 55:8,12,16 95:24 96:2 115:3

**et al** 29:21 31:6

**event** 69:15,18 70:22

**events** 50:4 55:24 56:6,23 85:11 111:18 112:3 126:11, 22 127:5

**Everbridge** 106:3

**Everbright** 106:3,10 107:2, 3,12,20,24 108:1,4 117:19

**evidence** 7:4,5 11:1,2,3,18 12:1 21:14,17 36:6 53:24 54:7 83:2 86:15 88:22 92:13 116:20 124:17, 18 125:3,5,11

**evolved** 118:1

**EXAMINATIO N** 5:24

**examine** 55:17

**exclude** 99:18

**excluding** 100:13

**excuse** 97:3

**exercise** 56:22

**exist** 37:7 39:18

**existed** 111:19

**exit** 125:9

**exited** 131:2

**expand** 25:24

**expect** 111:9 117:16

**experience** 10:21 16:13,14 25:1 38:6,20 39:7 40:6 46:11 52:8 58:13,17 59:19 61:11 64:16,17 65:20 68:3,6,10 79:11 80:22 82:4,22 86:1 90:16,18 91:12 92:7,8,9 96:9,10 106:1 112:15 120:20

**experienced** 115:16

**experiences** 80:10

**expert** 6:3 25:1,10,11 26:1,23 27:1 30:18 42:13 45:4 70:9,11,12

**explore** 55:18 74:2

**exposed** 41:22 47:14

**expressed** 13:10 74:5 124:8 126:14

**extent** 68:10

**extrapolate** 46:10

**extrapolated** 40:6

**eyewitness** 60:15 84:15

---

**F**

**face** 88:21 101:4 130:24 131:22

**facility** 30:6

**fact** 36:3 50:21 60:17 63:1 74:10,11,12,15 75:10 76:3,6 80:4 81:5,17,19 86:25 87:3,5,10 88:7,10 89:12 94:1,17 99:12, 15,20,23 100:2, 10 104:15 112:23 118:6 121:4,12,17,18 122:2 123:23 124:1,6,10 126:20 130:10, 13,25 131:5

**factors** 34:12 86:6

**facts** 10:14 48:12 53:12 55:10 83:2 84:21 86:18,19 87:11 89:8 94:17 95:22 109:2,4,5 113:12 120:25 121:3,5 126:6, 13,19

**factual** 99:7

**faculty** 31:8

**failed** 82:3

**fair** 6:16 9:15 13:13 14:22 17:8,19 28:3 30:16 35:1 38:10 44:5 68:6 81:4 85:9 112:5 126:13

**fall** 37:18

**false** 119:4

**familiar** 8:2 26:19 106:10 107:1



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

407.423.9900

www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

Toll Free 855-MYDEPOS

family 57:2

fashion 16:8

father 66:10

fault 108:4

feasible 55:11

Feb 127:19

February 6:16, 17 8:11 63:15

federal 25:25 26:1,21 31:17

feel 44:24

felt 91:24

field 18:14 61:5 128:3

file 30:10

final 34:10,13, 16 43:7

finally 44:12

find 47:9 48:25 53:24 57:17 76:10 82:4 108:7

finding 34:19

fine 95:6 123:1, 3 132:8

fingerprints 23:21

fire 73:1 76:22, 24 79:5,20 80:1,17

firearm 38:18

Firm 6:18

first-responding 11:16

firsthand 10:9, 20 65:20

fixed 44:10

fled 84:8,9 90:4,7 122:5 131:3,7

flight 64:8,10 67:23 68:15

flip-flops 61:1

flippant 41:15

Florida 5:6 15:8 24:8,13 26:1,2,5,7 27:14,22,23 32:13,18 33:7

fly 22:8 66:4 68:4

focal 33:2,10

focus 12:12,17 81:3

focused 51:7

fog 88:3

folks 56:13 110:18

follow 38:10 43:18

follow-up 28:10 37:4 114:2

foolish 106:20

foot 60:5 68:24 73:12 75:16 84:9 131:4

footnote 126:9

force 19:24 22:23 24:23 25:13,15 26:10, 13 27:23 30:14, 18,19,24 31:18 35:3,19 37:13 38:9,22 43:5

forces 60:2

forget 117:9

forgive 80:5

form 46:23 59:11 105:6 118:15

forming 43:22

formulating 8:16

forthcoming 117:1

fortunately 25:21

forward 132:5

forward-looking 64:7

found 54:4,6 124:15 129:4, 10 131:9

foundation 59:16 74:18,21 119:21

Francisco 16:18 22:18,25

Frank 103:21

frequent 16:16

front 52:21 109:9

FTO 101:21

full 5:12 38:23

fully 18:12 20:23

function 40:24

functions 42:2

**G**

G-A 103:19

G-A-U-T-A-M 103:20

Gabriel 101:2, 20

gamut 35:7

Gary 48:13

gather 21:14

gathering 90:19

Gautam 103:17

gave 21:16 71:25 104:25

general 36:5 49:23 50:4 57:5 107:12

generally 35:10 36:3 44:1 46:11 47:19

generate 45:6

geographic 109:18

George 101:2, 3,21

Gilberetti 103:16

girl 73:8

give 5:19 21:7 28:15 29:9 35:25 48:4 54:23 69:17 85:7 87:15 95:9 98:7 100:23 104:9 110:19 122:23

giving 63:4 85:2

goal 106:13

good 6:1 12:6 20:2 39:1 58:8, 15 59:9 84:16 95:14 132:15 133:1

grand 24:22 25:8,10

Greg 29:17

grievance 20:3

ground 58:15 60:2 61:9 62:11 63:11 64:22 66:11 68:7,17

grounded 81:5 100:6

group 24:4

Groups 24:5

guarded 91:17

guess 17:16

guesstimate 19:6

guidance 17:9

118:7

guideline 39:21

guides 40:10

gun 88:18,23, 24 89:21,22 94:14,15 131:3, 8,9

**H**

H-A-R-D-M-A-N 102:1

hairdo 61:2

half 32:22 93:16

Hampshire 31:6

hand 5:18 17:23

handcuffed 122:14

handle 49:25

handled 10:21 12:24 38:12 39:16 42:10 69:19 75:10 82:16

handler 15:14 68:20 70:17,25 71:11,16 78:18

handling 28:10 36:6,9 44:24 69:5

handy 29:8

hang 96:5 101:5 104:15

happen 72:9

happened 9:12 11:14 36:14 56:6 59:20 66:12,23 79:9 90:17 93:16 94:21

hard 82:4 114:23

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

**Hardman** 101:24

**harming** 41:10

**Haven** 30:7,11

**header** 105:1 128:20

**headquartered** 31:12

**headquarters** 10:3 94:23 97:15

**heard** 6:1 17:3 25:10 29:4

**hearing** 86:14 95:5

**height** 68:4

**held** 19:7

**helicopter** 58:14 59:9,25 60:13,23 62:17 64:3,6 65:8 66:4,8 67:1,6, 11 68:8 111:8 117:17

**helicopters** 65:22 67:24 68:13,14

**helped** 23:19

**helpful** 62:22 65:9 70:18 73:5 113:10

**helps** 86:15

**Hernandez** 103:21

**Hialeah** 117:9, 10

**hides** 68:25

**hierarchy** 18:9

**higher** 61:16

**highest** 19:7

**highlight** 110:14

**highlighted** 46:20

**highly** 105:17

**Hill** 110:12,18 111:10

**Hills** 64:25 114:7

**history** 29:3,6, 12 30:2 31:2

**hold** 15:18 76:12

**Hollywood** 18:22

**home** 22:14 32:7 117:6,7,15 118:24

**homes** 111:12

**homicide** 8:24 14:19 15:11 27:2,18 28:3 88:11 92:15 98:4 104:2,8,17 105:20 125:19

**honest** 40:22

**hostage** 38:24

**hot** 131:9

**hour** 11:4 56:6 59:5 93:16

**hours** 6:6 10:3 11:4 67:21 93:15 123:12, 19,25 124:7 127:19

**house** 52:21 118:18

**HQ** 97:18

**hundreds** 52:9 69:19 82:16

**hurry** 58:3

**hyphen** 37:20, 24 38:6

**hypothetical** 74:20

**I**

**ID** 5:16 61:5

**idea** 124:21

**identification** 62:3 81:13

**identified** 13:2,4 58:9 84:24 85:10,13 89:6,21 90:22, 23 92:6,24 94:11 98:14 99:3,9 103:11 117:13 127:9 128:15 129:7

**identifies** 98:3 101:4 104:16

**identify** 13:6,7, 8,22 29:12 30:3 36:24 37:5 39:2,20 40:12 44:22 48:17 55:13 57:12 75:14 84:13,21 88:16 90:21 99:14 100:1,20 129:13

**identifying** 25:6 27:7 60:12 65:9,14 94:13 97:25 99:21

**identity** 85:21 89:14,17

**immediacy** 81:2

**implementing** 107:6

**implicating** 94:5

**important** 76:11 81:17,19 83:8 86:25 89:8 94:1 99:12 112:20 114:1 116:22

**importantly** 63:25

**impression** 71:25

**improper** 71:19 80:11

**improperly** 74:18

**inactions** 82:24

**inappropriate** 116:25

**incarceration** 27:19

**incident** 6:22 10:18 11:13 12:25 16:18,22 37:8,15,20,21 38:3 44:2 48:12,20 59:14 70:16 71:1 74:4 76:7,15 77:23 78:17 79:16 88:4 98:1 99:16 100:1,3,6,16, 20,21 101:18, 19 104:4 107:13 111:24 116:13 122:19 127:15

**incidents** 15:21 16:11 34:23 35:5 37:12,14,17,22, 23,24 38:6,8,9, 12,21 43:6 61:18 86:22

**include** 73:1 74:8 82:19 126:19

**includes** 38:11

**including** 123:11,14,17

**independent** 7:1 17:12 114:21 130:11

**Indiana** 31:13

**indicating** 13:12

**indication** 48:25 54:11

**individual** 28:1 48:19 59:23 61:24 62:15 66:5,11,22

73:13 80:21 81:13 82:12 88:7,9,20 89:6 91:21 94:2,4 115:9 122:4,17

**individually** 5:9 51:8 55:6 115:2

**individuals** 14:23 23:18 27:19 28:4 52:15 53:18 63:7,20 64:12 65:14 68:18 70:6 80:13 107:5 125:9

**indulge** 126:23

**industry** 46:6, 10 47:7

**inferences** 83:3

**inform** 44:23 51:5 60:23 80:11 94:17

**information** 10:13,18,19,22 15:17,20 16:7 17:13,17 21:11 40:22,23 42:8 44:15,16 45:18 46:21 50:2 51:14 54:8 60:12 61:4 62:22,23 63:6 64:20 65:18 69:11 77:12,16 82:4,5 83:10,21 84:10,11,18 86:8,14 88:6 90:19 91:23 93:14 94:4,10 97:10,11,13 106:6,7 107:8 108:10 112:15 113:10,18,21 116:2 118:4 119:9,10,14 127:11 128:6 130:5 131:14, 16,17 132:7

**informations** 113:2

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

407.423.9900        www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

Toll Free 855-MYDEPOS

**informed** 76:24 77:2 78:20 80:6 89:19 90:3 116:3,10 118:3

**informing** 12:2

**informs** 88:6

**infrared** 64:7 67:20

**infrequent** 22:12

**inherently** 123:9,10,15,20, 25

**initial** 8:5 90:13

**initially** 86:3

**initiating** 22:25

**injuries** 25:13 77:3 80:7

**injury** 37:16 38:18

**inquiry** 6:21

**inside** 35:15 111:16

**insight** 21:23

**Instagram** 105:23

**instance** 40:9

**institute** 31:11, 15 32:1,5 35:2 36:2

**institution** 31:8,10

**instruct** 36:1

**instructing** 33:11

**instructions** 41:1

**intend** 45:2

**intention** 95:3 115:7

**interacting** 39:7

**interaction** 12:14

**interest** 17:7 60:8

**interesting** 125:16

**interfere** 42:23

**interfered** 118:8

**interfering** 79:19

**internal** 24:1 31:18 34:8,11 40:18

**internally** 33:17 37:25

**international** 21:2

**interpret** 130:2

**interpretation** 99:1 129:15

**interpreted** 98:22

**interprets** 125:21

**interrogated** 94:24

**interruptions** 125:13

**intersection** 117:10

**intervene** 50:23

**interview** 10:4, 17 11:3,24 36:5 85:6 92:15 93:4 97:17 98:14 127:19 128:14 129:6,16

**interviewed** 10:2 98:13 121:18 128:6, 14 129:5

**interviewing** 86:7 128:2

**interviews** 28:11

**inventory** 7:15

**investigate** 50:2

**investigated** 35:10 105:3

**investigating** 23:25 110:16 131:21

**investigation** 19:24 22:23 27:2,3,18 28:3, 10 30:1 33:19 37:25 38:2 49:16 50:5,9 74:25 83:1,5,18 91:7 93:2 97:4 104:2 105:20 108:16,17 109:10 110:15 114:6 123:11, 16,18 125:12

**investigations** 16:10 21:6 23:14,15,17 24:2 33:13 34:21 36:8 38:9 49:20 83:2 118:8

**investigative** 8:24 23:7,8 24:5 36:5 88:11 98:5 100:15 104:8 109:12 127:13

**investigator** 23:10,11 104:13 105:10

**investigators** 21:9 124:17 125:11

**invoice** 132:2

**involved** 6:19 28:11 47:18 90:15,17 91:8, 15,24 98:20 120:17 121:23

**involves** 37:25

45:12

**involving** 8:6 37:21

**issue** 6:22 23:17 26:15 38:20 47:8 59:18 75:9 108:15 109:1 115:15 116:15

**issues** 35:14 36:2,21 37:1 53:17 56:4 61:7 124:7

---

**J**

---

**Jackson** 5:9 12:10 13:2,11 73:24 77:6 78:21

**jail** 23:15

**January** 16:4

**Javier** 101:5

**Jeronimo** 5:13

**Jerry** 5:13

**Jersey** 22:7, 10,12

**job** 18:6 21:25 22:11,15

**John** 5:7

**join** 20:17

**Joshua** 102:8, 17

**Jr** 14:12 24:4

**jrod631@msn. com.** 132:17

**judge** 95:5 119:8 120:14

**judging** 120:15,19

**judgment** 43:11 72:24 73:6

**July** 24:5

**Junior** 101:2,3

**jurisdiction** 39:15

**jury** 24:22 25:8, 10 42:15,18,23 43:7

---

**K**

---

**K-9** 13:7 57:15 58:14 62:10 68:20 72:14,18, 20 74:9 76:1,4, 13 78:18,19 79:2 80:12

**Keith** 62:15 84:4,22 85:1,10 89:6,21 93:20 94:5,13,14 96:19,22 97:3 98:14,19 99:3 101:5 128:15 129:7

**Kevin** 90:10

**Keyes** 5:9 6:4 12:10,13,17 13:2,11 42:19 43:11 47:22 51:10,18 52:1 53:8 55:15,24 56:5,10,16,17, 21,24 73:24 76:1,4,12 77:6, 25 78:16,18,22 81:8,18,22 82:9,12,14 83:6,9,12,23 84:11 85:17 87:12,18,21 88:16,17 89:9, 14,20 90:2 104:4,5 115:10 116:4,8 117:13, 14,19 119:3,8, 13 120:1,2,5, 15,19,25 121:1, 5,13,22 122:3, 16 131:12,14, 16

**Keyes'** 82:24

**kill** 94:15



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

407.423.9900       www.MILESTONEREPORTING.com

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

Toll Free 855-MYDEPOS

killing 41:6,9, 10 60:21

Kimberly 29:17

kind 45:17 109:1

kinds 69:9 105:25

Kitchen 14:16

knew 60:16 61:3 72:9,17 81:8,12,18 82:10,14,25 83:6,7 84:15 85:3 88:17 89:9,14,20 90:2,5 98:19 105:5,12 112:8 119:17,22 120:5,10 121:5, 8,10,13,22 122:3,12,16

knowing 44:1 45:5 62:18 66:25 67:10 82:12 90:17

knowledge 6:22 17:2 49:5, 10 113:21 120:2,16,20,25

knowledgeable 64:2

**L**

L-A 102:22

L-A-W-Y-E-R 102:22,23

LA 22:24 110:9

La'jerrold 14:8

lack 57:14 59:15 74:17

language 129:10

LAPD 61:14

large 42:4 51:11 96:12

110:10,13 122:17 124:21 125:15

last- 95:16

last-known 69:22

launch 59:9 60:12 65:8 67:6 68:25 70:23

launched 65:13 67:17

law 6:18 10:10 11:19 12:2 15:1 21:20,22 22:16 23:4,6,9 26:4 30:19 31:11,16 32:14 33:18 40:7,13,24 41:20 43:25 46:12 49:6,22, 24 50:15,22 52:20 53:25 54:8 61:12 64:3 67:23 69:3 80:10 84:5 92:25 93:19 96:10 97:13 100:11 106:18 108:14,25 112:12

lawsuit 35:15 55:5,22 56:25

lawsuits 30:14

Lawyer 102:17,21

lead 41:13 62:25 83:3 84:12 88:17 93:15 98:2 104:13,17 105:9

leads 74:23 109:12 113:22

learn 67:13 89:7

learned 116:10

learns 96:11

leave 19:19

20:16 23:8 113:7

leaves 98:3

led 38:7 50:22 52:2,7 75:13

Lee 102:2,4,17, 21 103:5

left 18:6,22 31:20 60:5 90:4 108:11 118:20

legal 31:25 32:4 35:2,12

lethal 25:12 30:24,25 35:8

level 67:23 72:10

Lewis 14:12

liability 31:25 32:4 35:2,12

liaised 21:21 23:20

license 63:8

lieutenant 18:16,17 61:15 68:22

life 79:6 80:2

lifesaving 76:23,25 79:2 80:18

limit 26:24

lines 95:25 101:11

listed 8:19 9:2, 18 10:6 13:9 91:2

Listen 90:10 93:7

listened 9:16

lists 102:7,25

litigating 73:18,22

litigation 10:5

live 24:17 53:1 54:10 110:12

lived 107:9

lives 80:13

LLR 33:1

local 23:22 54:14

located 69:22

location 5:4 21:16 50:12 51:1 53:1 54:10,16 66:4 69:20,22 70:6 75:15 82:20 110:5 112:16 123:18

locations 21:14

lock 118:13,24

locked 111:23 118:20

long 18:24 19:11 28:13 31:24 42:12 106:13 107:16 128:25

longer 61:13 91:19 92:9 97:23

looked 8:21 25:24 42:6 130:14

lookout 82:19 83:13

loose 66:17 75:16 109:7 112:21 117:24 118:23 120:7, 22 131:20

Los 16:15,20 17:7,10,19,21, 25 18:6,10 19:8,18 20:4,5, 9,16 22:17 61:20

Losh 29:17

lost 124:22

lot 47:14 62:10 86:5 108:12

110:8 127:10

loudspeaker 106:2,3 117:18

Luis 23:2

Lyons 48:13, 14,15,19,25 49:6,12,17 50:24,25 51:6, 13,16,19,20,21 52:2,22,25 53:9,11,25 54:7,16 55:8, 13,16,22 56:1, 10,25 57:8 95:24 96:2 105:4

**M**

M-A-R-C-E-L-L-O-N 102:25

made 10:9 11:25 20:8 27:25 33:17 37:6 39:23 40:16 48:13 51:6,8 54:9,12, 16 55:6,7,12,19 56:16 57:1 71:11 76:12 83:9 86:4 92:14 93:18 94:5 95:23 96:13 115:1 116:23, 24 121:1

maintains 63:18

major 125:17

Majors 51:9 105:4

make 37:11 41:6 43:9 70:24 104:1 118:18 124:17 125:10

makes 105:11 126:9

makeup 65:12

making 37:10 53:1 54:10

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

101:13

**male** 60:9

**man** 65:9

**management** 21:12 31:11 32:1,4 35:2,13

**manager** 21:21

**Marcellon** 102:23

**March** 6:8,10 36:16 41:18 44:10

**market** 22:3 110:10,13

**markets** 110:11

**matches** 62:19

**matching** 66:5

**material** 6:9 7:15 8:15 10:16 40:8 44:8 46:8, 9 76:9 87:5 88:16 99:15,22 127:6

**materials** 8:17 37:7 42:1 43:21,22,23 46:22 59:23 93:23 99:9

**matter** 17:2,6 25:7 32:24 35:14,21,22 39:3 53:16 115:8

**matters** 29:25

**means** 103:8

**meant** 42:23 43:6 114:10,13

**measured** 119:14

**measures** 50:1 76:23,25 80:18

**media** 51:14 108:9,15 109:1,

3,17,18,19 110:1,3,13 111:4 114:5

**medias** 108:12

**member** 107:8 115:17

**members** 41:10

**memorized** 99:25

**memory** 26:5 65:2 105:21

**mentioned** 13:19 31:1 48:20 53:21 56:8 103:5 107:17 110:21

**mentioning** 56:9

**mere** 85:14 87:10 99:19 124:1

**message** 107:7

**methodology** 41:16,25 43:18 44:18 45:21 46:4

**Michael** 102:1 103:1,4

**Middle** 24:19, 22 25:2,4

**Mike** 29:17

**Miller** 102:17

**Mina** 5:8

**mind** 27:11,21 31:20 36:10 52:2 86:7 91:6

**mindful** 52:24

**minute** 17:5 95:17

**minutes** 75:4 81:5

**misheard** 80:5

**missing** 37:15 38:14 108:21

**mission** 68:3,5

**missions** 63:20

**mistaken** 74:14

**mitigating** 34:12

**model** 22:23 46:5,9

**Moes** 5:7,25 46:15,24 47:24 48:1,9 52:12 54:18,22 55:3 60:6 71:20 74:22 95:1,8, 14,19 105:7 109:24 114:12, 14,16,17,23,25 118:25 122:23 123:8 125:23 126:2 131:23 132:1,8,11,19, 21,23,25 133:5

**moment** 44:4 49:17 50:6 54:23 65:24 68:5 81:10 94:8 95:9 119:9,22, 24 122:23 125:25

**month** 6:14,16 32:8 47:12 116:15

**months** 20:19

**Morant** 30:7,11

**morning** 6:1 8:11 56:5

**mortar** 22:10

**Moses** 50:23 52:19 53:20 56:14 57:16 60:4 62:13,16 72:7,10 79:21 81:2,12,14 84:4,22 85:1,10 86:23 89:6,21 93:20,25 94:6,

11,13,14,20 96:20,22 97:3 98:1,3,15,19 99:3 101:5 102:7,25 106:7 108:23 109:7 117:23,24 127:3,9 128:15 129:7 130:8,22, 23 131:2

**mother** 66:9

**motion** 83:10

**move** 34:13 95:18 118:2

**moved** 22:9

**multiple** 16:24 25:13,19 28:12 38:17 80:17,22, 23 88:5 99:10 106:21 122:11 128:23

**multitask** 111:21

**municipalities** 109:21

**murder** 40:25 42:9 50:17 54:15 60:18 84:15 85:4 88:18 89:22 100:4 105:10 109:9 110:16 112:9 118:22 120:8,22 122:8, 20 131:19

**murdered** 9:24 49:3,18 50:7, 24,25 58:25 96:11

**murderer** 75:15

**murders** 109:15

**muscular** 60:9

**muted** 100:25

**N**

**named** 14:15

**names** 28:24 101:1,7 102:24

**Nathacha** 8:6, 10 9:24 12:21 49:16 50:6 53:2 56:5 58:24 66:2 72:15 74:8 75:3 79:3,6 80:2 81:6,8,18,23 82:10,15,25 83:6,14,15 84:6,13 86:2,11 88:19 89:6 90:15,24 92:11 93:20 94:6,15 97:4,24 98:15, 25 104:17 105:3 120:17 121:6,15,24 122:4 128:16 129:7

**Nathan** 29:20

**nation** 39:8,9 47:12 106:19

**nature** 23:18 30:1 37:8 61:2 64:23 65:5 116:3

**nearby** 79:2 80:12

**necessarily** 14:2 23:13 34:15 62:22 70:8 91:14 110:4 129:16

**needed** 44:3, 25 46:21 76:1, 5,14

**negligent** 27:17

**neighborhood** 60:5 65:6 75:16 96:13 109:20 110:4 118:23 131:4

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

**Nejame** 6:18

**news** 7:1,2 51:13 54:14 108:12

**Nice** 20:24 21:1,25 22:15

**Nicholas** 103:20

**nine-year-old** 73:8

**non-lethal** 27:23 35:8

**nondescript** 60:25

**notate** 72:14

**note** 71:2

**notes** 131:23

**notice** 38:4 44:14 107:11, 14

**noticed** 107:15

**notification** 53:22 54:14 125:21

**notified** 66:3

**number** 9:1,7, 14 29:13,19,20, 22 30:12,17 31:6 38:19 57:22 58:4 66:15 68:21 96:6 101:10,18, 19,23,24 102:12,14 103:25 104:10, 18,20 128:20

**numbers** 58:10 100:24 104:11,25

**numerical** 58:9

**numerous** 120:16

## O

**oath** 116:16

**Obispo** 23:2

**object** 46:13 52:3 59:11 71:17 74:17 105:6 118:15

**objection** 46:17 74:19 109:23

**objective** 42:22

**observations** 61:18

**observed** 76:21 79:25

**obtain** 10:23

**obtained** 82:5 94:9

**obvious** 10:24 111:16

**occasion** 68:22

**occasions** 16:19,21 17:6, 14

**occupant** 66:1 90:3 94:13 121:6,10

**occupants** 88:25 89:2,3,5

**occupation** 45:11

**occupy** 19:11

**occur** 34:22 35:4 99:5

**occurred** 44:1 85:4 86:20 87:18 88:12 92:2 112:10 116:16 129:17

**occurring** 8:10 11:25

**occurs** 58:18

**OCSO** 55:14

**offer** 6:4 27:24 35:13 43:10 67:9 69:13

**offered** 13:14 17:17 26:19 40:13 82:23

**offering** 13:15 25:1 62:15 66:24 67:9 70:9

**offers** 78:4

**office** 5:10 6:5 8:9 10:3 14:24 16:9 17:18 22:19 23:2,7,25 32:7 33:21 40:2 47:2,6 48:18 49:2,11 51:7 57:6 58:23 63:15 65:25 73:23 74:6,24 87:12 94:3,23 97:15 99:15,22 107:21,23 108:2,4 113:13 114:4 126:11 132:5

**officer** 15:2,17, 21 16:7,15 17:9 18:3,11,12,13, 14 19:9 30:20 38:13 39:12,16 42:6,8,21 58:23 61:15,16 63:1 64:8,10 68:15, 16,22,23,24 70:20,21 75:19 82:1 93:1

**officer's** 42:14

**officer-involved** 25:22 33:4,12 35:17

**officers** 28:11 29:18 34:2 36:8 40:11 41:11 42:5 47:19 62:11 63:11 66:16 69:3 72:6 80:16 86:5

91:16 92:19 112:20,21

**official** 5:8

**oftentimes** 21:13 64:10 67:16

**Okey** 48:3

**omit** 8:17

**on-scene** 50:9 76:24 120:12

**one-on-one** 53:23

**ongoing** 64:12 96:14 108:16

**online** 22:11

**Oops** 126:5

**open** 29:9 118:20

**opened** 126:18

**operate** 67:24

**operated** 68:14

**operates** 63:17

**operation** 59:1

**operational** 63:19

**operations** 23:16

**opine** 13:20 27:1 28:7 29:25 36:21 37:2 52:6 87:21

**opined** 55:14, 15 96:1

**opining** 42:18 71:12

**opinion** 13:12 40:24 42:7 46:4,23 47:17 51:15 53:6,19 54:1,2 56:24 57:7 59:19 60:19 65:8 66:24 69:14,17

70:9 72:5 75:5 78:13,15 79:18 81:5 83:10 87:1 98:19 99:13 100:6 110:1 113:12 116:3, 21,22 119:21 120:20 122:3 131:6,13

**opinions** 6:4,6 7:24 12:12 13:10,15 14:3, 7,10,14,24 25:11 26:19 27:24 40:14,16 41:17,25 43:10, 22 44:10,23 51:5,7 55:12,18 57:5 67:10 74:2,24 81:19 82:8,23 83:8 92:8 95:23 96:4 97:22 100:10 112:23 120:24 121:12,22 122:16 126:7

**opportune** 112:14

**opportunities** 80:23

**opportunity** 18:7 111:19 118:4

**opposed** 37:21

**opposite** 19:20

**Orange** 6:5 8:9 10:2 14:23 40:1 47:1,5 48:18 49:2,11 50:10 51:6 57:6 58:22 60:13 63:14 65:1,25 67:24 72:4 73:23 74:6 75:19 81:7 87:12 94:2,23 97:15 99:14,21 106:4,9 107:21 108:2 112:18 113:13 114:4 126:10 129:2

**order** 58:9 68:25 75:14

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

106:5 107:12 132:21 133:4

**organization** 46:20 47:7

**organizations** 46:6,9 47:13

**Orlando** 5:6 60:14 110:12

**outcome** 73:16

**outer** 124:13, 16

**outset** 12:18

**outstanding** 71:4 77:9,19 78:1,5,24 89:18 110:17 113:1,4 118:9 119:11, 18 120:21 122:13,14 125:22

**owned** 106:17

———

**P**

———

**P-E-E-R-S** 103:4

**p.m.** 51:19 56:6 59:5 114:11,13, 18 117:6 119:25 133:9

**Pack** 29:17

**pages** 38:5 128:25

**Palm** 24:6,8,17

**paper** 45:19

**paragraph** 77:14 98:10,11 126:4,9,14 128:9 130:7

**parallel** 38:2

**Parde** 29:17

**Park** 5:10

**part** 21:25 44:18 45:15 46:3 51:11 83:16,18 92:8

113:2

**parties** 5:2 25:6

**partner** 71:7 77:17

**parts** 47:11

**past** 110:25 111:13

**paste** 45:18

**pat** 93:12

**patrol** 19:8 64:4 68:9

**patrols** 73:12

**pause** 46:7

**paused** 31:22 43:24

**PD** 17:10

**Peers** 103:1,4

**pen** 45:19

**Penland** 105:6 109:23 114:10, 13,15 118:15 123:2 133:3

**Penland's** 132:5

**people** 41:4 75:11 108:21 110:12 111:15 118:21

**perceive** 43:8

**percent** 22:11

**performance** 12:12,17,20 13:15,16,24 14:3,7,11,15,18 42:14 51:18 55:24 56:4,15 57:6 73:23 74:3 82:24 115:10 119:8

**perimeter** 36:6 112:2 124:6,13, 14,16

**perimeters** 37:4

**period** 124:2

**person** 11:21 16:17 17:20 18:12 22:5 26:23 32:10 37:16 60:8,20, 22,24 62:4 66:17 68:24 85:15,21,24,25 87:24 89:14,20 91:15 92:24 94:20 98:15,24 99:2 122:7,9,20 129:7,14

**person's** 62:18 63:7

**personal** 40:5 48:14 51:9 53:22 55:7 115:2

**personally** 49:1

**personnel** 23:15 48:19 49:2,12 76:22, 25 79:5 80:1

**persons** 18:23, 25 38:14

**perspective** 38:1

**pertinent** 76:20

**perusal** 57:24

**peruse** 29:11

**perusing** 30:2

**pets** 111:16

**Philip** 29:20

**philosophy** 41:13

**phone** 95:7

**phones** 63:22, 23 106:23

**phonetic** 14:16

**Phyllis** 101:16

**physical** 66:1, 5

**picked** 73:10 115:14

**picture** 62:25 63:2,7,8,9

**pictures** 63:24

**piece** 35:11 130:16

**pilot** 60:23 64:9,19 68:14

**pilots** 68:8

**Pine** 64:25 110:11,18 111:10 114:7

**pinpoint** 28:8

**PIO** 15:20 16:12,14,17,21, 23 17:9,12,13, 14,18 114:4

**place** 32:3 43:6 93:15 125:18

**places** 99:10

**placing** 125:6

**plain** 11:9

**plaintiff's** 25:9,11

**plaintiffs** 5:6 55:19

**platform** 106:22

**platforms** 21:17

**played** 126:1

**pled** 59:14

**plenty** 68:13

**point** 34:23 62:17 67:12 71:6 72:23 74:20 75:8 77:7 78:23 88:15,24

**points** 77:21

**police** 6:3 15:19,23 16:3, 11,14,20 17:7, 19 18:1,5,10,

11,12,13,14 19:8,19,25 20:1,4,5,9,17, 21 25:15,17 26:12 29:2,16, 19,21 30:13,17 31:18 34:21 35:3,20,21,22 36:4 37:11,12, 13,20,21,24 38:6,8,13 39:2, 5,14,20 40:9 41:12 42:2 43:5 45:4 62:11,17 66:15 68:14,18 80:16 106:2 112:19,25 115:6,7,15 118:1 125:9

**policies** 39:10, 11,24 40:1,10, 19 41:5,23 42:4 46:5,9,19,25 47:1,5,6,14 106:9 112:18 124:12

**policing** 21:6 117:25

**policy** 33:25 35:7 36:9 39:6 47:8 62:7 63:16 67:2,15 83:17

**poorly** 88:13

**populated** 65:21

**population** 64:24 65:6,18

**portion** 43:17 45:11

**posed** 56:14 79:21 108:23 109:7 117:24 122:17

**poses** 93:11 113:4

**position** 18:21 19:11 20:23 22:7,18 23:9

**possessor** 94:14

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900
www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

**possibility** 125:15

**possibly** 93:17,22 102:16 103:9 106:8

**post-curriculums** 40:21

**postdated** 107:13

**posted** 107:19

**potential** 52:18 56:14 75:6

**pounds** 60:10

**practice** 39:2 40:9 45:4 112:19 115:16

**practices** 6:3 30:18 31:19 35:7,18,20,22, 23 36:4 39:21 45:4 47:20

**pre-actively** 21:15

**precaution** 66:21

**preclude** 16:24

**predicate** 99:7

**predominant** 30:16

**predominantly** 31:18 48:13

**preferred** 72:11

**premise** 109:25 119:16

**preparation** 53:1

**prepare** 95:4

**present** 35:15 36:2 52:17 90:8 101:15

**presentations**

36:24

**presented** 74:21

**press** 16:16,25

**pretty** 41:1,14 45:25 54:6 72:21 81:19 84:16 90:18 110:13

**prevent** 60:20 125:8

**previous** 45:16

**previously** 104:25

**primary** 10:23

**Principally** 127:13

**prints** 23:21

**prior** 6:21 49:6 56:17 63:3,9 94:22 106:9

**privy** 94:4

**probability** 58:18

**probationary** 18:11

**problem** 123:25 124:4

**procedure** 33:25 36:9 39:2,6

**procedures** 35:7 39:10 41:23 47:15

**proceed** 49:21

**process** 21:4

**procurer** 70:13

**produced** 10:4

**professional** 19:23 24:1,11 34:7 46:5 47:7 73:25

**program** 40:13

106:16 107:3 117:18

**projects** 23:24

**prominent** 14:19

**promote** 22:1

**prompted** 19:19

**pronounce** 20:24

**pronounced** 79:13 80:20

**pronouncing** 71:24

**propensity** 122:22

**proper** 117:21

**proposition** 11:9 83:24

**proprietary** 106:17

**prosecution** 27:17 30:8,22

**prosecutor's** 33:21

**protect** 75:11

**proved** 109:15

**provide** 11:17 16:16 22:5 31:2,16,20 32:9,13 34:18 47:17 61:4 81:13

**provided** 7:3 10:18 11:11,12, 21 17:13 21:22 25:11 32:20 37:9 40:21 42:1 59:21 105:19 118:7 131:17

**providing** 16:25 21:23 58:11 120:19

**proximity** 62:9 125:2

**public** 15:16, 20 16:7 17:7,17 21:4 36:7 111:7 112:5,6 113:2

**publication** 36:11,20 39:20 44:22

**publications** 44:20

**published** 39:2

**pull** 128:18

**pulled** 63:2 130:8,21

**purchased** 106:18

**purported** 116:25 122:21

**purportedly** 121:1

**purpose** 79:7 106:6 125:6

**purposes** 74:24 82:8 97:22 117:5 122:15

**pursuit** 38:23 39:17 68:24

**pursuits** 30:24 31:19 35:7 38:17 39:14

**put** 10:24 45:19 48:23 66:3,14, 15,20 82:18 83:17,21 85:13 86:14 105:22 106:6 108:10 110:8 111:3 112:17,20 122:8 130:5

---

**Q**

**qualified** 69:13

**qualifies** 69:17

**quality** 27:2 94:16

**quantity** 94:17

**question** 8:7 10:24 12:6 17:16 26:9 29:5 34:6 42:15 43:12 45:2 48:23 50:8 52:25 53:13,15 55:17,21 56:21 59:12 62:16 69:3 71:21 74:18,19 86:12 88:13 90:12 91:21 96:3 97:9 99:21 113:9,11, 16,18 114:1,2 117:5 123:13, 21 124:4 125:16

**question's** 71:19

**questionable** 123:11

**questioned** 11:13,14 94:24 97:12 112:12 116:14

**questioning** 73:14 95:21,22 97:14

**questions** 25:12 48:11 67:8 74:1 90:19 91:17 109:12

**quibbling** 71:15,18

**quick** 57:24 72:21 123:4 133:7

**quickly** 72:6 79:16 90:18

---

**R**

**race** 65:12

**radio** 38:23 66:15

**radios** 63:21

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

407.423.9900   www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

Toll Free 855-MYDEPOS

**raise** 5:17

**ran** 84:4,9 113:22

**ranges** 34:1

**rank** 18:9 19:7

**ranking** 17:20

**ranks** 68:16

**re-ask** 115:7

**reach** 21:16

**read** 13:11 29:14 30:9,23 36:18 39:10 52:7 59:23 63:1,25 66:22 70:16,19 75:9, 13,25 76:19 77:13 78:20 80:6 84:8 85:12,21,23 86:23 87:16,25 88:2,11 89:11, 13 92:22,23 93:24 94:7,10 96:16 98:11,25 99:4,8,10,11 100:8,12,13,14 101:22 105:19, 20 114:19 121:16,19 122:1 125:23 127:8,10,12 128:7,18 131:7 132:12,14

**reader** 38:7

**reading** 8:5 36:19 38:10 46:15 49:4,9 50:19 58:10 91:3 93:23 98:18 104:7 114:9 115:23 116:10

**reads** 58:12 69:21 96:9 128:20 129:5

**ready** 23:8 103:10,14

**real** 123:4

**real-** 68:7

**reason** 8:14,17 60:3 73:5 78:10 86:24 93:25 116:23

**reasonable** 26:10 39:11 42:6,8,15,21 43:12 91:9 92:25 93:5 113:16

**reasonablene ss** 42:22

**reasons** 66:15 76:2 111:16 130:24

**recall** 8:5 10:12 27:9 28:23 29:2 37:10 49:4 56:9 70:19 91:3 92:6 93:23 100:5 104:7 114:9 124:3

**receive** 41:2 106:7

**received** 6:9 7:16 58:22 59:5 65:25 75:4 107:8 129:2

**receiver** 107:8

**receives** 49:24

**receiving** 54:7

**recent** 32:16

**recently** 15:22, 24

**recess** 48:6 54:25 95:11 123:5

**recognize** 96:18

**recollect** 85:24

**recollection** 7:9 29:24 94:19 104:15 114:21

**recollections** 130:11

**recommendati on** 34:10

**recommendati ons** 34:17

**recommended** 34:18

**reconvene** 122:25

**record** 5:2,12, 16 29:14 30:9 43:9 48:5,8,17 53:24 54:4,5,7, 24 55:2 63:9 72:13 76:19 82:10 86:9,19 91:19 92:2,3 95:10,13 98:11 99:1 101:18 112:11 114:10, 15 116:20 123:4,7 133:8

**recording** 11:24

**records** 9:8 44:1 45:5

**redacted** 48:22 101:22

**refer** 9:2 11:15 62:14 112:6

**reference** 37:11 70:24 126:9

**referenced** 39:21 128:10

**references** 36:11

**referred** 10:1 61:2 88:3 107:12

**referring** 8:20 37:13,20 38:8 47:1 98:4 104:22,24

**reflected** 43:25 44:2

**regard** 73:6 91:10 93:1 124:9,10

**regarded** 91:20 92:9

**Regular** 132:22

**relate** 55:18 56:16 74:2

**related** 44:19, 21

**relates** 55:15 59:12

**relay** 63:6

**release** 16:25

**relevant** 12:7 80:4

**relied** 8:16 10:14 39:22 54:2 99:22 110:1 129:11

**rely** 99:22 112:23 126:20 128:10

**relying** 99:6,8

**remainder** 77:13

**remained** 70:22 77:11,15

**remark** 119:2

**remarks** 51:10

**remember** 6:13 7:13 8:13 9:1 10:7 20:12 25:3 27:4,8 28:9,12 36:17 49:9 50:19 54:13 70:22 93:22 107:18 114:19,20 127:7 130:14, 16

**removed** 51:22 123:24

**render** 59:2

**rendered** 40:15

**Rene** 70:25 72:14,24 75:2

76:17 102:17

**rep** 55:7 115:2

**repeat** 8:7

**rephrase** 88:13

**replied** 115:20

**report** 6:8,10, 15 7:17,19,23 8:8,16,20,21,22 9:2,3 12:9,22 13:1,12,24 14:2,6,7,10,14, 18 21:12 37:11 38:4,5,7 41:18 43:14,24 44:13 45:7,9,12,16,19 46:2,16 49:22 51:2,17 53:2 54:2,10 57:17 58:12,21 60:7, 11 70:24 71:1,2 76:7,16,19,20 77:24 78:17 79:24 85:20 87:4 88:11 95:25 97:20 98:2,5,7 99:6, 14 100:6,15,23 101:4,9,13,18 102:11 104:4,6, 8,10,14,22,24 105:13 108:11 115:9 127:13, 21,24 128:2,19, 25 129:5 130:7

**reported** 6:7 17:2

**reporter** 5:1, 11,15,22 48:4,7 54:23 55:1 95:9,12 103:18 123:3,6 125:25 132:12,15,18, 22,24 133:2,6

**reporting** 11:1, 18 129:14

**reports** 7:2 8:24 10:18 37:10 48:21 70:16 84:23 87:4 89:11

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

99:17 100:1,3, 16,20,21 109:19 116:13 127:16 128:23

**represent** 6:2 72:25

**representation** 117:4

**representative** 48:14 51:9,13

**represents** 9:5,7

**request** 37:6

**requested** 61:17 68:23 126:1

**require** 7:1

**required** 82:18 97:13

**rescue** 63:20 76:22,25 79:5 80:1

**research** 7:1 44:19,21 45:1 63:13 64:24 65:5

**reserve** 44:13, 14

**residence** 7:8

**resident** 24:13, 15

**Residents** 111:10

**resource** 60:19

**resources** 42:4 46:20 58:16,19 62:2 72:4,12 74:7,25 115:7

**respect** 56:4, 25 61:23

**respectfully** 41:15 62:5

**respond** 49:25 50:14 59:2 75:2

91:13

**responded** 12:21 50:11 51:1 61:17 72:14,18 75:24 84:6,12 100:4

**responder** 75:2 86:16 91:5,10

**responders** 72:16 73:1 74:12 75:20 78:11 93:9 120:12 130:4

**responding** 68:9 86:5 92:19 100:16

**response** 8:9 10:10 12:24 72:6 74:1,7 90:13 120:17

**responsible** 96:25

**responsibly** 60:12

**result** 38:22 131:21

**resulted** 25:13 38:17

**resulting** 25:15

**results** 38:21

**resume** 15:22

**retained** 6:3,12 28:20,24

**retainer** 12:18

**retire** 19:22 20:23 22:17

**retired** 22:17

**retrieve** 21:17

**return** 23:4

**returning** 105:13 117:6 130:7

**review** 6:25 7:2

10:16 12:17,20, 23 27:16 28:6 30:13,17 34:8, 18 36:8 39:3 43:6 44:5 45:5, 6,15 46:5,7 47:4,17,22 48:25 59:19 71:2 72:13 82:9 83:4 86:9 89:19 105:8 112:4 120:3,4 122:24 131:23

**reviewed** 7:11, 14,16,20 8:8, 12,15,18,19 9:10 41:25 43:20 46:22 54:13 59:24 62:12 71:2 76:9 85:5 87:14 89:16 92:2,4 97:17 100:2,16, 22 114:3,22 127:17 130:13

**reviewer** 6:19

**reviewing** 31:2 33:18 40:23 45:13 86:19 106:9

**reviews** 24:1

**revisit** 74:12

**Richards** 103:16

**ring** 7:4,5,7,9, 22,23,25 9:22

**risk** 21:11 31:11 32:1,4 35:2,12

**roaming** 112:9

**robbery** 37:16

**Robert** 103:17, 19

**Robles** 14:20 98:2,5,13,19 99:6 100:15 104:9,16,23 105:2 108:11 127:8,14,18

128:2,5,14 129:6

**Robles'** 99:13

**Rodriguez** 5:11,14,17 6:1 29:4 45:3 48:10 52:5 55:4 59:17 95:20 101:8 123:9 126:3 127:25 131:24 132:1 133:7

**role** 18:4

**roll** 16:10

**rolled** 117:7,8, 11

**roughly** 6:15 19:5,16 28:7

**run** 23:19

**Rutherford** 13:8,13,17

**Ryan** 5:5 46:16 54:19 95:1,16

**Ryan's** 52:24

—————

**S**

—————

**S-A-V-E-L-L-I** 103:22

**S-C-H-W-A-R-Z** 102:2

**S-T-E-P-H-E-N** 102:3

**sad** 130:15

**safe** 7:19,24 41:7 54:2

**safety** 21:4 36:7 42:3 112:6 113:3

**San** 16:18 22:18,25 23:2

**save** 79:6 80:2, 13

**Savelli** 14:20 103:22

**scenario** 25:20

**scene** 11:2,13 17:14 36:5 44:25 50:10,12, 19 51:21 52:16 53:2,10,11,18 54:3 59:3 70:7, 14,21,22 71:1, 3,12 73:3 75:3, 7,10,11,12,20 76:22 77:2,11, 15,18,24 78:3, 12 79:14 80:1, 6,20 82:6 84:5 86:5,15 90:4,20 92:13,19,21 94:22 97:3,12 98:3,16,21 100:9 108:12, 13 111:22 112:1,12 113:16 121:13, 19 122:5 124:1, 5,11,19,25 125:1,8,12 128:8,17 129:17,21 131:18

**scenes** 52:9 120:21

**scent** 70:1,10, 17 79:8

**scent-contaminated** 71:12

**scent-wise** 73:4

**scheme** 56:23

**school** 115:15

**scientific** 39:12

**scope** 12:23 53:5 65:17 67:13 68:1

**screen** 9:12

**search** 13:19 36:6 52:17 57:15 58:13 61:9,24 62:13 63:19 73:12


MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

Toll Free 855-MYDEPOS

76:1,5 83:11 98:16 111:2 112:1 128:3,16 129:20

**searched** 23:22

**searches** 62:8 64:23 68:18,25 111:1,14

**searching** 62:19 65:15 111:11

**seated** 72:7

**sec** 96:5 104:16

**section** 63:17 76:20

**sections** 45:20

**secure** 52:16 125:8

**secures** 128:3

**seek** 50:1 108:20

**segue** 20:2

**seizure** 36:6

**self-dispatched** 75:23

**sell** 22:1,2

**send** 63:10 132:5

**sense** 70:12 105:11

**senses** 49:23

**sentence** 98:17 126:25 128:13,17 129:19 130:18, 19

**separated** 17:25 20:6,21

**separation** 18:2

**sergeant** 18:15,16 61:15

**sergeants** 34:2

**serve** 125:14

**served** 6:7

**serves** 26:5 65:2 105:21

**service** 20:11 22:1 54:10 61:11

**serving** 98:16 128:16 129:20

**session** 33:7

**sessions** 47:12

**set** 73:5 82:7, 22 83:10

**Seth** 101:24

**sets** 39:20

**shared** 97:10, 12

**sheet** 101:4

**sheriff** 5:7 34:16 50:16

**sheriff's** 6:5 8:9 10:3 14:23 23:2,25 40:2,11 47:2,5 48:18 49:2,11 51:7 57:6 58:23 63:14 65:25 72:4 73:23 74:6,24 75:19 81:7 87:12 94:3,23 97:15 99:15,21 107:21,23 108:2,4 112:19 113:13 114:4 126:10

**sheriffs** 34:2 50:11 106:4 129:2

**shift** 115:1

**Shiloh** 125:23

**shirt** 65:10

**shoot** 94:15 122:4

**shooter** 83:13, 14 84:22 94:11 121:10

**shooting** 6:22 8:6,10 10:4,11 12:3 17:22 25:17,22 33:12 34:21 35:18 36:13 49:16 50:6 51:2,19 52:2 55:25 56:5,18 58:21, 22 59:7,20,21 60:4,15 72:15 74:7 75:3 81:6 83:24 84:1,6 85:16 86:2,10, 20 87:18 88:12 89:9 90:15,24 91:11,13 92:10 93:2 94:6 96:19 97:8,10,23 98:20,25 105:3 107:22 108:3, 16 110:5 114:6 120:18 121:14, 24 123:16,18 131:2

**shootings** 33:4 35:3

**shorter** 103:8

**shot** 50:24,25 53:18 80:14 81:8,18,22 82:10,15,25 83:6 84:13 86:24 88:20,22 93:20,25 94:20 98:15 121:6,8 128:16 129:7 130:23 131:21

**showing** 72:6 91:5

**shown** 96:9,10

**shut** 50:19 118:10

**sic** 103:23 106:4,10 113:10

**side** 19:20 33:20,22 117:11 122:7

**sign** 54:20

**silos** 21:10

**similar** 10:21 42:21 106:12

**similarities** 55:9

**similarly** 40:4

**simply** 39:19 74:2

**simultaneousl y** 111:4

**single** 9:9 36:11

**sir** 5:22 6:11, 20,24 7:3,17 8:4 11:7 12:5, 11 14:1,5,9,13, 17,21 15:3 16:1 17:11 18:8 19:4 20:25 22:2,20 23:3 24:9,12, 14,18 25:16,19 26:11,14 27:4 28:18 29:7,10 30:11 31:9 32:11,15 33:9 34:25 41:14 43:16,19 48:16 51:23 57:21 58:3,20 61:21 62:23 96:8,17 100:7,25 102:4, 19,23 104:11 105:14 106:11, 20 124:22 126:5 129:1,9 130:20 131:25 132:4,17

**situation** 38:25

**situations** 10:22 16:12 70:14 107:10

**sliding** 118:11

**slip-on** 61:1

**slip-ons** 61:1

**slow** 130:1

**small** 124:21

**software** 21:5, 8,9 106:17

**sole** 24:25 84:11 116:7 123:23

**solely** 56:16

**solemnly** 5:18

**solution** 21:5

**sort** 79:8

**source** 40:5,8 46:8 76:5 84:11 87:3,5 88:16 99:15 116:7 126:23 127:6 131:5

**sources** 126:15

**Southeastern** 26:25

**spaces** 21:3

**speak** 12:10 16:21 17:6 38:5 70:25 87:22 127:25 130:1

**speaking** 33:17 49:22 53:22 119:15

**speaks** 13:24 43:17

**special** 17:1 23:10,11,24 73:2

**specialized** 67:5

**specializing** 23:11

**specially** 69:2, 4,7 71:16

**specific** 100:5 128:4

**specifically** 12:14,16 21:6 57:8 71:23

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

94:6,8 109:6
118:10 126:17

**speculate**
51:25

**speculation**
52:4

**spell** 101:25
102:1,5,24
103:18,23

**spelled** 14:12

**spelling**
103:19

**spend** 6:5

**spoke** 91:22

**spoken** 131:15

**stagnant**
111:23

**stand** 27:12
29:2 78:4

**standard** 24:1
34:7 44:22 46:1

**standards**
19:23 44:20
73:25

**standing** 20:13
77:4 80:8 117:8

**start** 9:13
19:24 34:11
38:23 78:14
86:14 90:19
129:1

**started** 55:21

**starting** 71:6
77:7,21 78:22

**starts** 57:20
129:12

**state** 5:3,12
15:6,8 23:22
25:25 29:1,16,
19,21 31:17
32:13,14 86:7
100:24

**stated** 42:7
47:11 71:3
79:16 86:22
99:2 119:2

130:8,18,21

**statement**
36:7 70:19
71:11,23 73:15
76:13 79:24
90:1,6 93:18
94:5 105:22
116:23 117:22
121:1 129:19

**statements**
10:9 89:24
92:12,14 94:9
113:3 130:14

**states** 19:21
26:25 39:4 41:5
85:12 105:10
112:18

**status** 31:14
49:15 50:5

**stay** 111:12
118:17 131:8

**step** 31:23
129:23

**Stephen** 102:2
103:5

**steps** 118:23

**stipulated**
5:16

**stop** 41:5,9
61:5 129:24

**stopped** 80:19

**street** 52:22
106:8 117:10
127:3

**strictly** 23:8

**structurally**
115:9

**structure** 57:9

**style** 29:15

**subject** 25:7
32:24 35:14,21,
22 71:4 78:5
95:20 115:8

**subjects** 68:19

**subordinates**
34:17

**substandard**
57:7

**substantial**
45:11

**substituting**
42:17 95:15

**subsumed**
8:23

**successful**
65:13

**succumbed**
77:3 80:7

**sued** 5:9

**suffice** 61:8

**sufficient**
60:11 74:25
91:22

**suggest** 43:23
53:25 90:10
113:9

**suggested**
110:22 119:2

**suggesting**
79:1,9,12
108:24 118:12

**suggestion**
85:14 110:24

**suited** 5:8

**summarized**
126:6

**summary** 28:3

**summoned**
95:16

**supervising**
68:17

**supervisor**
18:15 68:22

**supervisors**
77:2 80:6

**supplemental**
102:13,15,16
103:7,9,21,25
104:4

**supplied** 43:23
46:8 84:10

**support** 21:19
39:22 40:15
59:25 64:13
113:12 126:7

**supporting**
41:17

**suppose** 34:5
43:12

**suspect** 40:25
42:9 63:6 64:5
69:22 72:1
77:9,19 78:24
81:2 83:19
84:16 86:2,10,
17 88:1 89:17
90:7,8,11,14,
22,24 91:3,10,
20 92:5,6,10
93:2 96:11,14,
23 97:23 98:1,3
101:4 102:7
105:18 110:16
112:9,16,24
113:1,4,5,6,17
118:9,22
119:11,18,19
120:5,21
121:20 122:12,
17 125:22
128:15 131:20

**suspect's**
127:1

**suspected**
98:24 121:14,
23

**suspects** 77:9
78:1,24 88:5
111:11 122:10

**suspicion**
92:21,23 94:18

**suspicious**
93:1

**sustained**
20:15

**swear** 5:18

**sworn** 15:1,4,8
87:10 119:25

**syllabus** 32:23

**system** 21:12,
15 23:19,20
26:21 106:4,10
107:4,12,16,20,
24 108:1,5
111:24

**system's**
107:16

**systems** 21:1,
25 22:16
106:12 107:17

---

**T**

**T'YONNA** 51:9
105:4

**T'Yonna's**
66:9

**T-E-A-R-S**
103:2

**T-E-J-E-R-A**
14:12

**tactical** 64:8,
10 68:15

**taking** 62:5
67:11

**talk** 35:9 38:20

**talked** 53:17
97:25 112:7

**talking** 57:8
63:4 71:25
79:19 109:6,13,
14 127:22

**talks** 81:1
82:11 88:1 92:4
129:1

**tangentially**
35:20

**tape** 123:24
124:2 125:7,14

**tapes** 9:17

**tasked** 15:20
16:11 107:5

**taught** 41:3

**Taylor** 12:15
14:4 51:12 85:2

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

103:17 115:14

**Taylor's** 52:20

**teach** 39:9

**teaching** 31:8 33:3,7 34:6,21 35:1 39:7

**Tejera** 14:12

**tells** 93:19

**template** 45:16

**tenured** 18:12, 13

**term** 37:13 46:13 71:17

**terms** 43:4,5

**testified** 24:19, 21,22 26:1,3 27:10 29:23 44:7 75:18 97:16 116:16 117:3,5 119:5

**testify** 28:14 90:1

**testifying** 42:12

**testimonial** 29:3,5,11 30:2 31:2

**testimony** 5:19 25:2 65:24 115:4 119:1,25

**that'd** 123:1

**thereabouts** 50:13

**thing** 111:25 125:25 129:12

**things** 23:18 38:25 41:1 45:25 53:9 56:23 58:19 67:4,18 70:4 80:17 83:10 106:15 111:16 112:7 122:24 127:10

**thought** 8:21 20:1 31:22 91:4

129:24 130:14

**threat** 52:18 93:11 96:15 108:18,22 109:6,14,17 110:2,3 111:20 112:22 113:5 117:24 122:18 125:15

**time** 11:19,24 19:22 20:1,4,5 21:4 22:9 32:17 45:22,24 50:16 60:1 66:6 67:1, 7,12 68:8 71:5 72:19 77:20 78:6 81:16 84:19 85:3,15 106:13 107:16, 19 109:5 111:3 112:14 113:14 119:15 120:1 124:2 128:3,4 132:2,20,24

**timeline** 112:3 126:11,22 127:5,22

**times** 23:16 52:9 64:21 68:21 115:17 130:1

**timestamp** 127:23

**title** 15:18 31:15 36:13 101:15 128:22

**titled** 76:17

**today** 6:6 24:10 25:21 29:2 95:3 132:2

**told** 75:25 76:4 78:16,18 82:1 87:18,21 88:21 91:1,3 111:15 112:24 113:13, 15,22,25 116:6

**tool** 73:14

**tools** 62:2 115:6

**top** 98:9 101:10,12 104:25 129:4

**topic** 33:2,10

**topics** 44:19, 21

**totality** 10:13, 14 100:7 115:12

**touch** 36:20 37:3 131:10

**touches** 35:18, 20

**touching** 36:25

**track** 58:15 71:7 77:8,21 78:14,23 79:8 80:12,23 101:7 105:16

**trackable** 69:15,18

**tracking** 69:9 70:10

**tragedy** 74:1

**tragic** 73:16, 17,19

**train** 41:24 62:7

**trained** 69:2,4, 7 71:16 73:2

**trainee** 18:21 19:1

**training** 18:14 31:16 32:6,9, 10,14,20 35:14 36:9 39:7,10 40:13 41:20 42:21 43:4 47:12

**transcript** 7:11,18,20 132:20

**transferring** 23:20

**transmit** 63:23

**transport** 63:20 94:22

**travel** 22:11 32:8 112:17,24

**traveled** 32:13

**treated** 78:12

**tribal** 31:17

**true** 11:23 87:23 88:5 117:23 119:4,6, 23

**truth** 5:20

**turn** 9:4 88:5 126:3

**turnaround** 132:24,25

**Turner** 7:8,12 51:8 55:6,19 56:17 57:2 115:2,12 116:9, 14 117:3,5 119:23

**Turner's** 7:18 119:25

**type** 63:12,13 107:1 111:20 112:17 118:17

**types** 37:17

———————

**U**

———————

**U.S.** 31:17 32:9 41:21

**ultimate** 43:12

**unable** 71:7,13 77:21 78:6

**unarmed** 122:9

**unauthorized** 125:9

**uncommon** 88:3

**uncontaminat ed** 71:6 77:20

**underpins** 122:3 131:5

**understand** 12:6 49:20 50:8 56:1,3,23 66:16,21 73:19 75:14 79:21 86:16 105:2 115:12 119:7, 13 123:13,21 124:4 129:21

**understanding** 35:6 48:11 50:15 51:4 53:12 67:14,22 75:17,23,24 91:18,23 97:9 109:17 112:11 115:18 116:8 119:6,10 124:10,20,24 127:11

**understood** 48:24 55:23 65:24

**undetected** 52:20

**uniform** 39:6 117:8

**uniformed** 49:1

**unique** 59:22

**unit** 18:25 38:17 58:14 59:25 61:9,12, 18 62:6,10,17 63:4,10 64:13, 22 66:3,25 67:3,5,16 72:22 74:8,9,11 110:23

**Unit's** 106:3

**United** 19:21 26:25 39:4

**units** 50:15 58:15 59:10 61:9,14 63:19 64:6,17

**universal**

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900    www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

106:12

**unknown** 29:18

**unlike** 39:12

**unreasonable** 91:4,6,16

**unreasonably** 42:19

**unrelated** 59:6,7,13

**unsubstantiat ed** 99:20

**unsure** 77:25

**untangle** 52:13

**updated** 107:18

**urban** 60:13 65:21

**user** 70:13

**Usual** 132:23, 25

**utilize** 72:11 108:15,25

**utilized** 72:5, 22 107:3,20 110:10 111:17

**utilizing** 107:23 109:17

———————

**V**

———————

**vague** 46:14 71:18

**Valdez** 101:20

**valid** 77:7 78:22

**validated** 20:14

**vantage** 34:23 62:16 88:15

**variety** 70:13

**vary** 39:14

**Vasquez** 101:2

**Vass** 101:3

**vehicle** 9:24 58:24 66:2 69:21 72:7 77:5 79:2,4 84:4 85:15,22 89:15 90:3 94:13 121:7,11 124:15 130:9, 22,23 131:3

**venues** 32:8

**veracity** 73:15

**verbatim** 36:18 46:15

**verify** 98:9

**versus** 38:2 39:17 72:19

**Vescio** 5:5 46:13,17 47:25 48:3 52:3 54:20 59:11 71:17 74:17 95:6

**viable** 84:18 108:18 109:6, 14

**Vice** 18:22

**vicinity** 50:16, 18,23

**victim** 77:1,3 78:11 79:13 80:7 88:25 89:2

**victims** 48:22

**video** 7:4,5,7, 22,23,25 8:25 9:9,10 10:4,5,8, 12,17 11:2,3, 16,17 12:1 97:17

**videos** 9:6,10, 13 127:16

**view** 25:24 76:12

**violence** 38:15 72:10 122:22

**violent** 75:15 96:11 120:22

**Virginia** 27:5, 25 29:1,16,19, 21

**virtually** 5:10

**visibility** 67:17

**visit** 47:11

**visual** 61:25 64:11

**visually** 62:19

**vitae** 36:19

**vital** 113:19

**volatile** 109:15

**volunteered** 113:18

**vulnerable** 108:20,21

———————

**W**

———————

**W-I-L-B-E-N-S** 102:24

**wait** 80:18

**waive** 132:13

**walk** 40:25 41:16 52:19,21, 22 85:2

**walked** 42:10 69:23 70:7 75:11 84:9,25 113:17 119:12 122:21

**walking** 80:21 81:3 106:8 113:7 127:3

**wanted** 19:22 21:18 43:9 68:18

**warn** 105:16 125:14

**warned** 118:22

**warning** 85:2 105:24 108:15, 17 109:1,2 111:9 117:20 118:12,17

**warnings** 52:17 110:10 115:5 117:16

**warrant** 98:16 128:4,17 129:20

**ways** 108:8

**weapon** 112:17 122:10

**weapons** 122:11

**wearing** 60:17, 25 65:9

**weather** 67:17

**webinar-based** 32:6

**webinars** 31:20

**week** 32:17

**weeks** 6:14 32:18 33:8 34:20

**welfare** 42:3

**well-respected** 46:14

**well-run** 39:8 46:5,9,19 47:7, 10

**well-written** 47:8

**wellbeing** 42:3

**West** 22:8 29:1, 16,18,21

**White** 14:8

**who'd** 80:14

**Whoops** 76:10

**wide** 35:7

**Wilbens** 102:23

**window** 117:11 126:18

**windows** 118:10

**Winter** 5:10

**withdraw** 46:17

**witnesses** 96:19

**woman** 114:6

**word** 119:4

**worded** 88:13

**words** 25:17 26:12 31:14 41:3 62:2 80:9

**work** 16:14 65:22 107:4

**worked** 16:7 18:21 20:18 22:14,21 23:18 61:20 64:18 69:1 110:25

**working** 18:23 32:4 60:2 62:9 64:22 68:6

**works** 66:7 132:8

**worthwhile** 72:8

**would've** 60:1, 18 61:8 72:8, 10,11 86:21 122:10

**wrapped** 50:9

**write** 82:18 85:25

**writes** 76:8

**writing** 6:7 44:4 45:12 82:11 89:24 96:1

**written** 44:22 45:9 46:2 67:15,18 76:16 81:24,25 82:1 85:18 91:1 97:21 99:14 101:7 105:9,13 116:1

**wrong** 123:15,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

wrongdoing 33:24

wrongful 30:8, 21,22 31:3,4

wrongfully 28:2

wrote 6:10 43:20 47:16 51:15 78:9 79:25 81:25 85:20 105:15

WVSP 29:18

_____

Y

_____

year 18:23 19:2,3 32:17,19 33:2,5 61:21

years 18:4 19:12,13,18 20:10,18 22:21 28:14,16 32:12 40:6 41:20 43:25 60:9 61:13 106:1

young 38:12 65:9

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS