UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:25-cv-00252-PGB-NWH

BRANDI TURNER, individually, and
as the Personal Representative for the
Estate of T'Yonna Major, and GARY
LYONS as the Personal Representative
for the Estate of Dylan Lyons

       Plaintiffs,

vs.

JACKSON B. KEYES, an individual,
and JOHN MINA, in his official capacity
as Sheriff of Orange County,

       Defendants.

_____/

## JOINT STIPULATION OF AGREED MATERIAL FACTS
## FOR MOTION FOR SUMMARY JUDGMENT

Plaintiffs BRANDI TURNER and GARY LYONS and Defendants JOHN

MINA and JACKSON B. KEYES, by and through undersigned attorneys and

pursuant to the Case Management and Scheduling Order (Doc. 18), hereby stipulate

and agree to the following material facts for resolution of Defendants' motion for

summary judgment.

**AGREED MATERIAL FACTS**

1.      On February 22, 2023, at approximately 11:17 am, OCSO patrol deputies responded to multiple 911 calls about a shooting in the vicinity of 6114 Hialeah St. in Orange County. (Ex. 1, Det. Robles Investigative Report at 5).

2.      At the scene, first responding deputies discovered a woman, later identified as Nathacha Augustin, laying on the ground just outside of a white Hyundai with a gunshot wound to the left side of her chin. (Ex. 1 at 5).

3.      Responding deputies and Orange County Fire Rescue rendered first aid, but Ms. Augustin was pronounced deceased on scene at 11:29 am. (Ex. 1 at 5).

4.      Calvin Collins was at the scene when deputies arrived, claiming to be the driver of the vehicle. (Ex. 1 at 5).

### Statements Made by Calvin Collins at the Scene

5.      From approximately 11:27 to 11:40 am, deputies questioned Collins at the scene. (Ex. 2, Body Cam 1).[1]

6.      Collins stated the following:

   a. Collins was the driver of the vehicle when he heard a loud "Boom!" (Ex. 2, Body Cam 1, at 9:30-9:45).

   b. Collins' "little cousin" was in the car at the time but jumped out and said "Go!" (Ex. 2 at 9:45-9:53).

   c. Collins continued to drive because he did not know where the shot came from. Specifically, Collins stated: "I don't know where they coming from." (Ex. 2 at 9:53-9:54).

---

[1]The clock in the upper right displays the current UTC time, which on February 22, 2023 was five (5) hours later that EST.

    d. Collins started to drive away but stopped once he noticed that Ms. Augustin was injured. (Ex. 2 at 9:54-10:01). [2]

    e. When asked where his "little cousin" is, Collins replied: "I'm by myself" indicating that he did not know where his "little cousin" was. (Ex. 2 at 10:01-10:07).

    f. When asked: "Who is your cousin to you?" Collins replied by shrugging his shoulders and saying, "I don't know." (Ex. 2 at 10:08-10:15).

    g. Collins explained that as soon as he picked up his "little cousin," he started giving turn-by-turn driving directions, and then he heard a loud gunshot. (Ex. 2 at 11:00-11:30).

    h. When asked, "What's your cousin's name?" Collins said, "Keith" (Ex. 4, Bodycam 2, at 17:30-17:17:37).

    i. When asked "What's his last name," Collins stated that he did not know but explained that Keith is "on my dad's side," and further stated that Keith's dad's last name is "Moses." (Ex. 4 at 17:40-17:55).

    j. Collins did not know Keith's date of birth but thought he was around 17 or 18 years old. (Ex. 3 at 17:55-18:07). Collins described him as 5'10", light-skinned, and wearing a grey shirt. (Ex. 4 at 18:10-19:30).

7.    After questioning Collins, Deputy Louis Tejera Jr. stated: "I'm not sure if the whole cousin thing is real." (Ex. 4 at 19:30-20:15).

8.    Deputy Tejera theorized that, because there were no bullet holes or broken windows, the shot came from inside the vehicle. (Ex. 4 at 20:15-20:27).

---

[2]Based on security camera video recovered from several homes along Hialeah St., Det. Savelli determined that Moses most likely exited the Hyundai between 1649 and 1717 Hialeah St, or 7 to 8 doors down from where Collins brought the Hyundai to a stop. (Ex. 3, Savelli Depo Transcript, at 15:12 – 18:022).

3

### Keyes Involvement in the Investigation

9.      Keyes arrived on scene at approximately 11:20 am. He was the scene supervisor. (Ex. 5, Deposition of Keyes, 28:11-12, 30:19 – 31:02).

10.      At 11:40 am, immediately following the initial questioning of Collins, Keyes approached Deputy Tejera and asked if Collins said there was another person in the car. Deputy Tejera confirmed that Collins said there was another person in the vehicle, whom Collins referred to as his cousin. Keyes then asked Deputy Tejera if there was a description of the third person, and if he knew where the third person went. Deputy Tejera relayed the physical description given by Collins and told Keyes that the third person was named Keith. (Ex. 4 at 20:30 – 20:54; Ex. 5 at 49:03-17).

11.      Keyes then directed deputies to canvass the area to locate (1) potential witnesses, (2) the third person described by Collins, and (3) possible "staring points" for a K9 unit to track the third person. (Ex. 5 at 25:08-23, 49:18 - 01).[3, 4]

### K9 Deputies on Scene

---

[3]After receiving an automated notification on his cell phone, Turner's husband, Tokiyo Major called Turner and told her that the Ring camera was activated by a police officer coming to the front door. (Ex. 7 at 08:19 – 09:06).

[4]A "starting point" is a place where a person is known to have been and where a K9 can go to get that person's scent to try to track that person. (Ex. 5 at 44:08-20).

12.    K9 Deputy Rene Davila arrived on scene at 11:25 am, and observed Fire Rescue and fellow deputies rendering emergency medical aid to Augustin. (Ex. 6, Davila Incident Report; Ex. 5 at 40:02-05).  Deputy Davilla remained on scene as the investigation unfolded.

13.    Later, when Collins revealed that there was a third person (Keith) in the car, Davila determined that "due to the time delay as well as no known uncontaminated starting point for a K9 track, [he] was unable to deploy [his] K9 partner." (Ex. 6; Ex. 5 at 45:07 – 46:21, 47:12-15).

14.    At 11:40, K9 Deputy Angela Keller arrived on scene. At 11:48 am she went to 5914 Harrington Dr. (Turner's residence) and attempted to make contact by knocking on the front door. (Ex. 7, Ring Video – Canvassing; Ex. 8, Turner Deposition Transcript 2, at 08:09-18; Ex. 9, Keller Incident Report). Deputy Keller determined that "the scene was heavily contaminated with multiple deputies, fire rescue and citizens eliminating a starting point. A direction of travel for the potential suspect was also unknown." Therefore, Deputy Keller did not deploy her K9 partner. (Ex. 9).

### *Brandi Turner's Interactions with a Deputy at 12:15 pm*

15.    At 12:15 pm, Brandi Turner arrived home. (Ex. 8, Turner Deposition Transcript 2, at 12:06-16;  Ex. 10, Ring Camera - Turner Arrives at Home).

5

16.    As Turner was approaching her house, she noticed approximately six parked police vehicles. (Ex. 8 at 35:11-16). At the corner of Hialeah St. and Harrington Dr., (two houses down from Turner's house), Turner stopped her vehicle and asked an OCSO deputy standing at the corner: "Is everything okay around here?" (Ex. 8 at 38:10 – 39:25).

17.    The deputy responded: "Everything [is] under control," "just keep going." (Ex. 8 at 41:10-22).[5]

### The Nathacha Augustin Homicide Investigation

18.    At 12:06 pm, Collins was taken into custody (Ex. 11, Collins In-Custody Interview Transcripts, 13:11 – 14:04) and transported to OCSO Central Operations for further questioning. (Ex. 12, Bodycam of Collins Transport; Ex. 9, Transcript of Collins Interview, at 13:11 – 14:19).

19.    At 12:20 pm, approximately five minutes after Turner's encounter with a deputy on the corner of Hialeah St. and Harrington Dr., Detective Robles, the lead detective assigned to investigate the homicide of Ms. Augustin, arrived on scene. He observed that all the windows of the vehicle were up, there were no bullet holes on the exterior, and there was one spent .40 caliber casing inside the vehicle. (Ex. 1 at 5).

---

[5]Keyes has no recollection of the encounter. (Ex. 5 at 53:01-08). For summary judgment purposes, Turner's account of this interaction is assumed to be true.

20.     In response to media inquiries, the Sheriff's Office sent the following statement at 12:54 pm to various news outlets:

*Media Partners -*

*On February 22, 2023, at 11:17 a.m., deputies responded to the 6100 block of Hialeah Street in reference to a shooting. Upon arriving, deputies located a female in her 20's who had been shot. She was pronounced deceased on scene. The investigation is in the early stages and this is all the information we have for release at this time.*

(Ex. 13, Statement to Media).

21.     Det. Robles left the scene and arrived at Central Operations to interview Collins. The interview began at approximately 1:30 pm. (Ex. 1 at 6).

### Collins In-Custody Interview

22.     Det. Robles read Collins his Miranda rights. (Ex. 11 at 14:12-19).

23.     Collins told Det. Robles that he picked up Ms. Augustin, they drove around, and smoked some weed. He saw his "little cousin" walking and looking distraught, so he picked him up and asked him where he wanted to go. The little cousin immediately began giving turn-by-turn directions and then Collins heard a "Boom!". He stopped the vehicle, and his little cousin then jumped out and told Collins to "Go!" (Ex. 11 at 15:05 – 16:09).

24.     Collins said he did not have a gun on him at the time of the shooting and could not tell where the gunshot came from. (Ex. 11 at 21:15 – 22:03).

7

25.    Collins stated that his cousin's name is Keith, and he wasn't sure what his last name was, but Keith's dad's last name is Moses. (Ex. 11 at 27:23 - 30:14).

26.    Collins stated that he never saw Keith with a gun. (Ex. 11 at 35:06-08).

27.    Collins reiterated that he didn't know how the shooting happened and suggested that Keith jumped from the vehicle and told him, "Go!" because someone was shooting into the car. (Ex. 11 at 36:18-20, 37:05-10).

28.    Collins indicated that he would be able to identify Keith from a picture. (Ex. 11 at 43:20-23).

29.    Collins stated that he did not see where Keith went after he left the vehicle. (Ex. 11 at 66:10-12).

### The Second Shooting

30.    Turner arrived home at 12:15 pm and remained there until 1:55 pm when she left to pick up T'Yonna from school. She returned home with her daughter at approximately 2:15 pm while there was still a police presence on Hialeah St. (Ex. 8 at 25:04-12, 48:09-11, 49:12-15).

31.    Around 2:30 or 3:00 pm, Turner's husband returned home, took a bath, and prepared for a dental appointment scheduled for 3:30 pm. (Ex. 8 at 19:05 – 20:16).

32.    Around 3:30 pm, the Sheriff's Office finished processing the area, removed the tape, and departed. (Ex. 14, Savelli Investigative Report at 34).

33.     At approximately 4:00 pm, Moses entered Turner's house through an unlocked sliding glass door and shot T'Yonna and Turner. (Ex. 8 at 25:23 – 26:05). (Ex. 8 at 27:19-22, 29:14-18).  Before the shooting, Moses was an unknown person to the Turner household. (Ex. 8 at 26:10 – 27:05).

34.     At 4:03 pm, Moses exited Turner's home and approached a van at the corner of Hialeah St. and Harrington Dr. and shot a Spectrum News camera operator and reporter, Dylan Lyons, who died from his injuries. (Doc. 36 ¶¶ 39-45).

35.     In the days that followed Moses' arrest, Detectives would piece together security camera videos from residences along Hialeah Street and discover that after Ms. Augustin was shot, Moses got out of the car 7 to 8 houses down from the location where Collins stopped, walked along Hialeah Street, and entered the backyard of 5926 Harrington Dr., located at the corner of Hialeah and Harrington. (Ex. 14, Savelli Investigative Report at 35; Ex. 3 at 14:25 -16:01).

| | |
|---|---|
| */s/ Ryan J. Vescio* | */s/ Brian F. Moes* |
| Ryan J. Vescio, Esq. | Brian F. Moes, Esquire |
| Florida Bar Number: 14032 | Florida Bar No. 39403 |
| DeLayne D. Penland, Esq. | G. Ryan Dietrich, Esquire |
| Florida Bar Number: 1024836 | Florida Bar No. 1007940 |
| Counsel for Plaintiffs | Counsel for Defendants |
| Nejame Law, P.A. | DeBevoise & Poulton, P.A. |
| 111 N. Orange Avenue, Suite 1300 | 1035 S. Semoran Blvd., Suite 1010 |
| Orlando, FL 32801 | Winter Park, FL 32792 |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 5, 2026, I electronically served the foregoing via email to the following: DeLayne D. Penland, Esq., (delayne@nejamelaw.com), Mark E. NeJame, Esq., (mark@nejamelaw.com), Ryan J. Vescio, Esq., (ryan@nejamelaw.com), and Richard W. Smith, (richard@nejamelaw.com), pi@nejamelaw.com, NeJame Law, P.A., 111 North Orange Avenue, Suite 1300, Orlando, Florida 32801.

/s/ George R. Dietrich
Brian F. Moes, Esquire
Florida Bar No. 39403
G. Ryan Dietrich, Esquire
Florida Bar No. 1007940
Counsel for Defendants
DeBevoise & Poulton, P.A.
1035 S. Semoran Blvd., Suite 1010
Winter Park, FL 32792
Telephone:   407-673-5000
Facsimile:   321-203-4304
Email:
Moes@DeBevoisePoulton.com
Dietrich@DeBevoisePoulton.com
Paralegal@DeBevoisePoulton.com