**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BRANDI TURNER and GARY LYONS,**

**Plaintiffs,**

**v.** **Case No: 6:25-cv-00252-PGB-NWH**

**JOHN MINA and JACKSON B. KEYES,**

**Defendants.**
________________________________/

# ORDER

This cause comes before the Court on the following filings:

1. Defendant John Mina's ("**Defendant Mina**") Motion to Dismiss Second Amended Complaint (Doc. 40 ("**Defendant Mina's Motion**")), and Plaintiffs Brandi Turner ("**Plaintiff Turner**") and Gary Lyons' ("**Plaintiff Lyons**")[1] response thereto (Doc. 42); and

2. Defendant Jackson B. Keyes' ("**Defendant Keyes**")[2] Motion to Dismiss Second Amended Complaint (Doc. 41 ("**Defendant Keyes' Motion**")),[3] and Plaintiffs' response thereto (Doc. 43).

---

1 Together, Plaintiff Turner and Plaintiff Lyons shall be referred to as the "Plaintiffs."

2 Collectively, Defendant Mina and Defendant Keyes shall be referred to as the "Defendants."

3 Together, Defendant Mina's Motion and Defendant Keyes' Motion shall be referred to as the "Motions."

Upon consideration, Defendant Mina's Motion is due to be granted in part and denied in part, and Defendant Keyes' Motion is due to be granted.

## I. BACKGROUND[4]

This Section 1983 action arises from the killings of T'yonna Major ("**Ms. Major**") and Dylan Lyons ("**Mr. Lyons**")[5] by Keith Moses ("**Mr. Moses**"). (*See generally* Doc. 36).

Before the Court details the events that led to the killings of Ms. Major and Mr. Lyons, the Court will briefly describe the area in which the killings occurred: Pine Hills. Pine Hills is a "census-designated place [] within an unincorporated subdivision of Orange County, Florida, United States[.]" (*Id.* ¶ 13). The demographic of Pine Hills is predominately Black or African American.[6] (*Id.* ¶ 13 tbl.1). Plaintiffs allege that the Orange County Sheriff's Office ("**Sheriff's Office**") maintains a "policy of discrimination" in Pine Hills, which in turn, "led to the preventable and horrific murders" of Ms. Major and Mr. Lyons. (*Id.* ¶ 15).

Turning to the events that give rise to this action, on February 22, 2023, Natacha Augustin ("**Ms. Augustin**") was shot and killed in Pine Hills. (*Id.* ¶ 17).

---

[4] This account of the facts comes from Plaintiffs' Second Amended Complaint. (Doc. 36 (the "**Second Amended Complaint**")). The Court accepts plaintiffs' factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

[5] Plaintiff Turner brings seven claims individually and on behalf of Ms. Major, as the personal representative to her estate. (Doc. 36, ¶¶ 7, 64–115, 127–51). Meanwhile, Plaintiff Lyons only brings one claim on behalf of Mr. Lyons, as the personal representative to his estate s. (*Id.* ¶¶ 7, 116–26).

[6] Specifically, Black or African American individuals comprise 72.6% of the total demographic of Pine Hills, whereas in Orange County, Black or African American individuals comprise only 22.2% of the total demographic. (Doc. 36, ¶ 13 tbl.1).

A witness of her death identified the shooter as Mr. Moses, who fled the scene on foot. (*Id.* ¶ 18). A description of Mr. Moses' appearance was not released to the public, but general information about the shooting was. (*Id.* ¶¶ 19, 40). Shortly thereafter, the Sheriff's Office arrived at the scene and "within four hours and four minutes, cleaned up the crime scene and reopened the location to the public, all while [Mr.] Moses remained at large." (*Id.* ¶ 21).

A few hours later, Plaintiff Turner picked up her daughter, Ms. Major, from school in the surrounding area, and she noticed Defendant Keyes stationed outside her neighborhood entrance. (*Id.* ¶¶ 24–25). She asked Defendant Keyes why the officers were there, and he responded that "[e]verything is under control." (*Id.* ¶ 26). Relying on this representation and unaware that Mr. Moses was at large, Plaintiff Turner went home with Ms. Major, where she had left her back door open. (*Id.* ¶¶ 26–27). Approximately thirty minutes later, Mr. Moses entered Plaintiff Turner's home. (*Id.* ¶ 29). Upon entry, Mr. Moses shot Ms. Major, and then subsequently shot Plaintiff Turner. (*Id.* ¶¶ 30–32). Immediately after, Mr. Moses "fled the home" and Plaintiff Turner called 911. (*Id.* ¶ 34). Ms. Major was rushed to the hospital, where she ultimately died. (*Id.* ¶¶ 36–37).

After leaving Plaintiff Turner's home, Mr. Moses approached a news van where Mr. Lyons was unloading equipment. (*Id.* ¶ 43). At that time, Mr. Lyons was a reporter for Spectrum News 13 and had reported to the scene of Ms. Augustin's death. (*Id.* ¶¶ 40–41). According to the Second Amended Complaint, although Mr. Lyons reported to the location where Ms. Augustin was shot, "there was no

evidence of a crime investigation" because the Sheriff's Office deputies "had previously cleared the area[.]" (*Id.* ¶¶ 41–42). As Mr. Moses approached the news van, he "opened fire" shooting both the cameraman and Mr. Lyons. (*Id.* ¶¶ 43–44). Mr. Lyons died almost instantly from this shot. (*Id.* ¶ 45).

Consequently, Plaintiffs filed the instant action. (*See generally* Doc. 1). In the operative pleading, the Second Amended Complaint,[7] Plaintiffs allege eight causes of action for violations of the Fourteenth Amendment's Due Process and Equal Protection Clauses, for violations of Title VI of the Civil Rights Act, and for negligence. (Doc. 36, ¶¶ 64–151). Now, Defendants move to dismiss the Second Amended Complaint. (*See* Docs. 40, 41). Plaintiffs responded in opposition, and the matter is ripe for review. (*See* Docs. 42, 43).

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

7 Pursuant to Federal Rule of Civil Procedure 15(a)(1), Plaintiffs amended their initial complaint on April 28, 2025. (Doc. 21). However, the Court granted Defendant Mina's first motion to dismiss on August 18, 2025, giving Plaintiffs leave to file the Second Amended Complaint. (*See* Docs. 23, 33).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). However, though a complaint need not contain detailed factual allegations, pleading mere legal conclusions, or "a formulaic recitation of the elements of a cause of action," is not enough to satisfy the plausibility standard. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In sum, the court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678–79.

## III. DISCUSSION

### A. Claims Against Defendant Keyes

In the Second Amended Complaint, Plaintiff Turner asserts that Defendant Keyes "withheld pertinent, significant information regarding an at large murderer" in Pine Hills when he informed Plaintiff Turner that "everything is under

control[.]" (Doc. 36, ¶¶ 67, 78, 92). Plaintiff Turner claims that this conduct was arbitrary and conscience-shocking. (*Id.* ¶¶ 74, 88). Accordingly, Plaintiff Turner brings claims under 42 U.S.C. § 1983 against Defendant Keyes, alleging that he violated her, and her daughter's, "fundamental right to physical safety that was free from unreasonable risk of serious harm" protected by the Fourteenth Amendment's Due Process Clause. (*Id.* ¶¶ 73, 87). For his part, Defendant Keyes argues that he is entitled to qualified immunity on Counts I and II. (Doc. 41, p. 7). The Court agrees with Defendant Keyes.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted). Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* To do so, the plaintiff must make a two-part showing. First, the plaintiff must demonstrate that the facts of the case, if proven to be true, would make out a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Second, the plaintiff must demonstrate that the constitutional right was "clearly established" at the time of the alleged misconduct. *Id.* Because qualified immunity

provides a complete defense from suit, "courts should ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013).

### *i. Discretionary Authority*

To determine whether a government official was acting within their discretionary authority for the purposes of qualified immunity, courts in the Eleventh Circuit "ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). The Court finds that Defendant Keyes established that he was acting within his discretionary authority.

Defendant Keyes asserts that, when he responded to Plaintiff Turner's question concerning the safety of the area, "he was performing discretionary duties typical of a law enforcement officer" by "establish[ing] a police presence in the aftermath of a fatal shooting." (Doc. 41, pp. 7–8). In her response, Plaintiff Turner contends that "advising a member of the public that an area was clear and thus safe" is an operational function.[8] (Doc. 43, p. 5). The Court is not convinced. When he spoke with Plaintiff Turner, Defendant Keyes was on duty in the area because he responded to a crime scene and helped to secure the area. (Doc. 36, ¶¶ 21, 25). Courts in this Circuit have found that undertaking investigative functions, such as

---

[8] The Court notes, however, that Plaintiff Turner only cites to Florida, and not federal, case law to support this argument. (*See* Doc. 43, p. 4).

responding to the scene of a crime, fall within the "discretionary authority" of law enforcement officers. *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (finding that the discretionary authority requirement was satisfied because the officers "undertook all the challenged actions while on duty as police officers conducting arrest and investigative functions."); *Mears v. McCulley*, 881 F. Supp. 2d 1305, 1318–19 (N.D. Ala. 2012) ("Investigating crimes, conducting searches, and making arrests are legitimate job-related functions within the discretionary authority of police officers."). Accordingly, the Court finds Defendant Keyes met his initial burden in showing that he was acting within his discretionary authority.

***ii. Constitutional Violation***

Because Defendant Keyes met his initial burden, the burden shifts to Plaintiff Turner to demonstrate that Defendant Keyes is not entitled to dismissal of Counts I and II on qualified immunity grounds. *Lee*, 284 F.3d at 1194. As such, Plaintiff Turner must demonstrate that (1) the facts of the case, if proven true, would constitute a constitutional violation and (2) that the constitutional right being violated was "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232. The Court may decide these issues in either order, "but to survive a qualified-immunity defense, [Plaintiff Turner] must satisfy both showings." *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017). Because Plaintiff Turner fails to satisfy the "clearly established" prong, Defendant Keyes is entitled to qualified immunity.

In the Eleventh Circuit, a right can be "clearly established" in one of three ways. *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021). Plaintiff Turner must point to either (1) "case law with indistinguishable facts," (2) "a broad statement of principle within the Constitution, statute, or case law," or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Id.* (quoting *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009)). "Although options two and three may suffice," the Supreme Court has warned not to "define clearly established law at a high level of generality." *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (quotation marks omitted)).

Here, Plaintiff Turner fails to provide any case law with "indistinguishable facts" and does not point to a "broad statement of principle within the Constitution, statute, or case law" to clearly establish her constitutional right to "be free from unreasonable risk of serious harm[.]" *Id.*; (Doc. 36, ¶¶ 73, 87). Instead, she appears to rely on the fact that Defendant Keyes' alleged misrepresentation of the "true status of whether the area was indeed safe" constituted a "deliberate indifference" to an extreme risk of serious injury to Plaintiff Turner and her daughter such that his conduct was so egregious that her constitutional rights were clearly violated. (Doc. 43, pp. 7–8). Even taking the facts as true, the Court finds this assertion to be generalized and conclusory.

While Defendant Keyes responded that "[e]verything is under control" even though Mr. Moses had not been apprehended, there is nothing to suggest that this

conduct was "so egregious that a constitutional right was clearly violated[.]" (Doc. 36, ¶ 26); *Crocker*, 995 F.3d at 1240. Indeed, the Due Process Clause of the Fourteenth Amendment does not afford individuals protection against private violence. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989) (observing that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."). As the Eleventh Circuit has consistently affirmed, "a person does not have a constitutional right under the Fourteenth Amendment to be protected from the criminal acts of third parties." *See, e.g.*, *Mitchell v. Duval Cnty. Sch. Bd.*, 107 F.3d 837, 838 (11th Cir. 1997) (per curiam). Nevertheless, Plaintiff Turner maintains that the state-created or enhanced danger doctrine applies in this case.[9] (*See* Doc. 43, pp. 6–7 (citing *Niziol*, 240 F. Supp. 2d at 1204)).

However, the Second Amended Complaint lacks sufficient factual allegations to demonstrate that Defendant Keyes created or enhanced the potential danger to Plaintiff Turner and her daughter. *DeShaney*, 489 U.S. at 201. Defendant Keyes' statement that "[e]verything is under control", without further action, is similar to the actions of the defendant in *Niziol*. (Doc. 36, ¶ 26). In *Niziol*, a high school resource officer had knowledge of potential weapons on campus and interviewed a student who was allegedly involved but decided to take no action

[9] The state-created or enhanced danger doctrine is an exception to the general rule that the state has no duty to protect citizens from private violence. *Niziol v. Pasco Cnty. Dist. Sch. Bd.*, 240 F. Supp. 2d 1194, 1204 (M.D. 2002). This doctrine stands for the proposition that a state may have a duty to protect citizens from private violence if the state "played [] part" in the creation of the danger or did something to render the plaintiff "more vulnerable" to the danger. *Id.*

concerning the weapon. 240 F. Supp. 2d at 1206–08. Ultimately, the plaintiff was shot by another student using this gun, and the court found that the failings of the defendant's "investigation" into the weapon did not create or increase the danger to the plaintiff, and thus the state-created or enhanced danger doctrine did not apply. *Id.* Here, Defendant Keyes took even less action than the defendant in *Niziol*. Given that there is no constitutional duty to protect individuals from private harms, his statement to Plaintiff Turner, without more facts showing he took affirmative steps that ultimately put Plaintiff Turner and Ms. Major in immediate danger, does not satisfy the state-created or enhanced danger exception.

Because Plaintiff Turner fails to satisfy her showing of "clearly established" law, Defendant Keyes is entitled to qualified immunity on Counts I and II.

### B. Claims Against Defendant Mina

Altogether, Plaintiffs assert six counts against Defendant Mina in the Second Amended Complaint. (Doc. 36, ¶¶ 94–151). Plaintiff Turner, individually and on behalf of Ms. Major, asserts counts for violation of the Fourteenth Amendment's Equal Protection Clause (Counts III–IV), for violation of Title VI of the Civil Rights Act (Counts VI–VII), and for liability under Section 768.28(9)(a), Florida Statutes (Count VIII). (*Id.* ¶¶ 94–115, 127–51). Whereas Plaintiff Lyons alleges one count for wrongful death against Defendant Mina on behalf of Mr. Lyons (Count V). (*Id.* ¶¶ 116–26). The Court will address Plaintiff Turner's Claims first.

### *i. Plaintiff Turner's Claims*

#### *1. Equal Protection Clause Violations (Counts III–IV)*

Defendant Mina argues that Counts III and IV should be dismissed because Plaintiff Turner fails to state an equal protection claim under *Monell*.[10] (Doc. 40, pp. 7–13). The Court agrees.

When the defendant is a municipality and its supervisors, the plaintiff can establish liability by demonstrating that an action occurred "pursuant to [an] official municipal policy of some nature[.]" *Monell*, 436 U.S. at 691. Official municipal policy includes governmental leaders' decisions, as well as "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation and quotation marks omitted). To support a *Monell* claim, the official policy must be the "moving force behind the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (alteration accepted). Here, Plaintiff Turner brings her claims against Defendant Mina in his official capacity. (Doc. 36, ¶ 8). As such, to state her claim, Plaintiff must demonstrate that the Sheriff's Office maintained a policy, practice, or custom of providing services in a manner that violated the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause guarantees the right of every person to be treated equally under the law and to be free from intentional and arbitrary discrimination in the law. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)

10 *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 (1978).

(per curiam); *see also* U.S. CONST. amend XIV, § 1. Accordingly, a state may not "selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause." *DeShaney*, 489 U.S. at 197 n.3; *see also Saunders v. City of Lakeland*, No. 8:22-CV-2482-MSS-JSS, 2024 WL 2815642, at *5 (M.D. Fla. June 3, 2024), *aff'd sub nom. Saunders v. City of Lakeland*, No. 24-12091, 2025 WL 1124984 (11th Cir. Apr. 16, 2025). However, "official action will not be held unconstitutional solely because it results in a racially disproportionate impact." *Andre v. Clayton Cnty.*, 148 F.4th 1282, 1306 (11th Cir. 2025) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977)). Rather, "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Id.*

Here, Plaintiff Turner asserts that the Sheriff's Office "maintains a policy that denies equal protection to residents of Pine Hills . . . while similarly situated Windermere area residents enjoy heightened security and safety measures." (Doc. 36, ¶¶ 102, 113). However, Plaintiff Turner fails to allege *any* facts demonstrating a discriminatory intent or purpose. Rather, Plaintiff Turner argues that, here, a discriminatory purpose can be inferred from "the practice of not dispatching resources in the predominant African American neighborhood to the same degree as in other non-African American areas." (Doc. 42, p. 6). Notably, in the Second Amended Complaint, Plaintiff Turner merely cites to census data showing the disparity in racial demographics but provides no data concerning disparate treatment. (Doc. 36, ¶¶ 13–14, 98–99, 109–10 & tbls.1, 2.). Further, the Second

Amended Complaint is completely devoid of similar situations in which the Sheriff's Office allocated more resources to Windermere than Pine Hills. Although Plaintiff Turner alleges in a conclusory manner that the Sheriff's Office maintains a discriminatory policy, she fails to assert sufficient facts to demonstrate such policy exists. Accordingly, Defendant Mina's Motion is granted to Counts III and IV.

2. *Violations of Title VI of the Civil Rights Act (Counts VI–VII)*

Plaintiff Turner's claims under Title VI of the Civil Rights Act[11] against Defendant Mina seek identical relief to her equal protection claims because she asserts that the Sheriff's Office "maintains a policy that denies equal protection to residents of the Pine Hills area, . . . while similarly situated residents of the Windermere area enjoy heightened security and safety measures for violent crimes." (*Compare* Doc. 36, ¶¶ 135, 146, *with id.* ¶¶ 102, 113). Because Title VI provides "no more protection than the equal protection clause", Plaintiff Turner's claims under Title VI, like her claims under the equal protection clause, are insufficient to state a cause of action. *Elston v. Talladega Cnty. Bd. of Educ.*, 997 F.2d 1394, 1405 n.11 (11th Cir. 1993); *see also Saunders*, 2024 WL 2815642, at *5. Thus, for the same reasons stated above, Defendant Mina's Motion as it relates to Counts VI and VII is granted. *See* discussion *supra* Section III.B.i.1.

---

[11] 42 U.S.C. § 2000d et seq.

### 3. *General Negligence under § 768.28(9)(a), FLA. STAT. (Count VIII)*

In Count VIII, Plaintiff Turner asserts "consolidated claims" against Defendant Mina "for liability" under § 768.28(9)(a), FLA. STAT. (Doc. 36, ¶¶ 141–51). While the Second Amended Complaint contains slightly more detail and factual support concerning Count VIII than the Amended Complaint, the Second Amended Complaint still suffers from the same defects as the Amended Complaint previously outlined by the Court. (*See* Doc. 33, p. 4). Specifically, Plaintiff Turner fails to actually "plead and prove a recognized cause of action against [Defendant Mina] under the state's established principles of tort law[.]" *See Welsh v. Metropolitan Dade Cnty.*, 366 So. 2d 518, 521 (Fla. 3d DCA 1979). Instead, Plaintiff Turner merely cites to § 768.28(9)(a) without specifying the underlying tort. (Doc. 36, ¶¶ 141–51). In her response, Plaintiff Turner asserts that Count VIII is "for negligence" but the Second Amended Complaint does not clearly outline the elements of a negligence claim. (Doc. 42, p. 14). As this Court has previously advised Plaintiff, she "may not amend the [Second] Amended Complaint in a response to a dispositive motion. (Doc. 33, p. 4 (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004))). Accordingly, Defendant Mina's Motion as it pertains to Count VIII is granted.[12]

[12] Plaintiff is reminded that § 768.28(9)(a) governs Florida's waiver of sovereign immunity and does not actually state a cause of action on its own. In her next attempt at pleading, Plaintiff Turner is cautioned to explicitly mention the elements of the underlying tort she wants to assert for Count VIII, rather than just reference the sovereign immunity statute.

### *ii. Plaintiff Lyons' Claim – Wrongful Death (Count V)*

Defendant Mina argues that Plaintiff Lyons' wrongful death claim should be dismissed because Defendant Mina owed no duty to Mr. Lyons. (Doc. 40, pp. 15–17). Regardless, Defendant Mina asserts that, even if he owed Mr. Lyons a duty, his actions are protected by Florida's sovereign immunity statute. (*Id.* at pp. 17–19).

"The State of Florida and its subsidiaries—including municipalities—are generally immune from tort liability, however, Florida has waived this immunity 'under circumstances in which the state or agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state.'" *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001) (quoting § 768.28(1), FLA. STAT.). To determine whether sovereign immunity even applies, the Court must "first determine whether the circumstances allege would subject a private person to liability under Florida law." *Id.* Under Florida law, to state a wrongful death claim based on negligence, a plaintiff must establish: (1) a legal duty owed to the decedent; (2) a breach of that duty; (3) that the legal or proximate cause of death was the breach; and (4) consequential damages. *See Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla.2007).

Here, the Court finds that Plaintiff Lyons alleges facts that, if taken as true, establish a plausible claim for wrongful death. Concerning the element of duty,[13] while Defendant Mina is correct that the "Sheriff's Office's 'duty to protect the

[13] The parties appear to only disagree over the element of duty. (*See* Doc. 40, pp. 15–17; Doc. 42, pp. 11–13). As such, the Court will only address this element. In any event, the Court finds that Plaintiff Lyons has alleged facts sufficient to establish the remaining three elements.

citizens is a general duty owed to the public as a whole'", Plaintiff Lyons argues that Defendant Mina created a "foreseeable zone of risk." (Doc. 40, p. 15 (quoting *Everton v. Willard*, 468 So. 2d 936, 938 (Fla. 1985)); Doc. 42, p. 11). Under Florida law, "[w]here a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." *Kaisner v. Kolb*, 543 So. 2d 732, 735 (Fla. 1989). Here, Plaintiff Lyons asserts that in failing "to barricade or restrict access to the area where the shooting occurred" and to release information about the shooting, Defendant Mina created a "foreseeable zone of risk", thus triggering an affirmative duty to Mr. Lyons (Doc. 36, ¶¶ 119–122; Doc. 42, p. 11). Further, Plaintiff alleges that Defendant Mina's actions "placed [Mr. Lyons] in a dangerous position," where Mr. Lyons was ultimately shot and killed. (Doc. 36, ¶¶ 122, 126). Viewing the facts in a light most favorable to Plaintiff Lyons, the Court finds this is sufficient to state a cause of action for negligence. *Hunnings*, 29 F.3d at 1484.

Yet, "even if the claim contained sufficient allegations of tort liability under which a private person would be liable, the waiver of sovereign immunity would still not apply if the challenged acts of the state agent were 'discretionary' governmental acts rather than merely 'operational' ones." *Lewis*, 260 F.3d at 1262. A discretionary act must "involve[] an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." *Cook v. Sheriff of*

*Monroe Cnty.*, 402 F.3d 1092, 1117–18 (11th Cir. 2005) (quoting *Henderson v. Bowden*, 737 So. 2d 532, 538 (Fla. 1999)). A discretionary function is defined as the "development and planning of governmental goals and policies." *Lewis*, 260 F.3d at 1266. "Conversely, an 'operational' act is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." *Id.* at 1264–65 (citing *Kaisner*, 543 So. 2d at 737).

Here, Defendant Mina argues that the decisions to release information relating to Ms. Augustin's killing and "about when to conclude a crime scene investigation and when to allow the public to access the area" are discretionary functions because the "directly relate[] to fundamental and strategic decisions . . . about when and how to allocate limited resources." (Doc. 40, p. 19). Yet, the case that Defendant Mina cites to support this proposition considered these issues at the summary judgment stage. (*Id.* (citing *Sanchez v. Miami Dade Cnty.*, 245 So. 3d 933, 941 n. 3 (Fla. 3d DCA 2018))). Presumably, the Sheriff's Office has standard operating procedures that provide officers guidance on how to respond to shootings, secure the area, and when to release information to the media. Such procedures would not necessarily constitute policy decisions but, rather, would be "secondary decisions" made after the initial discretionary decision to send officers to investigate the crime scene. *Lewis*, 260 F.3d at 1264–65. Accordingly, whether the area was secured in a reasonable manner is a factual dispute that is better handled at summary judgment. Thus, the Court finds that the determination of

sovereign immunity would be better addressed at a later stage with a more developed factual record. Accordingly, Defendant Mina's Motion as to Count V is denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Jackson B. Keyes' Motion to Dismiss (Doc. 41) is **GRANTED**. Counts I and II of the Second Amended Complaint (Doc. 36) are **DISMISSED WITH PREJUDICE**. The Clerk of Court is **DIRECTED** to terminate Defendant Jackson B. Keyes as a party in this action.

2. Defendant John Mina's Motion to Dismiss (Doc. 40) is **GRANTED IN PART** and **DENIED IN PART**.

    a. Defendant Mina's Motion to Dismiss (Doc. 40) is **GRANTED** as to Counts III, IV, VI, VII, and VIII. Counts III, IV, VI, VII, and VIII of the Second Amended Complaint (Doc. 36) are **DISMISSED WITHOUT PREJUDICE**.

    b. Defendant Mina's Motion to Dismiss (Doc. 40) is **DENIED** in all other respects.

3. On or before **October 2, 2026**, Plaintiffs shall file a third amended complaint in compliance with this Order and all applicable rules and law. If the third amended complaint suffers from the same

deficiencies as the three previous iterations, it will be subject to dismissal with prejudice.

4. Failure to timely comply with this Order and file a third amended complaint will result in the dismissal of this action without further notice.

**DONE AND ORDERED** in Orlando, Florida on September 18, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties